# 12-80364-CIV-MARRA/BRANNON

## IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF FLORIDA WEST PALM BEACH DIVISION

JOHN KORMAN,
Private Attorney General,                         )
                              Petitioner,          )
                                                   )
AURORA LOAN SERVICES LLC;                          )
OFFICE OF CEO, AND PRES OF AURORA;                 )
AURORA BANK FSB;                                   )
MERSCORP HOLDINGS, INC;                            )
MORTGAGE ELECTRONIC                                )
REGISTRATION SYSTEMS INC;                          )
LEHMAN BROTHERS HOLDINGS, INC;                     )
LEHMAN BROTHERS BANK, FSB;                         )
LEHMAN BROTHERS, INC;                              )
LEHMAN BROTHERS BANCORP INC;                       )
LEHMAN XS TRUST 2006-11;                           )
STRUCTURED ASSET SECURITIES                        )
CORPORATION;                                       )
LASALLE BANK N.A. as TRUSTEE;                      )
U.S. BANCORP as successor TRUSTEE;                 )
ASSOCIATES LAND TITLE INC;                         )
THEODORE SCHULTZ, Individual;                      )
LAURA MCCANN, Individual;                          )
CYNTHIA WALLACE, Individual;                       )
JOANN REIN, Individual;                            )
LAW OFFICE OF DAVID J. STERN P.A.;                 )
DAVID JAMES STERN, Esquire;                        )
KAROL S. PIERCE, Esquire;                          )
CASSANDRA RACINE-RIGAUD, Esquire;                  )
MISTY BARNES, Esquire;                             )
DARLINE DIETZ, Notary;                             )
JOHN DOE 1 – 100;                                  )
JANE DOE 1 – 100;                                  )
                              Defendants.          )
                                                   /

FILED by _____ D.C.

APR 0 5 2012

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - W.P.B.

CIVIL RIGHTS 1983 VIOLATION
FORGERY
USURY
CIVIL CONSPIRACY
STELLIONATION
INTRINSIC FRAUD
ATTEMPTED LARCENY
FRAUDULENT CONVERSION
CONSTRUCTIVE FRAUD
VIOLATION OF FDCPA
VIOLATION OF TCPA
VIOLATION OF FCRA
VIOLATION OF FDUTPA
MAIL FRAUD
WIRE FRAUD
UTTERING
R.I.C.O.
FRAUDULENT INDUCEMENT
FALSE CLAIM
MORTGAGE FRAUD
PROFESSIONAL NEGIGENCE

DEMAND FOR JURY
TRIAL
Fed.R.Civ.P. 38(b)

## VERIFIED COMPLAINT FOR DECLARATORY AND OTHER RELIEF

KORMAN v AURORA *et al.*                 Page 1 of 233

**COME NOW**, JOHN KORMAN, Private Attorney General (hereinafter "Petitioner"), file this Verified-Complaint seeking, *inter alia*, Declaratory Judgment, disgorgement of ill-gotten-gain, recoupment, compensatory damages, general damages, or/and punitive damages, in favor of Petitioner, and other Americans similarly situated, based on the following allegations [1], made from personal knowledge, research, Certified Exhibits, information and belief, demand for Jury Trial, testify to the following under penalty of perjury;

## VERIFIED COMPLAINT
## I. <u>INTRODUCTION</u>

1.        This case arises *inter alia* due to Defendant AURORA LOAN SERVICES LLC (hereinafter "AURORA") commenced a foreclosure action in its own name, for its own benefit, acting in the capacity of Real-Party-In-Interest, Holder-in-Due-Course, facilitated by fabricating a colorable Assignment, also, Defendant AURORA *et al.*, did provide verified testimony in an unrelated legal action, testimony known to be false at the time said statement was recorded and subsequently verified, resulting in an act of Intrinsic Fraud as gravamen; predicated on this prior foundational statement, Petitioner files this Action against the following parties, active participants in Civil Fraud, either jointly, or severally, including but not necessarily limited to the following Defendants;

---

[1]        **Petitioner reserve all rights to amend this Complaint, add or seek other relief against officers or directors of Defendants involved in fraud, or other Action alleged hereinafter;**

[*] **Term defined**, *vide infra*, from page 213 *et seq.*

AURORA LOAN SERVICES LLC; OCCUPANT of the Office of CHIEF EXECUTIVE

OFFICER and PRESIDENT of AURORA LOAN SERVICES LLC at all time relevant

THOMAS L. WIND (hereinafter "TOM WIND") or SUCCESSOR; AURORA BANK

FSB; MERSCORP HOLDINGS, INC ("MERSCORP"); MORTGAGE ELECTRONIC

REGISTRATION SYSTEMS INC ("MERS®"); LEHMAN BROTHERS BANK, FSB;

LEHMAN BROTHERS HOLDINGS, INC; STRUCTURED ASSET SECURITIES

CORPORATION; LEHMAN XS TRUST MORTGAGE PASS-THROUGH

CERTIFICATES, SERIES 2006-11; U.S. BANK CORP as TRUSTEE, successor in

interest to LASALLE BANK NATIONAL ASSOCIATION; ASSOCIATES LAND

TITLE INC; THEODORE SCHULTZ; JOANN REIN; LAURA MCCANN; CYNTHIA

WALLACE, a/k/a CINDY WALLACE; LAW OFFICE OF DAVID J. STERN P.A.;

DAVID JAMES STERN Esquire; KAROL S PIERCE Esquire; CASSANDRA RACINE-

RIGAUD Esquire; MISTY BARNES Esquire; John Doe 1 – 100, Jane Doe 1 – 100,

(hereinafter collectively "DEFENDANT"); as

**2.**       DEFENDANT jointly or severally devised a well planned scheme to willfully

and knowingly conspire to commit Civil Fraud against Petitioner and other Americans

similarly situated;

**3.**       AURORA *et al.*, have committed Fraud upon the Court by and through

Attorney of record, whether by silence when there was a duty to speak, or by affirmative

Act;

4.        Alleged Fraud by AURORA is systemic and continuing as an ongoing-criminal-enterprise [*] see **18 U.S.C. §225**, which generates more than Five-Million ($5,000,000.00) in any twenty-four (24) month period of operation.

5.        Defendant AURORA is not the original Lender; see **<u>BAC Funding Consortium Inc. v. Jean-Jacques</u>**, 2010 WL 476641 (Fla. 2nd DCA 2010).

6.        Defendant LEHMAN BROTHERS BANK FSB is original Lender of record; whereby,

7.        Petitioner holds publicly recorded admissible evidence showing Defendant AURORA assigned Petitioner's Promissory-NOTE and Mortgage to itself, awhile Lender of record LEHMAN BROTHERS BANK FSB is under bankruptcy protection,  which Petitioner believes is a void assignment reading 11 U.S.C. § 544(a)(3); furthermore,

8.        Assignment is a fraudulent Transfer, or Fraudulent Conveyance; see U.S.C. 11 §§ 548 and 549.

9.        Unbeknownst to Petitioner at time of Closing, September 29th 2006, LEHMAN BROTHERS BANK FSB did presale Petitioner's Mortgage-NOTE[*] with all of its right, title and interest thereto LEHMAN BROTHERS HOLDINGS INC., before the ink dried on Petitioner's once wet ink signature; and,

10.        copy of a copy of Petitioner's Promissory-NOTE Defendant AURORA alleges to Hold is materially altered from the copy Petitioner Holds, received post-Closing[*];  See "Exhibit Z" hereto attached and incorporated herein by reference;

11.        Defendant AURORA's altered copy of a copy of Petitioner's alleged NOTE,

last page, displays a Special-Indorsement [*] from Loan Originator, as Drawer LEHMAN

BROTHERS BANK FSB setover and deposited said NOTE with LEHMAN

BROTHERS HOLDINGS INC., as Drawee, thereafter LEHMAN BROTHERS

HOLDINGS INC., intentionally indorsed the NOTE to "**no-one**"; See Uniform

Commercial Code ("U.C.C.") § 3-205(a).

12.        Petitioner comes to discover LEHMAN BROTHERS BANK FSB is but a

pass-through Entity, a Strawman [*] doing "the deal" for LEHMAN BROTHERS

HOLDINGS INC; thereafter,

13.        Promissory-NOTE in question, pursuant to the related Pooling and Servicing

Agreement, is to be further conveyed from LEHMAN BROTHERS HOLDINGS INC.,

as Assignor, ultimately re-designated setover to a Real-Estate-Mortgage-Investment-

Conduit ("REMIC"), titled LEHMAN XS TRUST MORTGAGE PASS-THROUGH

CERTIFICATES, SERIES 2006-11 as the ultimate Assignee, executed on or before July

31st 2006, or within ninety (90) days thereafter in accord with Section 860D of the

Internal Revenue Code of 1986;

14.        Defendant AURORA commenced a sham action against Petitioner May 15th

2009, Case NO. 50-2009-CA-017057-XXXX-MB, IN THE CIRCUIT COURT OF THE

FIFTEENTH JUDICIAL CIRCUIT, IN AND FOR PALM BEACH COUNTY,

FLORIDA, to foreclose on Petitioner's once Mortgaged property;

15.      sham action employs the Court system to facilitate Larceny; furthermore,

16.      AURORA caused to be executed and recorded two colorable assignments

for the same Mortgage, done by its employee who knew or should have known

LEHMAN BROTHERS BANK FSB as alleged loan Originator no longer held right, title

nor interest in said Mortgage in question, *infra,* also see "*Bank Transfer Agreements*"

(not available at this time); furthermore,

17.      Defendant AURORA *et al.,* did commit a willful act, twice, to legally [sic]

perpetrate an act of Extrinsic Fraud against Defendant upon fabricating two colorable

Assignments;

18.      recording said Assignments with the Clerk of the Court committed an act of

Intrinsic Fraud by Uttering [*]; as,

19.      each Assignment lack a legal foundation; finding,

20.      Verified[*] recorded agreement found in the public domain, filed with the

Securities and Exchange Commission titled "TRUST AGREEMENT" wherein

LEHMAN BROTHERS HOLDINGS INC and AURORA as Master Servicer is a party

thereto;

21.      Under said TRUST AGREEMENT AURORA knows, or should have

known, Petitioner's Mortgage-NOTE (the same Mortgage-NOTE AURORA's Assistant

Vice President a/k/a Certifying Officer of MERS® colorably assigned) is legally /

contractually collateral held by LEHMAN XS TRUST MORTGAGE PASS-THROUGH

CERTIFICATES, SERIES 2006-11's Trustee, (constructively Holding Bare Legal Title)

in trust for the benefit of the "Certificate-Holder," ((Holding Beneficial-Interest)

("Certificate-Holder" "Security-Holder" or "BOND-Holder" terms used synonymously)),

as of the "Closing-Date July 31st 2006," (or within 90 days thereafter); furthermore,

17.     Petitioner's Promissory-NOTE once transferred, and those of others

similarly situated, setover to LEHMAN XS TRUST MORTGAGE PASS-THROUGH

CERTIFICATES, SERIES 2006-11's Trustee, LEHMAN BROTHERS BANK FSB is

no longer Holder-in-Due-Course as a matter of law, and is no longer in Privity with the

Borrower.

18.     JOANN REIN acting in the capacity of Vice-President, executed the first

of two colorable Assignments from Assignor LEHMAN BROTHERS BANK FSB,

allegedly assigned Petitioner's Mortgage and NOTE to AURORA July 9th 2008;

19.     which is almost two (2) years after LEHMAN XS TRUST MORTGAGE

PASS-THROUGH CERTIFICATES, SERIES 2006-11's Closing-Date[*], making the

alleged negotiation illegal, under New York Trust Law.

20.     Aforementioned un-recorded Assignment was employed by AURORA as

*prima fascia* evidence (as an Exhibit) to show Standing in Case NO. 07-80998-CIV-

RYSKAMP / VITUNAC, IN THE UNITED STATES DISTRICT COURT FOR THE

SOUTHERN DISTRICT OF FLORIDA, Action commenced October 22nd 2007;

21.        Defendant AURORA, by and through its employee Assistant Vice President LAURA MCCANN, joined with co-worker CYNTHIA WALLACE, a/k/a CINDY WALLACE who occupies an Office in the Default Resolution Department, jointly or severally committed an act of Intrinsic Fraud against Petitioner in the Federal Court system by providing perjured testimony in Case NO. 07-80998-CIV-RYSKAMP / VITUNAC, which LAURA MCCANN, and co-worker CYNTHIA WALLACE, a/k/a CINDY WALLACE knew were false statements at the time their statements were recorded and subsequently verified under seal;

22.        Testified AURORA was Holder in possession of Petitioner's hand scribed once wet ink signature found on the genuine Mortgage-NOTE in question;

23.        Defendant AURORA *et al.*, testified the genuine Mortgage-NOTE is under its care, custody and control as of 12th of December 2008; see "Exhibit A" hereto attached and incorporated herein by reference titled "AURORA LOAN SERVICES INTERROGATORY ANSWERS," with unrecorded assignment attached thereto, assignment was subsequently recorded June 11th 2009; but,

24.        stepping back to May 15th 2009 (a month prior to recording said Assignment) AURORA commenced an Action as Plaintiff, in Case NO. 09-CA-017057, therein plead **"...*action to enforce a lost, destroyed or stolen promissory note and mortgage under Fla. Stat. §673.3091.***"**

25.          AURORA, May 15th 2009, admits it is in want of the ***sine qua non*** to

foreclose; Perjury comes to mind, Intrinsic Fraud in Case NO. 07-80998-CIV-

RYSKAMP / VITUNAC, *supra*; also,

26.          Fraud-Upon-the-Court[*] in Case NO. 09-CA-017057, in The Fifteenth

Judicial Circuit as AURORA recorded the transfer of Petitioner's alleged debt

(Assignment originally created for Case NO. 07-80998-CIV-RYSKAMP / VITUNAC),

three weeks after pleading to reestablish said Mortgage-NOTE; furthermore,

27.          Perjury may also be found in Case NO. 09-CA-017057, except Complaint

is not verified, (Hear-Say[*]), as AURORA is represented by an Attorney (third party),

an Officer-of-the-Court, Officers are Gentlemen who never lie (notable exception being

the LAW OFFICE OF DAVID J. STERN P.A.);

28.          Florida has since corrected this weak link in the chain by Amending

Fla.R.Civ.P. 1.110(b), requiring Verification of residential foreclosures filed after

February 11, 2010; alternatively,

29.          Defendant AURORA by and through Attorney of record, LAW OFFICE

OF DAVID J. STERN P.A., provided the Court in Case NO. 09-CA-017057, fabricated

verified evidence [sic] of a second colorable Assignment from LEHMAN BROTHERS

BANK FSB as Assignor, the original-Lender of record; whereby,

30.        Assignor re-assigned Petitioner's Mortgage and NOTE directly to

AURORA, designating AURORA as the sole Assignee since origination (Stellionate);

if held as true,

31.        this Court must ignore the first Assignment, and the fact both assignments

were recorded contemporaneously amidst a Bankruptcy proceeding in motion against

the Assignor, a fraudulent transfer, fraudulent conveyance, a void act, which it is;

32.        furthermore, we must also ignore all the verified public documents held by

the Securities and Exchange Commission, documents which paints a very different

picture than the one AURORA has portrayed to the Courts, facilitated by the LAW

OFFICE OF DAVID J. STERN P.A. *et al*; as,

33.        AURORA fabricated said Assignment expressly for the purpose of

litigation, did do so twice;

34.        Assignment was executed to show Standing, where there is none, twice;

35.        Both colorable Assignments is strictly illusionary, as LEHMAN

BROTHERS BANK FSB did not physically convey nor deliver the Mortgage-NOTE to

AURORA; as,

36.        LEHMAN BROTHERS BANK FSB already conveyed the NOTE with all

right, title and interest to LEHMAN BROTHERS HOLDINGS INC, before the ink dried;

37.        AURORA attached to its Complaint as an Exhibit, in Case NO. 09-CA-

017057, a copy of a copy of a Promissory-NOTE;

38.         Promissory-NOTE displays LEHMAN BROTHERS BANK FSB's negotiation of said NOTE by Special-Indorsement setover to LEHMAN BROTHERS HOLDINGS INC, with all right, title and interest;

39.         LEHMAN BROTHERS HOLDINGS INC indorsed said Promissory-NOTE, acknowledged receipt thereof; furthermore, LEHMAN BROTHERS HOLDINGS INC indicated it has no further liability to any subsequent holder for payment, "*without recourse*".

40.         AURORA's fabricated evidence, namely a colorable Assignment from LEHMAN BROTHERS BANK FSB showing AURORA as Owner of Petitioner's alleged debt is also in conflict with a verified publicly recorded document titled "TRUST AGREEMENT," in custody with the Securities and Exchange Commission, dated July 1st 2006;

41.         TRUST AGREEMENT therein is articulated Chain-of-Title[*] to Petitioner's Mortgage-NOTE, and those of others similarly situated; finding, in part,

42.         AURORA is the Servicer of this alleged debt; see "Exhibit G" hereto attached and incorporated herein by reference.

43.         AURORA, at all times relevant herein is a subsidiary of bankrupt LEHMAN BROTHERS BANK FSB, the child to bankrupt LEHMAN BROTHERS HOLDINGS INC; and,

**44.** LEHMAN XS TRUST MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-11 is the registered Holder of Petitioner's Mortgage-NOTE, held as a collateralized interest of Mortgage-Backed Securities.

**45.** GRANTOR – GRANTEE official public record found in Palm Beach County now identifies AURORA as Mortgagee of record, Assignment recorded June 11th 2009; and,

**46.** thereafter AURORA recorded a second bogus Assignment September 24th 2009, both Assignments are Uttered documents.

**47.** Violation of the FAIR DEBT COLLECTION PRACTICES ACT, ("FDCPA") against AURORA is herein alleged, for its failure, or inability to validate this alleged debt in question, after a request to do so in writing;

**48.** first such Validation request is dated April 17th 2008, pre-Complaint, thus AURORA violated Title 15 U.S.C. § 1692g by non-compliance, ignored the request; furthermore,

**49.** AURORA filing an Action against Petitioner within a year of accepting a Request for Validation, but prior to actually Validating the debt, tolls the Statute of Limitation on a FDCPA claim; and,

**50.** AURORA does not come into Court with Clean-Hands [*] in Case NO. 50-2009-CA-017057-XXXX-MB, see Exhibit "B," hereto attached and incorporated herein by reference;

51.      Violation of FDCPA by AURORA continuously harassing Petitioner with unwanted phone calls, personal home visits (monthly) and dunning letters thirty-one (31) days after receipt (PS Form 3811) of written request from Petitioner to stop calling until the alleged debt is validated, and AURORA's failure or inability to validate said debt; furthermore,

52.      AURORA violated the prohibition on false, deceptive and misleading representations, by claiming to be the Creditor; see 15 U.S.C. §§ 1692g(a)(2), 1692e.

53.      Violation of Telephone Consumer Protection Act continuingly harassing Petitioner with unwanted telephone calls after a written request from Petitioner to stop calling until the alleged debt is validated, and AURORA's failure or inability to validate said debt but continued communications by utilizing automated calls; and,

54.      Violation of FAIR CREDIT REPORTING ACT ("FCRA") by AURORA is herein being alleged, for providing unverified information to the reporting agencies, which was known to be un-Verified, false, misleading, or should have known same, resulting in Defamation of Character;

55.      Un-Verified information resulted in damaging Petitioner's credit rating.

56.      Defendant DAVID JAMES STERN Esquire, KAROL S PIERCE Esquire, CASSANDRA RACINE-RIGAUD Esquire, MISTY BARNES Esquire, joined with the LAW OFFICE OF DAVID J. STERN P.A., acted jointly or severally by commencing a

known frivolous Action to foreclose on Petitioner's property by re-presented *prima fascia* evidence, and hear-say testimony; furthermore,

57.      LAW OFFICE OF DAVID J. STERN P.A., *et al.,* violated the prohibition on false, deceptive and misleading representations, by claiming to represent the Creditor; see 15 U.S.C. §§ 1692g(a)(2), 1692a(4), 1692e; as,

58.      Notice to Agent is Notice to Principal, and Notice to Principal is Notice to Agent.

59.      LAW OFFICE OF DAVID J. STERN P.A., *et al.,* presented to the Court a counterfeited copy of a NOTE, stamped "I HEREBY CERTIFY THIS TO BE A TRUE AND EXACT COPY OF THE ORIGINAL" which is *prima fascia* a fraudulent factum.

60.      Esquires know, or should know an averment before the bench related to *prima fascia* evidence presented as an Exhibit, i.e. "copy of a NOTE" without actual possession of the original of which said alleged copy is created from is a false or misleading representation.

61.      Defendant Chief Executive Officer ("CEO") and PRESIDENT of AURORA, at all time relevant, TOM WIND is in receipt of numerous written communications from Petitioner; whereby,

62.      Defendant, occupant of the Office of CEO and PRESIDENT of AURORA responses to said communications are all non-responsive, all of which come from a

third-party-interloper allegedly on behalf of the party occupying the Office of CEO and PRESIDENT of AURORA.

63.      AURORA's CEO and PRESIDENT at all time relevant, in receipt of Petitioner's allegations, agreed, in part, its parent (at that time) LEHMAN BROTHERS BANK FSB received the equity in Petitioner's property without any substantive consideration;

64.      AURORA's CEO and PRESIDENT agreed with Petitioner's written communication, in part, LEHMAN BROTHERS BANK FSB received Petitioner's *"... Mortgage NOTE without investing or risking one-cent, other than the normal and customary over-head expenses of administration..."*

65.      Defendant LEHMAN BROTHERS BANK FSB did not lend Petitioner any Money-Of-Exchange [*], not depositor's money, not the Bank's money nor any of its own money, nothing of substance; see "Exhibit C" Affidavit of "WALKER TODD" hereto attached and incorporated herein by reference, certified copy in hand, see also the "Credit River Decision (1968)";

66.      LEHMAN BROTHERS BANK FSB extended to Petitioner a line of Credit, and to other Americans similarly situated;

67.      credit created from the value placed on the NOTE tendered, as an exchange of value or consideration, pursuant to Generally Accepted Accounting Principals ("GAAP"); as,

68.  presented to Petitioner, during Closing, a TRUTH-IN-LENDING DISCLOSURE STATEMENT which reads (top-left-hand-corner in bold box), *"The cost of your credit as a yearly rate."* See "Exhibit D" hereto attached and incorporated herein by reference, and,

69.  Next bold text box to the right reads, *"The dollar amount the credit will cost you."* And,

70.  third box over from the left reads, *"The amount of credit provided to you or on your behalf."*

71.  LEHMAN BROTHERS BANK FSB deposited Petitioner's NOTE into a Transaction-Account [*], a/k/a Deposit-Account [*], in Petitioner's name for Petitioner's benefit;

72.  LEHMAN BROTHERS BANK FSB indorsed the NOTE; *"Pay to the Order of"* *"without recourse,"* is Maker's Indorsee's order to pay a Draft [*], or Bank-Check;

73.  Draft [*], or Bank-Check is negotiable using Petitioner's Promissory-NOTE, or the NOTEs of other Americans similarly situated, same as money, to balance the bank's books under GAAP;

74.  Draft, or Bank-Check is Maker's financial asset under U.C.C. § 8-102(9);

75.  financial asset is the consideration (NOTE) setover for a sum certain,

76.	Draft, or Bank-Check, NOTE as a financial asset, is executed without Maker's authorization or knowledge at time of Closing; whereby,

77.	Seller's asking price was discharged using this aforementioned Money-of-Account [*] created by LEHMAN BROTHERS BANK FSB from thin air, in exchange for Maker's deposit of the NOTE into said Transaction-Account, and operates in alike matrix for other Americans similarly situated;

78.	LEHMAN BROTHERS BANK FSB made a General-Deposit [*] of Maker's tendered Promissory-NOTE;

79.	General-Deposit is made using Maker's Limited Power-of-Attorney [*];

80.	Limited Power-of-Attorney is acquired by Defendant LEHMAN BROTHERS BANK FSB or ASSOCIATES LAND TITLE INC, under a pretext at the Closing-Table [*];

81.	General-Deposit using Maker's Limited Power-of-Attorney is a material fact intentionally with-held from Maker.

82.	General-Deposit was done contrary to Petitioner's intent or understanding, that deposit of Petitioner's NOTE was understood to be a Special-Deposit[*]; furthermore,

83.	Post-Closing Defendant LEHMAN BROTHERS BANK FSB or ASSOCIATES LAND TITLE INC did not present Maker with a receipt for said Promissory-NOTE;

84.     Receipt is required to be given by a Bank upon its acceptance of a General-Deposit under Financial Accounting Standards Board, ("FASB") 95; *ergo,*

85.     LEHMAN BROTHERS BANK FSB or ASSOCIATES LAND TITLE INC concealed the ownership of said Deposit;

86.     concealment of ownership of said Deposit in Petitioner's particular instance is Larceny of over Three-Hundred ($300.00).

87.     Violation of Title 12 U.S.C. 1813 (L)(1), or 12 U.S.C. 1813 (L)(3) as the General Deposit had a specific purpose, whether Maker realized it at the time or not, others did, resulting in a Collateral Fraud;

88.     Discovery of FASB "Statement of Financial Accounting Standards No. 5," FASB 95 (credit to transactional account), 115 (accounting for conversion of loan to security), 133 (derivatives on hedge accounts), 140 (Accounting for Transfers and Servicing of Financial Assets and Extinguishments of Liabilities), does evidence the source of the 'money,' being the monetized NOTE, which Petitioner and other Americans similarly situated setover in trust with LEHMAN BROTHERS BANK FSB;

89.     Petitioner, and other Americans similarly situated were tricked at the Closing-Table into believing a *quasi* truth, in part, Money-of-Exchange is being negotiated for, to facilitate the acquisition of a home, which is negotiated, but this / these home / homes is not seized using Money-of-Exchange, instead home / homes are transferred using Petitioner's credit, and the credit of other Americans similarly situated.

90.        LEHMAN BROTHERS BANK FSB converted said credit into Money-of-Account (or Credit-Money / Check-Book-Money); and kept quiet was,

91.        Defendant LEHMAN BROTHERS BANK FSB joined with LEHMAN BROTHERS HOLDINGS INC joined with STRUCTURED ASSET SECURITIES CORPORATION hatched a premeditated scheme to use Petitioner's Promissory-NOTE and the Promissory-NOTE of other Americans similarly situated, under 12 U.S.C. 1813 (L)(1), same as money;

92.        invested that money with a third party Investment-Company, LEHMAN XS TRUST MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-11 for a quick profit;

93.        Petitioner and other Americans similarly situated apparently changed the economic substance of said transaction from the one contemplated in reading the Credit Application Form; whereby,

94.        Agreement, NOTE, Mortgage or similar instruments Petitioner signed, or other Americans similarly situated signed, changed the costs and risk to Defendant LEHMAN BROTHERS BANK FSB *et al*.

95.        Petitioner comes to discover, post-Closing, Petitioner and other Americans similarly situated were steered into an Investment-Contract [*], as undisclosed Investors under the TRUST AGREEMENT, by Externality [*];

96.         Petitioner today understands why a receipt for the Promissory-NOTE was

not presented at Closing, concealed Donor's role in said Investment-Contract; whereby,

97.         Monetizing Maker's NOTE ("*pay to the order of… without recourse*")

converted said NOTE into a cash item, namely a Draft, or Bank-Check; see, UCC §§1-

201(24), 3-104, 8-102(9), and §§9-102(9), (11), (12)(B), (49), (64); thereafter,

98.         Securitizing Maker's NOTE has a similar effect as monetization, only now

the source of money comes from an investor, or investors;

99.         Petitioner as Mortgagor at all time relevant herein neither knew nor was

informed Petitioner's Promissory-NOTE was to be securitized; as such,

100.        Petitioner seeks recoupment under U.C.C. §3-305 and makes Claim under

U.C.C. § 3-306 or §9-102(64); because,

101.        AURORA is alleged to have taken possession of Petitioner's Mortgage-

NOTE, but on the other hand claims the NOTE is lost, stolen, or destroyed, while in its

care, custody and control; however,

102.        AURORA is not now, nor was ever the Holder-in-Due-Course.

103.        AURORA pleads with that Court in Case NO. 50-2009-CA-017057-

XXXX-MB to have the Mortgage-NOTE re-established; however,

104.        AURORA is not now, nor was ever the Real-Party-in-Interest.

105.        Petitioner and other Americans similarly situated hold a Possessory-

Interest [*] in their respective Promissory-NOTE, U.C.C. §3-306; as such,

**106.**       Petitioner makes Claim to the NOTE, and Claim is made against the cash proceeds; including but not limited to,

**107.**       proceeds found on the liability side of (Lender's ledger) LEHMAN BROTHERS BANK FSB's ledger, or from the (Real-Lender) Entity with that liability owed to Petitioner, and the other Americans similarly situated, to be found on Lender's Books and Records; see FAS 140, U.C.C. §3-305, §3-601, §8-105, §9-404; and,

**108.**       Petitioner demands all the proceeds from Trust-Certificates / Securities / BONDS etc., stemming from Petitioner's NOTE; and,

**109.**       Petitioner demands all the rent payments collected by AURORA, Eighty-One-Thousand-One-Hundred-Thirty, 76/100 ($81,130.76), to be returned to the Donor, the ultimate Beneficiary, or to the Heir of the Estate; as,

**110.**       the money made from the exploitation and abuse of Petitioner's money, belongs to Petitioner.

**111.**       LEHMAN BROTHERS BANK FSB's ledger showing Petitioner's asset, or the Entity with the setover of Petitioner's asset onto its ledger, is hiding the liability side of their books and records from Petitioner;

**112.**       LEHMAN BROTHERS BANK FSB separated the Payables from the Receivables and refused, or is unable to Verify [*] Petitioner's alleged debt when requested to do so in writing, months before *lis Pendens* was filed;

113.      FLORIDA CONSUMER COLLECTION PRACTICES ACT, Sec. 559.55

*et seq.*, mandates, in part, that LEHMAN BROTHERS BANK FSB, as the original

Creditor doing business in the State of Florida validate said debt upon written request;

114.      LEHMAN BROTHERS BANK FSB refused to validate Petitioner's

alleged debt, by non-response, ignored the request; because,

115.      LEHMAN BROTHERS HOLDINGS INC was the Creditor, a stranger to

the Original transaction, subsequently AURORA became a Third-Party-Debt-Collector;

116.      LEHMAN BROTHERS BANK FSB or LEHMAN BROTHERS

HOLDINGS INC separating their Payables from the Receivables may make it appear as

Defendant AURORA, or rather its lower-level-employee acting in the capacity of a

Third-Party-Debt-Collector making those annoying telephone calls may be acting in

good faith, not cognizant ("need to know") of all the true facts (payables / liabilities), is

in part, the corrupt part of AURORA's business plan.

117.      Petitioner's Promissory-NOTE and the NOTEs of other Americans

similarly situated is a liability of LEHMAN BROTHERS BANK FSB or LEHMAN

BROTHERS HOLDINGS INC, a liability owed to Petitioner and the other Americans

similarly situated;

118.      Petitioner firmly believes this liability of LEHMAN BROTHERS BANK

FSB or LEHMAN BROTHERS HOLDINGS INC is an Off-Balance-Sheet-Entry [*];

however,

119.        Off-Balance-Sheet-Entries are required to be reported to the Federal

Reserve Board, ("FRB"), under 12 U.S.C. 248 and 347; and,

120.        Balance-Sheet identified as FR 2046 carries an Office of Management and

Budget number 7100-0289;

121.         Balance-Sheet displaying an Office of Management and Budget number

makes it subject to disclosure under the privacy act; see Title 5 USC 552 *et seq;*

122.        Balance-Sheet FR 2046 does disclose Petitioner's true outstanding

Mortgage-NOTE balance, which is zero ($0.00).

123.        LEHMAN BROTHERS BANK FSB's deposit of Petitioner's Promissory-

NOTE into a Transaction Account as a General-Deposit is but one reason there is no

longer a Real-Party-in-Interest; as, in part,

124.        LEHMAN BROTHERS BANK FSB negotiated (UCC § 3-201)

Petitioner's Promissory-NOTE and offset its related double-entry-bookkeeping balance

on its books and records from the consideration paid to it by LEHMAN BROTHERS

HOLDING INC, recognized as a true sale, Accord and Satisfaction (U.C.C. §3-311);

125.        negotiation is executed without any evidence of a recordable assignment

for the Mortgage; not fatal as,

126.        the Mortgage follows the NOTE.

127.        Verified admissible evidence (TRUST AGREEMENT) filed with the

SECURITIES AND EXCHANGE COMMISSION, made a part hereof and

incorporated herein by reference, finds LEHMAN BROTHERS HOLDINGS INC, as

Holder and Owner of Petitioner's NOTE did presale it, as a true sale, Accord and

Satisfaction; thereafter,

128.        LEHMAN BROTHERS HOLDINGS INC constructively setover all its

right, title and interest of said Promissory-NOTE to STRUCTURED ASSET

SECURITIES CORPORATION (no evidence of Consignment, Delivery nor

Acceptance); and,

129.        STRUCTURED ASSET SECURITIES CORPORATION offset its related

double-entry-bookkeeping balance from the consideration it did receive; *infra,*

130.        STRUCTURED ASSET SECURITIES CORPORATION constructively

transferred Petitioner's NOTE to the Trustee, in trust for LEHMAN XS TRUST

MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-11, recognized as a

true sale, (Accord and Satisfaction); however,

131.        alleged transfer of Petitioner's NOTE from STRUCTURED ASSET

SECURITIES CORPORATION is illusionary in nature, as it is done constructively

without any evidence of Consignment, Delivery or Acceptance of the Closing

documents by Trustee, a violation of New York Trust Law.

132.        LEHMAN XS TRUST MORTGAGE PASS-THROUGH CERTIFICATES,

SERIES 2006-11, pursuant to the TRUST AGREEMENT, is the true Holder and Owner

of Petitioner's debt by construction, and the debt of others similarly situated; then,

133.    STRUCTURED ASSET SECURITIES CORPORATION hypothecated Petitioner's NOTE, and the NOTEs of others similarly situated to a third party, *infra*.

134.    Hypothecating Petitioner's Mortgage-NOTE to a third party, four (4) times removed from the Originator, to a party which intends to fractionalize Petitioner's debt, and the debt of other Americans similarly situated, did then sell fractions of Petitioner's debt and the debt of others similarly situated in the form of Trust-Certificates to multiple investors; therefore,

135.    there is no longer a Real-Party-in-Interest, rather multiple interested parties each holding an indivisible fraction of the debt; see U.C.C. § 3-203.  TRANSFER OF INSTRUMENT; RIGHTS ACQUIRED BY TRANSFER; the transferee obtains no rights under this Article and has only the rights of a partial assignee; furthermore,

136.    Transfer of instrument; rights acquired by transfer.-  Fla. Stat. 673.2031 - (4) *"If a transferor purports to transfer less than the entire instrument, negotiation of the instrument does not occur. The transferee obtains no rights under this chapter and has only the rights of a partial assignee."*

137.    Furthermore, there is no evidence to show LEHMAN BROTHERS BANK FSB is a MERS® Member, at all-time relevant herein, separated the NOTE from the Mortgage; and,

138.    there is no evidence to show LEHMAN BROTHERS HOLDING Inc is a MERS® Member, at all-time relevant herein, separated the NOTE from the Mortgage; and,

139.     there is no evidence to show STRUCTURED ASSET SECURITIES

CORPORATION is a MERS® Member, at all-time relevant herein, separated the NOTE

from the Mortgage; and,

140.     there is no evidence to show LEHMAN XS TRUST MORTGAGE PASS-

THROUGH CERTIFICATES, SERIES 2006-11 was a MERS® Member, at anytime

relevant herein, separated the NOTE from the Mortgage, bifurcation, see Restatement

(Third) of Property (Mortgages) § 5.4(a) (1997); also,

141.     Federal Bankruptcy's Judicial Trustee is not a MERS® Member; *ergo*,

142.     NOTE is separated from the Mortgage as each of these financial instruments

(Mortgage-NOTE) is and was duly registered to multiple unrelated parties without an

agency agreement between them, destroyed the secured-interest.

143.     Defendant LEHMAN BROTHERS BANK FSB knowingly participated in a

premeditated scheme devised with other herein named Defendants to securitize Petitioner's

Promissory-NOTE, and the NOTEs of other Americans similarly situated, as if these

NOTEs were Negotiable-Instruments [2] [*];

---

[2]     The following passage from one of the first modern law students' hornbooks on the law of
bills and notes is illustrative: Negotiability is the property by which certain choses in action, that is,
undertakings to pay, pass from hand to hand like money. The common law knew nothing of that; or
rather the common law repudiated entirely the notion that a promise by A to B could be treated as a
promise extended also to C.

144.     Securitizing Petitioner's Promissory-NOTE, and the NOTEs of others similarly situated is done without Mortgagor's knowledge or consent;

145.     Securitizing Petitioner's Promissory-NOTE, and the NOTEs of other Americans similarly situated without Mortgagors' knowledge or consent makes the entire transaction illegal, which includes all subsequent transactions, unless negotiation is Barter.

146.     The Promissory-NOTE in question is a Non-Negotiable [*] Instrument; as,

147.     Petitioner's Promissory-NOTE contains a pre-payment penalty; also,

148.     Petitioner's Promissory-NOTE contains late-payment penalty; also,

149.     Petitioner's Promissory-NOTE contains provision for the property's sale or transfer; also,

150.     Petitioner's Promissory-NOTE contains provision for the Lender to exercise Notice of Acceleration; also,

151.     Petitioner's Promissory-NOTE contains provision of 30 days for a remedy;

152.     as such, by clear statutory definition once one promise or undertaking is found, the character of the NOTE cannot said to be negotiable; however,

153.     Petitioner's non-negotiable NOTE, and the NOTEs of other Americans similarly situated is securitized.

154.     Securitization of Petitioner's NOTE, and the NOTEs of others similarly situated employ the Uniform Electronic Transactions Act, (1999), ("UETA");

155.     under the Uniform Electronic Transactions Act Petitioner's Promissory-NOTE is digitized into a Synthetic-NOTE [*], thereafter electronically transferred, conjoined or bundled with others similarly situated Synthetic-NOTEs create a Mortgage-Backed Security, in an Electronic Book-Entry [*] Registration system;

156.     Electronic Book-Entry Registration system is analogous to an Excel® Electronic-Spread-Sheet [*], showing who owns what and when; thereafter,

157.     the original Promissory-NOTE is deliberately destroyed, to avoid (confusion) implication of Double-Dipping, or Stellionate. See **FL Mortgage Banker Assn Admits Notes Destroyed**," "Exhibit E" hereto attached and incorporated herein by reference, certified copy in hand; as,

158.     Attorney, Virginia Townes, BAR Number 361879, September 29th 2009, appeared, gave testimony before the SUPREME COURT OF FLORIDA, speaking for the Florida Bankers Association, composed of more than three hundred (300) banks, is obviously under the erroneous assumption that the genuine Promissory-NOTE and Mortgage may be electronically scanned thereafter the Promissory-NOTE and Mortgage may be, *"... deliberately eliminated to avoid confusion ..."*

159.     UETA *"... applies only to transactions between parties each of which has agreed to conduct transactions by electronic means."*

160.     Uniform Electronic Transactions Act is not applicable to Petitioner's Mortgage-NOTE as the Act is in conflict with §90.953 Fla. Stat;

161.      Uniform Electronic Transactions Act is not applicable to Petitioner's Mortgage-NOTE as the Act is in conflict with §673.1041 Fla. Stat;

162.      Uniform Electronic Transactions Act is not applicable to Petitioner's Mortgage-NOTE as the Act is in conflict with §678.1021 Fla. Stat; and,

163.      Uniform Electronic Transactions Act specifically exempts Residential Mortgage-Backed Securities from its application; as,

164.      a negotiable instrument or a non-negotiable instrument must be signed by the hand of the Maker;

165.      Uniform Electronic Transactions Act is not applicable to the creation and execution of a testamentary trust, i.e. Petitioner's Mortgage, see Cestui Que Vie Act 1666; for UETA see Florida Title 39 Chapter 668 *et seq*;

166.      Uniform Electronic Transactions Act is not applicable to a contract or other record to the extent it is governed by the Uniform Commercial Code other than sections 1-107 and 1-206 and Articles 2 and 2A;

167.      Financial Instruments governed by one of the remaining Articles of the UCC -- Article 3 (Negotiable Instruments), Article 4 (Bank Deposits and Collections), Article 4A (Funds Transfers), Article 5 (Letters of Credit), Article 6 (Bulk Sales), Article 7 (Documents of Title), Article 8 (Investment Securities), and Article 9 (Secured Transactions) -- may not rely on UETA for validity.

**168.**          The "*deliberate elimination*" of the original NOTE "*to avoid confusion,*" precludes the protection ordinarily provided by §673.3091(1)(b) Fla. Stat., because loss of possession occurred during the transfer of the NOTE, from its present form into a Mortgage-Backed Security, as the UETA is an essential element of this metamorphosis;

**169.**          alternatively, equity considered, deliberate and intentional alteration of a thing (squeezing the juice from an orange, or conjoining NOTEs into a securities, conjoining securities creating BONDS) precludes the alteror of that thing, its Successor or Assignee thereof from undoing the deed (returning the juice back to its original state as an orange, or separating an individual security from a BOND, converting it back into a NOTE); as,

**170.**          Securitization is irreversible.

**171.**          Petitioner's NOTE was transformed into a digitized Synthetic-NOTE, bundled or conjoined with other Synthetic-NOTEs became a Mortgage-Backed Security;

**172.**          once the NOTE is transformed, or morphed into a Mortgage-Backed Security, the NOTE no longer exists, thus rendering the Mortgage a nullity; for two reasons,

**173.**          NOTE is "*...deliberately eliminated to avoid confusion,*" vis-à-vis is really destroyed to avoid the implication or inclination to Stellionate; alternatively,

**174.**          NOTE is destroyed by operation of law; because,

**175.**          LEHMAN BROTHERS BANK FSB *et al.* motivation is to use Petitioner's Promissory-NOTE, and those of others similarly situated for general business use, to make a profit including interest; and,

176.      LEHMAN BROTHERS BANK FSB *et al.* plan of distribution of the NOTE

resembles distribution of a security; and,

177.      the investing public reasonably expects that the NOTE is a security; and,

178.      there is a regulatory scheme protecting the investor other than the securities

laws, includes NOTE subject to Federal Deposit Insurance, and Employee Retirement

Income Security Act; see **Reves v. Ernst & Young**, 110 S. Ct. 945 (1990); therefore,

179.      NOTE no longer exists, as it is a "security" within the meaning of the U.C.C.

§8-102(a)(15); also,

180.      a security within the meaning of the Securities Act §2(1), 3(a)(3); also,

181.      a security within the meaning of the Exchange Act § 3(a)(10);

182.      NOTE no longer exists, as it is considered to be a security;

183.      LEHMAN BROTHERS HOLDINGS INC knowing of the non-negotiability

of the NOTE held the instrument, as required, but never-the-less constructively sold it.

184.      Petitioner on or about February 28th 2010, advised AURORA LOAN

SERVICES LLC, MERSCORP, MERS®, DAVID J. STERN P.A., DAVID JAMES

STERN Esquire, MISTY ALLEN BARNES Esquire, KAROL S. PIERCE Esquire, and

CASSANDRA M. RACINE-RIGAUD Esquire, of Fraud, fraud in the factum, constructive

fraud, willful fraud, telecommunications fraud, mail fraud, bank fraud, enticement to fraud,

fraud by conversion, fraud by inducement, actual fraud, defamation of character and

identity theft; by,

**185.**      Notarial presentment (third-party-witness) delivered to each aforementioned party in writing;

**186.**      Notarial presentment was delivered by U.S. Registered Mail, and accepted;

**187.**      Notarial presentment was delivered by U.S. Registered Mail whereby each envelope carried Twenty-One ($21.00) Dollars in stamps thereon; whereas,

**188.**      AURORA LOAN SERVICES LLC, MERSCORP, MERS®, LAW OFFICE OF DAVID J. STERN P.A., DAVID JAMES STERN Esquire, MISTY ALLEN BARNES Esquire, KAROL S. PIERCE Esquire, and CASSANDRA M. RACINE-RIGAUD Esquire, all agreed with each allegation of wrong doing, by tacit acquiescence.

**189.**      Usury, lex Anastasiana §369[*], whereby Defendant AURORA *et al.*, by avarice is attempting to charge Petitioner approximately fifty-thousand percent (50,000 %) interest per year; *ergo* claim for Disgorgement, Recoupment and is Criminal Usury; see §687.071(7), Fla. Stat. (2010),

**190.**      Criminal Usury nullifies an agreement.

**191.**      U.S. BANCORP Inc is a named party herein as it is successor in interest to LASALLE BANK NATIONAL ASSOCIATION as TRUSTEE in trust for a Foreign-Unincorporated-Association [*], a/k/a/ A Contractual Organization[*], a/k/a/ REMIC, a/k/a/ Investment Company, a/k/a New York Common-Law Trust, titled LEHMAN XS TRUST MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-11.

192.     Petitioner alleges, in part, AURORA's employee THEODOR SCHULTZ, and

JOANN REIN is responsible for fabricating colorable Assignments, Extrinsic Fraud; then,

193.     AURORA recorded said fabricated colorable Assignments as Exhibits with

the Clerk of the respective Court facilitating two separate acts of Uttering, done

knowingly, or should have known same.

194.     LAURA MCCANN, CYNTHIA WALLACE a/k/a CINDY WALLACE

alleged to have jointly or severally provided Perjured-Testimony, knowingly acted as a

false-witness, presented testimony known to be false at the time the words were recorded

and subsequently verified.

195.     LAW OFFICE OF DAVID J. STERN P.A., DAVID JAMES STERN Esquire,

KAROL S PIERCE Esquire, CASSANDRA RACINE-RIGAUD Esquire, and MISTY

BARNES Esquire, alleged co-conspirators, facilitators of fraud upon the Court and this

Petitioner in particular, or alternatively, acted in a professionally negligent manner.

196.     Defendant DARLINE DIETZ permitted its Notarial identity to be used by

third parties, facilitated either by computer command (digitized signature, or stamp), or by

electro-mechanical means (scribed signature done by a hand-writing machine holding a

pen a/k/a autopen signature, since there is little if any variation in the signatures found on

both of the Assignments in question).

197.      DEFENDANT jointly or severally devised, support or employ a corporate structure, an artifice titled MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC;

198.      the purpose of MERS® appears to be separation of the NOTE from the Mortgage in order to speed-up transfers of Mortgage debt;

199.      MERS® constructively avoids the traditional recording of Mortgage transfer within each jurisdictional County, the result of which is obfuscation as to the identity of the true owner of Petitioner's alleged debt and of other Americans similarly situated;

200.      MERS® corporate structure creates a conduit whereby four (4) Parties are now making claim of ownership to Petitioner's alleged debt, *infra*.

201.      Based on the foregoing, any part herein found to be true or correct; it is not hard to find the cause for Mental Anguish or Emotional Distress.

**[Intentionally left blank]**

## II.
## <u>JURISDICTION AND VENUE</u>

**202.**     This Court has original subject matter jurisdiction of this action pursuant to an

Act of Congress, 93 Stat. 284, Public Law 96-170, December 29th 1979, an Act to permit

civil suits under section 1979 of the Revised Statutes 42 U.S.C. 1983, against any person

acting under color of any law or custom of the District of Columbia who subjects any

person within the jurisdiction of the District of Columbia to the deprivation of any right,

privilege, or immunity secured by the Constitution and laws; statutorily this controversy

encompasses a violation of the FDCPA, Title 15 *et seq*; 18 U.S.C. §§ 1962 and 1964; 28

U.S.C. §§ 1331, 1332, and 2201, as to a federal question between a citizen of the State of

Florida, including others similarly situated, and a citizen of a foreign state; Petitioner and

others similarly situated also seek relief under the Declaratory Judgment Act, and the

amount under controversy exceeds Five-Million ($5,000,000.00).

**203.**     Venue is proper in this Judicial District as DEFENDANT (Corporate entity,

or alike) conduct significant business within this District and that a substantial part of the

events or omissions giving rise to this claim occurred in this judicial district, therefore

DEFENDANT is subject to ***in personam*** jurisdiction in this judicial district; 28 U.S.C.

§§ 1391(b)(2), 1391(c).

# III.
## PARTIES

204.    Petitioner, JOHN KORMAN, Private Attorney General, holds equitable title

and possession of immovable real-estate located within Palm Beach County, Petitioner is a

citizen of the State of Florida, over the age of majority, with capacity to act as a Private

Attorney General, for himself and others similarly situated.


205.    **AURORA LOAN SERVICES LLC;**

[Defendant], AURORA LOAN SERVICES, LLC originates and
services prime and subprime residential mortgage loans through
wholesale and correspondent channels. The company also buys
mortgages originated by other mortgage bankers, banks, and credit
unions. AURORA LOAN SERVICES, LLC was formerly known as
Aurora Loan Services, Inc. The company was founded in 1997,
headquartered 10350 Park Meadows Drive, in Littleton, Colorado
80124. AURORA LOAN SERVICES, LLC operated as a subsidiary
of LEHMAN BROTHERS BANK, FSB.
Phone: 720-945-3000 – 877-300-8695

[hereinafter, square bracket[s] mean; emphasis added, *infra*]


206.    TOM WIND;

CHIEF EXECUTIVE OFFICER and PRESIDENT of AURORA

LOAN SERVICES LLC, Tom Wind, at all time relevant, possesses Superior

Knowledge, and from whom all Corporate action / policy is derived, and Tom

Wind is responsible for the actions of AURORA LOAN SERVICES, LLC.

207.        LEHMAN BROTHERS BANK, FSB;
LEHMAN BROTHERS BANK, FSB [Defendant] is an equal housing lender was headquartered in Wilmington, Delaware. Lehman Brothers Bank is a wholly-owned subsidiary of Lehman Brothers, a global finance leader that serves the financial needs of governments and municipalities, corporations, institutions, and high net worth individuals globally. Lehman Brothers Bank is a market-leading investment bank offering mortgage and consumer loans with products and pricing consistent with the Lehman Brothers name.
Phone: 302-654-6179
web-site address http://www.lehmanbrothersbank.com which re-directs the operator to this web-site; https://www.aurorabankfsb.com/

LEHMAN BROTHERS BANK, FSB, [concurrent with the Firm LEHMAN

BROTHERS HOLDINGS INC] filed for Chapter 11 protections under Bankruptcy

Code, on September 15th 2008.

208.        AURORA BANK FSB;
AURORA BANK FSB [Defendant] provides banking products and services. It offers checking and savings accounts, mortgages, credit cards, and CDs; deposit by mail, direct deposit, and electronic transfers; loan services, which include home loans, refinance, bond administration, and master servicing; commercial lending solutions; and online banking services. AURORA BANK FSB was formerly known as LEHMAN BROTHERS BANK, FSB, changed its name April 24th 2009. The company was founded in 1921 and is based Brandywine Building, 1000 West Street Suite 200, Wilmington, DE 19801. As of July 1, 1999, AURORA BANK FSB operates as a subsidiary of Lehman Brothers Bancorp Inc.
Phone: 302-654-6179 Fax: 302-428-3673
www.aurorabankfsb.com

**209.**      LEHMAN BROTHERS BANCORP INC;

Defendant Lehman Brothers Bancorp Inc., a Delaware based corporation, through its

subsidiaries provides mortgage and retail banking services. The company was

incorporated in 1999 and is based in Brandywine Building, 1000 West Street Suite 200,

Wilmington, Delaware 19801. Lehman Brothers Bancorp Inc. operates as a subsidiary of

LEHMAN BROTHERS HOLDINGS INC Phone: 302-654-6179 Fax: 302-428-3673

**210.**      LEHMAN BROTHERS HOLDINGS INC;

Defendant LEHMAN BROTHERS HOLDINGS INC ("LBHI") was a global financial

services firm until September 15, 2008 when the firm filed for Chapter 11 bankruptcy

protection. Subsequently, 22 additional affiliates of LBHI (together with LBHI, the

"Debtors") filed petitions in the United States Bankruptcy Court for the Southern

District of New York seeking relief. The Debtors' cases have been assigned to Judge

James M. Peck. Pursuant to Docket #86, these cases are jointly administered for

procedural purposes, meaning that all pleadings filed in these cases will be reflected on

case docket 08-13555 ("Main Case Docket"). The Main Case Docket can be accessed

through the website maintained by the United States Bankruptcy Court (http://www.

nysb.uscourts.gov). LBHI participated in business investment banking, equity

and fixed-income sales, research and trading, investment management, private equity,

and private banking. It was a primary dealer in the U.S. Treasury securities market. Its

primary subsidiaries included LEHMAN BROTHERS INC., Neuberger Berman Inc.,

AURORA LOAN SERVICES, INC., SIB Mortgage Corporation, LEHMAN

BROTHERS BANK, FSB, Eagle Energy Partners, and the Crossroads Group. The

firm's worldwide headquarters were in New York City, with regional headquarters in

London and Tokyo, as well as offices located throughout the world.

Address and phone number of LEHMAN BROTHERS HOLDINGS INC is 1271 Avenue

of the Americas, New York, New York, 10020; Phone: 646-285-9000.

For questions related to LEHMAN BROTHERS HOLDINGS INC's Chapter 11 filing,

please call: 1-866-879-0688

211.    LEHMAN BROTHERS INC;
        Defendant LEHMAN BROTHERS INC; this is the website for
        information pertaining to the U.S. Securities Investor Protection Act
        of 1970 (SIPA) liquidation of Lehman Brothers Inc. ("LBI"), the
        U.S. broker-dealer of Lehman Brothers. James W. Giddens was
        appointed Trustee for the liquidation, and Hughes Hubbard & Reed
        LLP was appointed as counsel to the Trustee. On September 19,
        2008, the Court entered an order granting the application of the
        Securities Investor Protection Corporation (SIPC) for issuance of a
        Protective Decree adjudicating that the customers of LBI are in need
        of protection afforded by the U.S. Securities Investor Protection Act
        of 1970 (SIPA). The liquidation has been referred to, and is now
        being administered under, the auspices of The Honorable James M.
        Peck, United States Bankruptcy Court for the Southern District of
        New York (Case NO. 08-01420 (JMP) (SIPA). The liquidation of
        LBI is overseen by James W. Giddens, as the Trustee appointed by
        the United States District Court for the Southern District of New
        York. The Trustee fulfills public duties assigned under SIPA. The
        Main Case Docket can be accessed through the website maintained
        by the United States Bankruptcy Court
        (http://www.nysb.uscourts.gov).  [emphasis in original]

For questions related to Lehman Brothers Inc. ("LBI") SIPA proceeding, please call:

1-866-841-7868

212.         MERSCORP HOLDINGS, INC;

Defendant, MERSCORP HOLDINGS, INC. ("MERSCORP") operates as an electronic

loan registry for the mortgage finance industry in the United States. The company

eliminates the need to prepare and record assignments when trading residential and

commercial mortgage loans. It also acts as nominee in the county land records for the

Lender and Servicer. The company serves mortgage originators, servicers, warehouse

lenders, wholesale lenders, retail lenders, document custodians, settlement agents, title

companies, insurers, investors, county recorders, and consumers. MERSCORP was

formerly known as MERS®, Inc. and changed its name to MERSCORP Inc. in June 1998.

The company was incorporated in 1995, again in 2011 with its present principal place of

business located at 1818 Library Street, Suite 300, Reston, Virginia 20190-6280.


213.         MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC ("MERS®")

Defendant Mortgage Electronic Registration System, Inc., d/b/a MERS®, is a wholly-

owned subsidiary of Defendant MERSCORP; like MERSCORP, MERS® is a Delaware

corporation and shares an address with MERSCORP at 1818 Library Street, Suite 300,

Reston, Virginia 20190-6280. MERS® was incorporated in 1995, then again in 1999 by

the mortgage banking industry to create a secondary mortgage market, internally

administer the buying and selling of a Mortgage-NOTE, and to simplify the

administration of home mortgages, including foreclosure proceedings. When a

Mortgage is registered on the MERS® System legal title is held in the name of MERS®

and MERS® acts as Mortgagee of record in county land records. While NOTES are

privately indorsed and negotiated many times over the life of the loan, MERS® remains

Mortgagee of record provided the indorsee is a MERS®' member. Although there is no

record of such conveyance recorded on county land records, in the public domain,

MERS® controls recordation of such negotiations of title internally, privately.

> In MERS® own words; *"MERS® was created to avoid the cost
> and delays caused by assignments of mortgages and deeds of
> trust. To avoid the need to prepare and record an assignment
> with the County Recorder's office, MERS® holds title as
> nominee for the **true mortgagee**/beneficiary of the
> mortgage/deed of trust and as transfers occur, they are
> recorded on the MERS® computer in a book entry systems
> similar to the transfer of stocks."* (1999)     [**emphasis added**]

**214.**      STRUCTURED ASSET SECURITIES CORPORATION;

Defendant Structured Asset Securities Corporation, since 1987, a Delaware Corporation,

a/k/a a "Special-Purpose-Vehicle [*]" on February 9th 2009 sought relief under Chapter

11 Bankruptcy protection; which was LEHMAN BROTHERS HOLDINGS INC's asset

securitization unit, seeking to wind down with its parent company. The case is

STRUCTURED ASSET SECURITIES CORP., 09-10558, U.S. Bankruptcy Court,

Southern District of New York (Manhattan). Lehman's case is In re LEHMAN

BROTHERS HOLDINGS INC., 08-13555, U.S. Bankruptcy Court, Southern District of

New York (Manhattan).

**215.**          ASSOCIATES LAND TITLE INC

Defendant Associates Land Title Inc was founded by and for real estate and mortgage

professionals with the unique needs of the industry in mind. It is a Corporate entity serving

Palm Beach County, Martin and St. Lucie counties with the highest level of

professionalism since 2004 and executed the Closing between LEHMAN BROTHERS

BANK FSB and this Petitioner, accepted MERS® as the Mortgagee of record. Located at

4050 US Highway 1, Suite 319, Jupiter, Florida 33478, and phone number (561) 625-9007.


**216.**     THEODORE SCHULTZ;

Defendant THEODORE SCHULTZ, as Vice President of MERS®, Certifying Officer is

Grantor / Assignor; concurrently THEODORE SCHULTZ is Assistant Vice President

of AURORA LOAN SERVICES LLC beneficiary as the Grantee / Assignee; 10350

Park Meadows Drive, Littleton Colorado 80124, Phone: 720-945-3000.


**217.**     JOANN REIN;

Defendant JOANN REIN, Vice President of MERS®, as Certifying Officer, is acting in

capacity as Grantor / Assignor, concurrently occupies an Office in the Default

Resolution Department as an Employee of AURORA LOAN SERVICES LLC,

beneficiary being Grantee / Assignee of Petitioner's alleged debt; 10350 Park Meadows

Drive, Littleton Colorado 80124, Phone: 720-945-3000.

**218.**      LAURA MCCANN;

Defendant LAURA MCCANN, Affiant, and an occupant of the Office titled Vice

President Default Resolution, employed by AURORA LOAN SERVICES LLC, 10350

Park Meadows Drive, Littleton Colorado 80124, Phone: 720-945-3000.


**219.**      CYNTHIA WALLACE a/k/a CINDY WALLACE;

Defendant CYNTHIA WALLACE a/k/a CINDY WALLACE, Affiant, and an occupant

of the Office titled, Default Resolution, employed by AURORA.  10350 Park Meadows

Drive, Littleton Colorado 80124, Phone: 720-945-3000.


**220.**      LAW OFFICE OF DAVID J. STERN P.A.; Defendant LAW OFFICE OF

DAVID J. STERN Professional Association, 900 South Pine Island Road Suite 400,

Plantation Florida 33324-3920, Phone Number (954) 233-8000;


**221.**      DAVID JAMES STERN, Esquire, BAR / Bond Number 911054;

DAVID JAMES STERN, Esquire, at all times relevant herein is employed by the LAW

OFFICE OF DAVID J. STERN P.A., 900 South Pine Island Road Suite 400, Plantation

Florida 33324-3920, Phone Number (954) 233-8000;

222.        KAROL S. PIERCE, Esquire, Bar/Bond Number 70279;

Defendant KAROL S. PIERCE, Esq., at all times relevant herein is employed by the

LAW OFFICE OF DAVID J. STERN P.A., 900 South Pine Island Road Suite 400,

Plantation Florida 33324-3920, Phone Number (954) 233-8000;


223.        CASSANDRA RACINE-RIGAUD, Esquire, Bar/Bond Number 450065;

Defendant CASSANDRA RACINE-RIGAUD, Esq., at all times relevant herein is

employed by the LAW OFFICE OF DAVID J. STERN P.A., 900 South Pine Island

Road Suite 400, Plantation Florida 33324-3920, Phone # (954) 233-8000;


224.        MISTY ALLEN BARNES, Esquire, BAR/BOND Number 31001;

Defendant MISTY ALLEN BARNES, Esq., at all times relevant herein is employed by

the LAW OFFICE OF DAVID J. STERN P.A., 900 South Pine Island Road Suite 400,

Plantation Florida 33324-3920, Phone Number (954) 233-8000;


225.        DARLINE DIETZ;

Defendant DARLINE DIETZ, Notary expires 03/22/2010, employed by AURORA

LOAN SEVICES LLC to acknowledge the signature of Vice President of MERS®, or

the two witnesses, found at; 10350 Park Meadows Drive, in Littleton, Colorado 80124.

# IV.
## <u>MERS® IS A STRAWMAN</u>

226.    For purpose of this action, MERS® shall also refer to MERSCORP and each and every shareholder of MERSCORP, who are either named hereinabove in the style of this case, or others which may be named as their identities are revealed.

227.    MERS® is not a product of any law, statute or ordinance found in this country;

228.    MERS® is an entirely fictional construct, inspired, designed, implemented, or employed by DEFENDANT *et al*;

229.    MERS® is incorporated within the State of Delaware;

230.    MERS® was first incorporated in Delaware in 1995, again in 1999;

231.    MERS® is a wholly owned subsidiary of MERSCORP HOLDINGS, INC;

232.    MERS® and MERSCORP's principal place of business is, at all times relevant, 1595 Spring Hill Road, Suite 310, Vienna, Virginia 22182;

233.    MERS® operates a private national electronic registry that tracks beneficial interest and servicing rights associated with residential Mortgage-Loans and any changes in those interests or rights;

234.    MERS® Members register loans and report transfers, foreclosures, and other changes to the status of residential Mortgage-Loans on the MERS® System;

235.        Petitioner, as Borrower unilaterally appointed MERS® on said Mortgage as

Nominee and Mortgagee in favor of LEHMAN BROTHERS BANK FSB, in a very limited

capacity, in name only as Mortgagee of record, for the benefit of the Beneficiary, who at

all times relevant is acting for the benefit of the Donor;

236.        MERS® serves as Nominee for Petitioner's mortgage by tacit Procuration; as,

237.        MERS® did not accept said appointment as Nominee / Mortgagee of

Petitioner's Mortgage by indorsement, and there was no consideration involved;

238.        MERS® is Lender's Nominee appointed by Petitioner to act in a very limited

capacity, to hold the mortgage lien interest, not to hold an interest in the mortgage lien;

239.        MERS® holds legal title to the Mortgage, as Nominee for the beneficial

interest of the Lender or Investor, Successor and Assignee thereof, but not for itself;

240.        MERS® has no beneficial interest in Petitioner's Mortgage;

241.        MERS® is not a named party to Petitioner's Promissory-Note;

242.        No legal controversy could arise between MERS® against Petitioner in

reference to the Mortgage in question;

243.        Legal controversy does exist between this Petitioner against MERS®, the

wholly own subsidiary of MERSCORP, jointly or severally, with others named or yet to be

named, created, or actively employ an Entity in which its business model acts in such a

manner as a conduit to facilitate Fraud;

244.    MERS® Members appear to be employing the MERS® system to obfuscate who the Real-Party-in-Interest is; as,

245.    not all Assignees are MERS® Members; and,

246.    essential public land records is being transferred to a Private recordation system;

247.    Private recordation system is contrary to the best interests of Petitioner as a Home-Owner, and is contrary to the best interests of others similarly situated;

248.    Private recordation system is also contrary to Public Policy; as,

249.    MERS® Members are encouraged not to record each assignment or negotiation of beneficial interest onto the Public record, *ergo* are financially rewarded by avoiding payment of the associated County recording fees;

250.    MERS® claims that one of the advantages of its paperless systems is that mortgage liens become immobilized by MERS® continuing to hold said Mortgage lien, while beneficial interest may be negotiated between investors byway of indorsement and delivery amongst MERS®' Members;

251.    MERS® claims that one of the advantages of its paperless systems is transfer of servicing rights from one MERS® Member to another MERS® Member; however,

252.    Lender's priority is established by public notice;

253.        public notice requires recordation of Petitioner's Mortgage post-Closing within the county wherein Petitioner's real-property lies, and same is applicable to all other Americans similarly situated;

254.        Petitioner's original Mortgagee is recorded under the name of MERS®, in this state's Constitutionally Created Office occupied by the Public's Registrar of Deeds;

255.        subsequent off-record (intra-MERS®) negotiation of Petitioner's debt will retain its original priority in the Public, with MERS® as Mortgagee of record; however,

256.        MERS® is not truly Mortgagee unless the legal definition of Mortgagee has some new meaning Petitioner is unaware of; because,

257.        MERS® did not loan Petitioner any money; and,

258.        Petitioner does not owe any money to MERS®;

259.        MERS®, by its own admission does not store genuine documents or copies thereof neither Petitioner's NOTE nor Mortgage;

260.        MERS® can not be mortgagee because it has no enforceable right in the debt obligation securing the Mortgage; and,

261.        MERS® will not suffer an injury should Petitioner fail to make payments on the Mortgage; as such,

262.        MERS® may be a Nominee a/k/a Strawman, but is not a legally cognizable Mortgagee with right, title nor interest, rather acts for Mortgagee in name only; as such,

263.        MERS® fails to fall within the four corners of the legal term of "Mortgagee;"

*ergo,*

264.        Petitioner's property is not mortgaged to MERS®, not by agreement,

Petitioner unilaterally appointed MERS® as Mortgagee in name only for the benefit of

LEHMAN BROTHERS BANK FSB;

265.        Petitioner unilaterally appointed MERS® as Mortgagee without consideration;

266.        MERS® is a Bankruptcy-Remote [*] special purpose vehicle;

267.        MERS® holds no assets which includes the publically recorded Mortgage

naming Petitioner as Mortgagor;

268.        MERS® is Mortgagee of record for over thirty million active mortgages,

valued in hundreds-of-billions, perhaps trillions;

269.        MERS® based on its diminutive size and meager asset base is grossly

undercapitalized to cover the potential liability stemming directly from its role as primary

mortgagee on tens of millions of Mortgages;

270.        MERS® is a Strawman; see <u>Landmark National Bank v. Kesler</u>, 216 P.3d 158

(Supreme Court of Kansas, 2009).

271.        MERS® is essentially a shell, *alter ego* of its Creator(s) or Member(s);

272.        MERS® does not have any employees; or,

273.        MERS® so called employees are shared with MERSCORP, which have a very

close working relationship as to appear as employees who work for the same Entity; as,

274.      MERS® Personnel Policy does emanate from a common source,

MERSCORP;

275.      MERS® and MERSCORP have common Directors, or common Officers;

276.      operations of MERS® and MERSCORP share a dependency; and,

277.      MERSCORP wholly owns and dictates policy to, and of MERS®;

278.      MERS® has twenty-thousand Certifying Officers;

279.      MERS®' twenty-thousand Certifying Officers are not paid by MERS®;

280.      MERS® system allegedly tracks the negotiation of beneficial interest and to

what entity said NOTE is conveyed to, on its MILESTONE REPORT;

281.      MERS®' MILESTONE REPORT is a computer retained record of each

Assignor / Assignee transaction that took place on the Private system of MERS®; if,

282.      Successor is a Member; and if,

283.      Successor-Member up-dates the MERS® system with its negotiation; as,

284.      in regular course of business MERS® does not record each negotiation of

Petitioner's Promissory-NOTE, each successor Member is encouraged to do so;

285.      MERS® system does not display the true identity of each Holder-in-Due-

Course of Petitioner's NOTE; because,

286.      Non-MERS® Member as Successor-in-Interest can not up-date the current

MERS® electronic registration system for lack of access; as such,