**287.**　　　　Successor-in-Interest does not record its Notice of negotiated beneficial interest; *ergo*,

**288.**　　　　Assignor appears on the MERS® system maintaining its position of priority, right title and interest, after conveyance of all right title and interest is accepted by Successor-in-Interest a/k/a Assignee, a situation representative of this instant case;

**289.**　　　　in the event Successor-in-Interest is a MERS® Member and does up-date the current MERS® electronic registration system (MILESTONE REPORT) showing the negotiation of beneficial interest, but lacks proper receipt for said Closing-Documents[*], opens the door to Stellionate, or Double-Dipping by third parties.

**290.**　　　　The MERS® system amounts to private lawmaking bypasses the protections of state law and creates a new scheme of governance solely for the benefit of its investors.

**291.**　　　　Two or more affiliated businesses, like MERS® and MERSCORP constitute a "single employer" may be held jointly and severally liable for violations under the WARN Act. See WARN Act. <u>Pearson v. Component Tech. Corp.</u>, 247 F.3d 471, 478 (3d Cir. 2001).

[Intentionally left blank]

# V.
## NATURE OF ACTION

292.        Petitioner re-alleges and affirms each and every preceding paragraph of this Complaint and incorporate same here as if alleged anew.

293.        This is a civil action for, *inter alia*, AURORA filing a sham Action against Petitioner in Case Number 50 2009 CA 017057 XXXX MB Division AW, IN THE CIRCUIT COURT OF THE FIFTEENTH JUDICIAL CIRCUIT, IN AND FOR PALM BEACH COUNTY, FLORIDA;

294.        AURORA coming into Court without Clean-Hands, *supra*;

295.        Defendant AURORA comes into Court with what it claims is a copy of Petitioner's Promissory-NOTE, which is a Forgery, U.C.C. §3-302; as,

296.        Petitioner's signature is not found on AURORA's copy of the alleged copy of Petitioner's NOTE in question (AURORA's Exhibit);

297.        Petitioner denies the signature found on AURORA's copy of the alleged NOTE is authentic, U.C.C. §3-308.

298.        Petitioner complains about AURORA fabricating colorable assignments in Violation of Title 11, 28 U.S.C. §157 *et seq*.; alternatively is Extrinsic Fraud;

299.        AURORA recording an Assignment of real-estate with the Clerk of a Court as *prima fascia* evidence in order to show Standing, whereby LEHMAN BROTHERS BANK FSB is the Original Lender is an Act of Intrinsic Fraud, by Uttering.

**300.**      MERS® byway of its alleged Certifying Officers (non-Attorneys) is informing the Court MERS® *et al.* transferred a debt facilitated by a verified Assignment of Petitioner's property contemporaneously with a Bankruptcy proceeding, did do so twice.

**301.**      Petitioner complains AURORA and MERS® *et al.*, separately or severally assigned a Mortgage in which neither AURORA nor MERS® has lawful, legal, nor an equitable interest in, did do so twice.

**302.**      Petitioner complains AURORA and MERS® *et al.*, separately or severally assigned Petitioner's NOTE in which neither AURORA nor MERS® has any beneficial interest, did do so twice; whereby,

**303.**      MERS® operational procedures manual and corporate by-laws preclude MERS® from transferring a Beneficial-Interest in a debt.

**304.**      Petitioner complains MERS® *et al.* seemingly assigned Power-of-Attorney to AURORA without the legal capacity to do so, absent Power-of-Attorney or similar authorization from Maker, to Lender, its successor, or assignee thereof, to MERS®.

**305.**      Unjust Enrichment, or Usury whereby AURORA is a Third-Party-Debt-Collector in its relation to Petitioner, allegedly purchased Petitioner's debt for Ten (10) Federal Reserve Notes ("FRN"), seeking to foreclose on a Mortgage-NOTE / Home;

**306.**      value of the NOTE Six-Hundred-and-Fifty-Thousand ($650,000.00), of which AURORA has already collected Eighty-One-Thousand-One-Hundred-Thirty, 76/100 ($81,130.76) in rent;

307.        Eighty-One-Thousand-One-Hundred-Thirty, 76/100 ($81,130.76) in rent,

legally belongs to Donor's estate.

308.        Usury, Lex Anastasiana §369, based on AURORA's purchase price, is

actually due Ten FRNs, "*...and other good and valuable consideration*" (to be

discovered), plus lawful interest thereon, if vindicated; however,

> In a Debtor's RICO action against its creditor, alleging that the
> creditor had collected an unlawful debt, an interest rate (where
> all loan charges were added together) that exceeded, in the
> language of the RICO Statute, "twice the enforceable rate." The
> Court found no reason to impose a requirement that the
> Petitioner show that the Defendant had been convicted of
> collecting an unlawful debt, running a "loan sharking"
> operation. The debt included the fact that exaction of a usurious
> interest rate rendered the debt unlawful and that is all that is
> necessary to support the Civil RICO action. **Durante Bros. &
> Sons, Inc. v. Flushing Nat 'l Bank**. 755 F2d 239, Cert.
> **denied, 473 US 906 (1985).**

309.        AURORA was represented by a law Firm in each of the herein above

mentioned legal Actions, knew, AURORA is not the original Lender;

310.        AURORA lacked Standing at commencement, *ergo* fabricated untimely

colorable assignments, absent a legal foundation;

311.        AURORA recorded said Assignments with the Clerk of the Courts in order to

show an interest in Petitioner's property, two distinct and separate acts of Uttering;

312.        AURORA is attempting to commit an act of Larceny against Petitioner, and

other Americans similarly situated, under similar circumstances;

313.      AURORA's attempted Larceny against Petitioner, and those of others similarly situated, employ a corrupt law Firm;

314.      corrupt law Firm facilitates said Larceny by employing the justice system;

315.      AURORA is slandering Petitioner's Title and others similarly situated;

316.      AURORA Defamed Petitioner's Character and the character of others similarly situated by providing un-verified information to third party reporting agencies;

317.      AURORA has damaged Petitioner's credit and other similarly situated;

318.      Mental Anguish or Emotional Distress caused by AURORA *et al.*

319.      Defendant LEHMAN BROTHERS BANK FSB steered Petitioner into an Investment-Contract as an undisclosed investor, third-party-Beneficiary using Petitioner's NOTE and the NOTEs of other Americans similarly situated;

320.      NOTEs traded from hand to hand, used same as money, to finance said Investment-Company; however,

321.      Donor holds a Possessory-Interest in the NOTE a/k/a Security a/k/a BOND, or any instrument stemming from the NOTE, as do others similarly situated hold a possessory interest in their respective NOTE;

322.      AURORA violated the FDCPA, Title 15 U.S.C. § 1692 *et seq*;

323.      AURORA's violation of Telephone Consumer Protection Act (TCPA) 1991;

324.      AURORA's violation of SECURITIES ACT OF 1933 – 1934;

325.    Original Trustee, ASSOCIATES LAND TITLE INC's violation of Title 12 U.S.C. §1813 (L)(1), as a co-conspirator to commit Larceny, failed to provide a receipt to Donor at Closing for the Promissory-NOTE / Money[*], *ergo* concealed it;

326.    Defendant AURORA employ MERS® as part of its on going criminal enterprise, as an artifice or Strawman in order to hide who the Real-Party-in-Interest is;

327.    Foreign-Unincorporated-Association, a/k/a a Common-Law Trust, founded in the State of New York, LEHMAN XS TRUST MORTGAGE PASS-THROUGH CERTIFICATES SERIES  2006-11 holding Maker's alleged debt is not a statutory person as that term is defined under Florida law; See Florida Code (2005) Chapter 622 *et seq.*

328.    Petitioner complains of Notarial Misconduct, dereliction of duty is alleged, causing Petitioner financial harm, Mental Anguish and Emotional Distress;

329.    Varies types of Fraud, including but not limited to, mail fraud, wire fraud, mortgage fraud, civil fraud, intrinsic fraud, extrinsic fraud, collateral fraud, uttering, fraudulent factum, and constructive fraud; furthermore,

330.    Petitioner complains Lender, its Successor, or Assignee thereof did not present Petitioner a Notice of Breach prior to Acceleration, pursuant to paragraph 22 of the Mortgage Instrument; and,

331.    Petitioner seeks Recoupment.

## VI. FACTS

**332.**        Petitioner re-alleges and affirms each and every preceding paragraph of this

Complaint and incorporate same here as if alleged anew.

**333.**        Between July 1st 2006 and July 31st 2006 certain Verified Controlling-

Documents[*] were executed between the following parties, LEHMAN BROTHERS

BANK FSB, as the Originator, LEHMAN BROTHERS HOLDINGS INC, as the Seller or

Sponsor, STRUCTURED ASSET SECURITIES CORPORATION, as the Purchaser /

Depositor, LASALLE BANK NATIONAL ASSOCIATION as the Trustee, AURORA

LOAN SERVICES LLC as the Servicer, created, in part, an Unincorporated-Association,

referred to in New York as a Common-Law Trust, a/k/a REMIC, which required

Petitioner's NOTE and the NOTEs of others similarly situated for its foundation, whether

Petitioner was cognizant of this fact at that time or not.

**334.**        One such Verified Controlling-Document of said REMIC (LEHMAN XS

TRUST MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-11), on file

with the Securities and Exchange Commission, is titled MORTGAGE LOAN SALE AND

ASSIGNMENT AGREEMENT, dated as of July 1, 2006, by and between LEHMAN

BROTHERS HOLDINGS INC, as seller or Sponsor, executed by Michael Hitzmann; for,

**335.**        STRUCTURED ASSET SECURITIES CORPORATION, as Purchaser or

Depositor, executed by Ellen V. Kiernan;

336.    LEHMAN BROTHERS BANK FSB was not a signatory to said

MORTGAGE LOAN SALE AND ASSIGNMENT AGREEMENT, as it already consigned

all right, title and interest of Petitioner's Wet-Promissory-NOTE[*] over to LEHMAN

BROTHERS HOLDINGS INC at Closing, as a presale, articulated within said

MORTGAGE LOAN SALE AND ASSIGNMENT AGREEMENT, see Section 1.01, <u>Sale</u>

<u>of Mortgage Loans</u> *infra*;

337.    Concurrent with execution of said MORTGAGE LOAN SALE AND

ASSIGNMENT AGREEMENT was execution of a Verified Controlling-Document titled

"TRUST AGREEMENT";

338.    Controlling-Document titled "TRUST AGREEMENT," dated July 1st 2006,

on file with the Securities and Exchange Commission, in part, created a Foreign (New

York) Unincorporated-Association titled LEHMAN XS TRUST MORTGAGE PASS-

THROUGH CERTIFICATES, SERIES 2006-11, executed by Ellen V. Kiernan for

STRUCTURED ASSET SECURITIES CORPORATION;

339.    This Controlling-Document titled TRUST AGREEMENT is executed by

Susan L. Feld for LASALLE BANK NATIONAL ASSOCIATION as Trustee, in trust for

the Beneficiary;

340.    This Controlling-Document titled TRUST AGREEMENT, executed by Jerald

W. Dreyer for AURORA LOAN SERVICES LLC, as Servicer or Master-Servicer,

whereby AURORA acquired Superior-Knowledge[*];

**341.**      This Controlling-Document titled TRUST AGREEMENT executed by Michael Hitzmann for LEHMAN BROTHERS HOLDINGS INC, is executed solely for purposes of Section 11.15, Transfer of Servicing (rights);

**342.**      Concurrent with execution of said MORTGAGE LOAN SALE AND ASSIGNMENT AGREEMENT, TRUST AGREEMENT, is a Verified Controlling-Document, on file with the Securities and Exchange Commission, titled "SERVICING AGREEMENT" entered into as of July 1st 2006, by and among LEHMAN BROTHERS HOLDINGS INC., as Seller and AURORA LOAN SERVICES LLC, in its capacity as primary Servicer, and AURORA LOAN SERVICES LLC, in its capacity as Master Servicer under the TRUST AGREEMENT.

**343.**      Defendant AURORA LOAN SERVICES LLC was designated as Petitioner's Servicer, or Master Servicer, duties to commence on or after November 15th 2006 (post-Closing); See "Exhibit F" hereto attached and incorporated herein by reference wherein is found this following statement; ***"The assignment, sale or transfer of the servicing of the mortgage loan does not affect any term or condition of the mortgage instruments, other than terms directly related to the servicing of your loan."***

344.        LEHMAN BROTHERS BANK FSB sold or assigned to AURORA its right to

Service Petitioner's debt, gave Petitioner NOTICE to that effect but did not give NOTICE

to Petitioner as to a change of Creditor [3], §559.715; as such,

345.        Discharge of debt, rescission of Limited-Power-of-Attorney or any and all

negotiation which took place between Petitioner and LEHMAN BROTHERS BANK FSB

prior to its Bankruptcy is in full force and effect; as,

346.        NOTICE to Petitioner as to a change of Creditor is a condition precedent to

the collection of said debt by said Creditor following such an assignment, applies on its

face to all entities receiving an assignment of consumer debt; the term "consumer debt" is

defined broadly; see Section 559.55(1), Fla. Stat.

---

[3]

**Regulation Z; Sec. 226.39 Mortgage transfer disclosures.**

**(a) Scope. The disclosure requirements of this section apply to any covered person except as otherwise provided in this section. For purposes of this section:**

**(1) A *"covered person"* means any person, as defined in § 226.2(a)(22), that becomes the owner of an existing mortgage loan by acquiring legal title to the debt obligation, whether through a purchase, assignment or other transfer, and who acquires more than one mortgage loan in any twelve-month period. For purposes of this section, a servicer of a mortgage loan shall not be treated as the owner of the obligation if the servicer holds title to the loan, or title is assigned to the servicer, solely for the administrative convenience of the servicer in servicing the obligation.**

**(2) A "mortgage loan" means any consumer credit transaction that is secured by the principal dwelling of a consumer.**

**(b) Disclosure required. ... any person that becomes a covered person as defined in this section shall mail or deliver the disclosures required by this section to the consumer on or before the 30th calendar day following the acquisition date. If there is more than one covered person, only one disclosure shall be given and the covered persons shall agree among themselves which covered person shall comply with the requirements that this section imposes on any or all of them.**

347.      Petitioner's debt is discharged byway of negotiation with LEHMAN

BROTHERS BANK FSB, done in good faith, prior to its Bankruptcy, not cognizant as

to a change in Legal-Title to Petitioner's Debt-Obligation or Mortgage-Loan; whereby,

348.      Defendant, AURORA LOAN SERVICES LLC, at all times relevant, indicated it

was collecting a debt purportedly owed by Petitioner to LEHMAN BROTHERS BANK FSB.

349.      When in fact LEHMAN BROTHERS BANK FSB sold its right, title and

interest in Petitioner's Mortgage Loan to LEHMAN BROTHERS HOLDINGS INC which

was subsequently constructively sold to STRUCTURED ASSET SECURITIES

CORPORATION, which was subsequently constructively conveyed to LEHMAN XS

TRUST MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-11;

350.      Petitioner did not receive Notice as to a change of Creditor to Petitioner's

Debt-Obligation or Mortgage-Loan; *ergo,*

351.       LEHMAN BROTHERS BANK FSB's debt is discharged; said event is a

matter of public record prior to LEHMAN BROTHERS BANK FSB's petition for

protection under Chapter 11 Bankruptcy.

352.      Petitioner, as Borrower a/k/a Maker, a/k/a Donor, at Closing, unilaterally

appointed MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC as Nominee

for LEHMAN BROTHERS BANK FSB;

353.      MERS® as Nominee is to act in a very limited capacity, in name only, as

Mortgagee of record, for the benefit of LEHMAN BROTHERS BANK FSB;

354.     LEHMAN BROTHERS BANK FSB at all times relevant is acting for the

benefit of the Donor; however,

355.     MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC. did not

accept Borrower's unilateral appointment as Nominee nor Mortgagee by indorsement [4];

356.     unilateral appointment as Nominee or Mortgagee is presumptively accepted

by MERS® without any consideration attached thereto.

357.     AURORA LOAN SERVICES LLC on May 15th 2009 filed a foreclosure

action in its own name, for its own benefit, claiming to be the Real-Party-in-Interest a/k/a

the Creditor in Case Number 09 CA 017057, in the Fifteenth Judicial Circuit;

358.     Petitioner timely filed a MOTION TO DISMISS based on procedure, issues

of Common-Law, Standing and AURORA's claim to a Lost-NOTE;

359.     to the day, one year later, without any intervening activity [5], AURORA held

a Hearing on its MOTION FOR LEAVE TO FILE AMENDED COMPLAINT;

---

[4] To declare Petitioner as borrower, lacks the capacity to nominate or include a third party to enter into an agreement between the party of the first part and party of the second part without third party's indorsement to said agreement.

[5] While Petitioner's MOTION TO DISMISS is pending in Case Number 09 CA 017057, AURORA did file a computer generated boiler-plate Motion for Summary Judgment, which was never called for a Hearing, as it was a frivolous filing *ab initio,* as there is a genuine issue of material fact yet unresolved, furthermore AURORA failed to satisfy Fla.R.Civ.P. 1.510(e).

360.        attached to AURORA LOAN SERVICES LLC's Un-Verified AMENDED

COMPLAINT mailed on or shortly after May 6th 2010, is an Exhibit titled CORPORATE

ASSIGNMENT OF MORTGAGE, executed by THEODORE SCHULTZ, as Vice-

President of MERS®;

361.        THEODORE SCHULTZ, Vice-President of MERS® is also Assistant Vice

President of AURORA LOAN SERVICES LLC, at all times relevant herein;

362.        AURORA LOAN SERVICES LLC, at all times relevant herein, is a

subsidiary of LEHMAN BROTHERS BANK FSB prior to its Bankruptcy;

363.        THEODORE SCHULTZ acting in the capacity of Vice-President of MERS®

Nominee for LEHMAN BROTHERS BANK, FSB, (while in Bankruptcy) is alleged to of

assigned the Mortgage to AURORA LOAN SERVICES LLC, executed June 8th 2009;

364.        Assignment violates the automatic stay Order pursuant to Title 11 U.S.C.

Section 362(a)(4); and,

365.        THEODORE SCHULTZ, acting in the capacity as Vice-President of MERS®,

allegedly assigned Petitioner's NOTE to Defendant AURORA;

366.        Assignment of Petitioner's NOTE is without explanation as to where, when or

who MERS® acquired said NOTE from, as MERS® is not a party to the Note and the

record is barren of any representation that MERS® had any authority to take any action

with respect to Petitioner's Note; See "Exhibit H" hereto attached and incorporated herein

by reference; furthermore,

367.     MERS® lacks the legal capacity to assign Beneficial Interest in Petitioner's debt, or other Americans similarly situated pursuant to MERS® corporate charter, see **MERS v. Nebraska Dept. of Banking**, No. S-04-786, 270 Neb. 529, whereby Attorney for MERS® avers ***"MERS is not the owner of the promissory note secured by the mortgage and has no rights to the payments made by the debtor on such promissory note. Rather, MERS holds the mortgage lien as nominee for the owner of the promissory note."*** Attorney for MERS® went on to explain ***"It is important to understand that MERS may acquire a legal interest in a mortgage or deed of trust (as nominee for the actual lender) without acquiring any corresponding interest, legal or beneficial, in the promissory note secured by such deed of trust. This is because the note owner appoints MERS to be its agent to only hold the mortgage lien interest, not to hold any interest in the note."*** [Noting; ***"...note owner appoints MERS to be its agent..."*** is a miss-statement of fact as **Borrower appointed MERS®** as "nominee," not as "agent." Legal Terms "nominee" and "agent" are not synonymous.]

368.     THEODORE SCHULTZ, acting in the capacity as Vice-President of MERS®, nominee for the Lender, lacks the legal capacity to assign said Mortgage as MERS® does not Hold a beneficial interest in said Mortgage, irrespective of the fact said Mortgage designates MERS® as Mortgagee of record; see **LaSalle Bank Nat. Ass'n v. Lamy**, 824 N.Y.S.2d 769, 2006 WL 2251721 (Sup.2006);

369.      MERS® lacks the legal capacity to act unilaterally without a Power-of-

Attorney, or similar authorization in writing from the Real-Party-in-Interest;

370.      MERS® lacks the legal capacity to do anything with respect to said Mortgage,

once Mortgage is recorded, however seemingly assigned both Mortgage and the NOTE;

371.      Assignment of Petitioner's Mortgage-NOTE is recorded by Defendant

AURORA in Palm Beach county Florida, the state's constitutionally created Office

occupied by the Public's Registrant;

372.      first such colorable assignment recorded on June 11th 2009 and then recorded

a second such Assignment September 24th 2009, clouding Petitioner's Title *ergo*

Slandering Petitioner's Title; see 15 USC 1692(e), by Uttering; as,

373.      both colorable assignments mentioned above were executed in an untimely

manner, denying AURORA standing at the inception of both cases, *supra*; see

**Progressive Exp. Ins. Co. v. McGrath Community Chiropractic**, 913 So.2d 1281

**(Fla. 2nd DCA 2005);** further,

374.      Both colorable Assignments mentioned above, is recorded without any

evidence of an assignment of Power-of-Attorney, or similar authorization given to

MERS®, See Title XLVI Section 817.02 Fla. Stat., under CRIMES.

375.      MERS® Assignment is but a legal looking document created from whole-cloth

for evil purposes, one of which is to commit an act of Larceny against Petitioner;

376.     AURORA is attempting to commit an act of Larceny using the justice system to facilitate the injury.

377.     First colorable assignment is absent MERS® Corporate Seal, assignment executed by JOANN REIN, July 9th 2008, as Vice-President, when recorded (June 11th 2009) is to be returned to; Joann Rein, AURORA LOAN SERVICES, P.O. Box 1706, Scottsbluff, NE 69363-1706; See Exhibit "A" Assignment attached thereto;

378.     Second colorable assignment executed by THEODORE SCHULTZ, June 8th 2009, Exhibit "H" hereto attached and incorporated herein by reference, once recorded (September 24th 2009) is to be returned to; ASSIGNMENT PREP, AURORA LOAN SERVICES, P.O. Box 1706, Scottsbluff, NE 69363-1706;

379.     Assignor, MERS® Inc, acting as Nominee for LEHMAN BROTHERS BANK FSB, its Successors and Assigns, gave its address as seen on one of the assignments as "3300 S.W. 34TH AVENUE, SUITE 101, OCALA, FL 34474."

380.     Neither MERS® nor LEHMAN BROTHERS BANK FSB ever resided at 3300 S.W. 34th AVENUE, SUITE 101, OCALA, FL 34474, at any time relevant to this action; however,

381.     ELECTRONIC DATA SYSTEMS CORPORATION is located at 3300 S.W. 34th AVENUE, SUITE 101, OCALA, FL 34474, at all times relevant to this action.

**382.**     Petitioner, in response to said colorable assignment, timely filed MOTION

TO DISMISS AMENDED COMPLAINT on May 28th 2010, in part, issue of Standing

and failure to Verify Amended Complaint, Rule 1.110(b), filed after February 11, 2010;

**383.**     over ten (10) months have passed since May 28th 2010 with no activity on

file;

**384.**     March 29th 2010 Notice of Failure to Prosecute has been filed by Petitioner

in the state's venue, in that case; alternatively,

**385.**     Case Number 09-CA-017057 will ultimately be Dismissed for Lack-of-

Standing on the date of commencement, *sine qua non* of foreclosure considering the

Amended Complaint is not Verified;

**386.**     Defendant's Motion to Dismiss Amended Complaint was GRANTED

March 1st 2012; however,

**387.**     AURORA may serve a properly verified second amended Complaint by

April 4th 2012; however,

**388.**     both colorable assignments setover to AURORA is executed and recorded

post-commencement, (not taking into consideration the fact LEHMAN BROTHERS

BANK FSB as alleged Assignor did presale Petitioner's Mortgage-NOTE to a third-

party *ab initio*, in the year 2006); and,

389.       considering the fact LEHMAN BROTHERS BANK FSB at time of

commencement (Case Number 09-CA-017057, May 15th 2009)  already filed for

Bankruptcy protection under Title 11, September 15th 2008; and,

390.       Attorney of record is the LAW OFFICE OF DAVID J. STERN P.A., is

under criminal investigation by Florida's Attorney General;

391.       LAW OFFICE OF DAVID J. STERN P.A., is found in Pasco County

Florida manufacturing false documents in a foreclosure case;

392.       LAW OFFICE OF DAVID J. STERN P.A., did commit a Fraud in that

Court pursuant to a written opinion. **U.S. Bank, N.A. v. Harpster (51-2007-CA-**

**6684ES) (2010)**;

393.       David James Stern Esquire, Public Reprimand 25th October 2002, by

Supreme Court of Florida, before the board of governors of the Florida BAR warned

David James Stern's future misconduct will affect his privilege to practice law;

394.       LAW OFFICE OF DAVID J. STERN P.A., is no longer in operation as of

this date; however,

395.       Parties are bound by the formal admissions of their Attorney in an Action.

**396.** Pursuant to the TRUST AGREEMENT on the Closing-Date of July 31st 2006, STRUCTURED ASSET SECURITIES CORPORATION did accept Book-Entry Certificates held by and through the Depository Trust Company ("DTC");

**397.** Trust-Certificates is received in consideration for STRUCTURED ASSET SECURITIES CORPORATION hypothecating of all its right title and interest in Petitioner's Wet-Mortgage-Loan [*] and the Mortgage-Loan of others similarly situated, including all other property constituting the Trust Fund, setover to LEHMAN XS TRUST MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-11, *infra*; See 17 CFR § 230.191.

**398.** DTC acts like a clearinghouse to settle trades in corporate and municipal securities and is the Registered-Owner of Petitioner's alleged debt by hypothecation;

**399.** DEPOSITORY TRUST & CLEARING CORPORATION ("DTCC") was established in 1999 as a holding company to combine the DTC, National Securities Clearing Corporation, Mutual Securities Clearing Corp, and the Government Securities Clearing Corporation;

**400.** DTCC was set up to provide an efficient and safe way for buyers and sellers of securities to make their exchange, and thus clear and settle transactions;

**401.** DTCC also provides central custody of securities;

**402.** DTC is owned by many companies in the financial industry, with the New York Stock Exchange being one of its largest shareholders;

**403.**      STRUCTURED ASSET SECURITIES CORPORATION is the

securitization arm of LEHMAN BROTHERS HOLDINGS INC;

**404.**      On the Closing-Date of July 31st 2006, Special-Purpose-Vehicle

STRUCTURED ASSET SECURITIES CORPORATION is Beneficiary of  Nine-

Hundred-Fifteen-Million-Four-Hundred-Seventy-Five-Thousand-Seven-Hundred-

Seventy-Eight 00/100 ($915,475,778.00) in DTC Book-Entry Certificates;

**405.**      Trust-Certificates to be sold to investor[s];

**406.**      Investor transacts Trust-Certificate sales / trades within the corporate

UNITED STATES are all cleared through CEDE & Co., as nominee of the DTC;

concluding,

**407.**      DTC is actual Holder and Owner of the debt by hypothecation, held in

Trust for the benefit of the Trust-Certificate-Holder.

**408.**      September 29th 2006 Petitioner signs a Mortgage-NOTE in favor of

Defendant LEHMAN BROTHERS BANK, FSB;

**409.**      Defendant LEHMAN BROTHERS BANK FSB knew for months prior to

Petitioner's Closing that, its presale of Petitioner's NOTE to LEHMAN BROTHERS

HOLDINGS INC was done with the expressed intention of securitizing Petitioner's

Wet-Mortgage-Loan once executed, based on the Verified Controlling-Documents filed

with the Securities and Exchange Commission, July 2006;

410.        this material fact of securitizing Petitioner's NOTE, and its presale was not disclosed to Petitioner, before, or at Closing; and,

411.        concurrent with Petitioner executing the Wet-Mortgage-Loan, right, title and interest to said negotiated Wet-Mortgage-Loan  was conveyed to LEHMAN BROTHER HOLDINGS INC, with AURORA's right to Service same, in conjunction with said TRUST AGREEMENT.

412.        LEHMAN BROTHERS BANK, FSB is not the True-Lender, as the Wet-Mortgage-Loan was presale using MORTGAGE LOAN SALE AND ASSIGNMENT AGREEMENT as a Forward-Contract [*];

413.        LEHMAN BROTHERS BANK, FSB is a Nominal-Lender [*], in name only, without right title nor interest at Closing, before the ink dried on Petitioner's once wet ink signature;

414.        NOTE reads, in part; *"I understand that the Lender may transfer this Note."* (The word "may" imply some future event which has not yet occurred.)

415.        Petitioner did not understand at that time, nor informed the Wet-Mortgage-Loan was in fact already been constructively negotiated, before the ink dried;

416.        Presale of Petitioner's NOTE is in conflict with what Petitioner was lead to believe; as Petitioner was informed (by broker) once the debt was discharged said Promissory-NOTE would be returned as the NOTE was held as a Special-Deposit; as,

417.     Special-Deposit of a Promissory-NOTE has been the custom in this Country for Hundreds of years prior to securitization; as,

418.     Petitioner, and other Americans similarly situated hold a Possessory-Interest in their respective Promissory-NOTE; it appears,

419.     Petitioner, and others similarly situated were steered into an Investment-Contract, without Petitioner's knowledge, or consent;

420.     Petitioner has discovered and contends to be an undisclosed investor upon the presale of the NOTE, which created, in part, the foundation of an Investment-Company;

421.     Petitioner, and other Americans similarly situated is a Third-Party-Beneficiary [*] under the TRUST AGREEMENT by externality; see **HORACE vs. LASALLE BANK N.A. (March 2011).**

422.     For purposes of the Securities Act, an investment-contract (undefined by the Act) means a contract, transaction, or scheme whereby a person invests his money in a common enterprise and is led to expect profits solely from the efforts of the promoter or a third party, it being immaterial whether the shares in the enterprise are evidenced by formal certificates or by nominal interests in the physical assets employed in the enterprise;

423.     Investment-Contract, embodies a flexible, rather than a static, principle, one that is capable of adaptation to meet the countless and variable schemes devised by those who seek the use of the money of others on the promise of profits;

424.     Novel, uncommon, or irregular devices, whatever they appear to be, are also reached if it be proved as matter of fact that they were widely offered or dealt in under terms or courses of dealing which established their character in commerce as investment contracts, or as any interest or instrument commonly known as a security;

425.     Novel, uncommon, or irregular devices, whatever they appear to be are reachable within said MORTGAGE LOAN SALE AND ASSIGNMENT AGREEMENT, in conjunction with the TRUST AGREEMENT, and SERVICING AGREEMENT, dated as of July 1st 2006. See **SEC v. HOWEY CO.**, 328 U. S. 293 (1946);

426.     DEFENDANT acting jointly or severally, devised a scheme whereby MERS® could obscure the fact Petitioner's NOTE, and the NOTEs of other Americans similarly situated, would ultimately become a collateralized interest in Mortgage-Backed Securities, hypothecated for Trust-Certificates issued by the DTC, sold by CEDE & Co, or its authorized agent to investors for an instant gain;

427.     Petitioner's NOTE, and the NOTEs of others similarly situated is recognized by the State of Florida, and the U.C.C. as a Security, premises considered, falls within four corners of this term, Investment-Contract;

428.        Investment-Company, LEHMAN XS TRUST MORTGAGE PASS-

THROUGH CERTIFICATES, SERIES 2006-11, is founded on Donor's corpus [*] and

the corpus of other Americans similarly situated.

429.        Finding Petitioner, and other Americans similarly situated were steered

into an Investment-Contract, as undisclosed investors, is a material fact which

significantly alters the landscape (no meeting of the minds);

430.        Defendant LEHMAN BROTHERS BANK FSB or ASSOCIATES LAND

TITLE, Inc, if had a duty to speak and disclose said Investment-Contract at Closing,

their silence is Fraud; See **U.S. v. Tweel** **550 F. 2d. 297, 299, 300 (1977)**; as,

431.        the true nature of a transaction depends upon the intention of the parties.

432.        Petitioner, and other Americans similarly situated as undisclosed investors,

Third-Party-Beneficiary is entitled to Recoupment, and is entitled to share in the profit

generated from said investment-contract;

433.        Recoupment, compensative with the value placed on Petitioner's

Transaction-Account a/k/a Demand-Deposit, on the Liability side of the Bank's /

Investor's Books, as the source of the money which funded the investment scheme, *ab*

*initio*.

434.        Petitioner points to the Verified public documents filed with the Securities

and Exchange Commission, namely the "TRUST AGREEMENT," which clearly

articulates Chain-of-Title to Petitioner's Mortgage-NOTE, and others similarly situated;

435.     Verified disclosure under said TRUST AGREEMENT indicates Defendant

AURORA is attempting to commit an act of Grand-Larceny, Stellionate, or Double-

Dipping; as,

436.     Registered-Holder of Petitioner's alleged debt, and others similarly

situated is LEHMAN XS TRUST MORTGAGE PASS-THROUGH CERTIFICATES,

SERIES 2006-11's Trustee, in Trust for the Certificate-Holder, pursuant to the law of

the case, the TRUST AGREEMENT; and,

437.     Investor(s) purchased all right, title and interest to said debt;

438.     debt held as the collateral interest in certain Mortgage-Backed Securities;

439.     control over Mortgage-Backed Securities is immobilized in said Trust,

pursuant to the Controlling-Documents, in part as follows;

440.     This TRUST AGREEMENT ("Trust Agreement"), dated as
         of July 1, 2006 (the "Agreement"), is by and among
         STRUCTURED ASSET SECURITIES CORPORATION, a
         Delaware corporation, as depositor (the "Depositor"),
         AURORA LOAN SERVICES LLC, as master servicer
         (the "Master Servicer"), and LASALLE BANK NATIONAL
         ASSOCIATION, a national banking association, as trustee
         (the "Trustee").


                        PRELIMINARY STATEMENT

         The Depositor has acquired the Mortgage Loans from the Seller, and
         at the Closing Date is the owner of the Mortgage Loans and the other
         property being conveyed by it to the Trustee hereunder for inclusion
         in the Trust Fund. On the Closing Date, the Depositor will acquire the
         Certificates from the Trust Fund as consideration for its transfer to the
         Trust Fund of the Mortgage Loans and the other property constituting

the Trust Fund. The Depositor has duly authorized the execution and delivery of this Agreement to provide for the conveyance to the Trustee of the Mortgage Loans and the other property constituting the Trust Fund. All covenants and agreements made by the Seller in the Mortgage Loan Sale Agreement and by the Depositor, the Master Servicer and the Trustee herein with respect to the Mortgage Loans and the other property constituting the Trust Fund are for the benefit of the Holders from time to time of the Certificates and to the extent provided herein, the Swap Counterparty. The Depositor, the Trustee and the Master Servicer are entering into this Agreement, and the Trustee is accepting the Trust Fund created hereby, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged.

[Judicial Notice should be taken here, that this disclosure above; *"The Depositor has acquired the Mortgage Loans from the Seller…"* this constructive excerpt taken from the TRUST AGREEMENT dated July 1st 2006 is Ninety (90) days prior to the day upon which Petitioner's Mortgage-NOTE was executed, thereafter Mortgage-NOTE is to be conveyed to said Trust, which is Sixty (60) days after STRUCTURED ASSET SECURITIES CORPORATION is Beneficiary of Nine-Hundred-Fifteen-Million-Four-Hundred-Seventy-Five-Thousand-Seven-Hundred-Seventy-Eight 00/100 ($915,475,778.00) in DTC Book-Entry Trust-Certificates, to be sold to investors, collateralized interest founded upon hypothecation of Petitioner's Wet-Mortgage-Loan, and those of other Americans similarly situated]. [Swap Counterparty is analogues to an insurer.]

# VII.
## VERIFIED DOCUMENTED CHAIN OF TITLE

**441.** September 29th 2006 Petitioner did execute a Mortgage-NOTE in favor of

LEHMAN BROTHERS BANK FSB, and then setover said Mortgage-NOTE;

**442.** Petitioner, and other Borrowers similarly situated at time of Closing

unilaterally appoint MERS® as Mortgagee of record; but,

**443.** MERS® does not accept said appointment by indorsement, nor does any

consideration attach thereto;

**444.** Petitioner's Mortgage is recorded on October 11th 2006, in Palm Beach

County Florida, wherein lies Petitioner's immovable property;

**445.** July 1st 2006 (prior to the execution of the Mortgage-NOTE) an agreement

is reached titled "MORTGAGE LOAN SALE AND ASSIGNMENT AGREEMENT"

which is a sold-foreword-contract, presale;

**446.** MORTGAGE LOAN SALE AND ASSIGNMENT AGREEMENT is

executed by Michael Hitzmann, as Authorized Signatory for LEHMAN BROTHERS

HOLDINGS INC;

**447.** MORTGAGE LOAN SALE AND ASSIGNMENT AGREEMENT, for

STRUCTURED ASSET SECURITIES CORPORATION is executed by Ellen V.

Kiernan, Senior Vice President;

**448.**        AURORA is not a Signatory to this written agreement titled MORTGAGE

LOAN SALE AND ASSIGNMENT AGREEMENT;

**449.**        MORTGAGE LOAN SALE AND ASSIGNMENT AGREEMENT filed

with the Securities and Exchange Commission, attest, in pertaining parts, as follows;

http://www.sec.gov/Archives/edgar/data/1369175/000114420406034039/v050359_ex99-
1.htm

MORTGAGE LOAN SALE AND ASSIGNMENT
AGREEMENT, dated as of July 1, 2006  (the "Agreement"), is
executed by and between LEHMAN BROTHERS HOLDINGS
INC ("Holdings" or the "Seller") and Structured Asset Securities
Corporation (the "Depositor").

WHEREAS, LEHMAN BROTHERS BANK, FSB
(the "Bank"), pursuant to the following specified mortgage loan
purchase and warranties agreements (each a "Bank Transfer
Agreement," and together with the LBH Transfer Agreement,
the "Transfer Agreements"), has purchased or received from
certain transferors identified below (each a "Bank
Transferor," and together with the LBH Transferor,
the "Transferors") certain mortgage loans, each identified on
the Mortgage Loan Schedule attached hereto as part of
Schedule A (collectively, the "Bank Transferred Mortgage
Loans" and, together with the LBH Transferred Mortgage
Loans, the  "Transferred Mortgage Loans"):

WHEREAS, in addition to the Bank Transferred Mortgage
Loans, the Bank has directly underwritten and funded certain
mortgage loans originated by AURORA LOAN SERVICES
LLC and other correspondents or otherwise purchased certain
mortgage loans identified on the Mortgage Loan Schedule
attached hereto as Schedule B (the "Bank Originated Mortgage
Loans" and, together with the Bank Transferred Mortgage
Loans, the "Bank Mortgage Loans," and the Bank Mortgage

Loans, together with the LBH Transferred Mortgage Loans, collectively referred to hereinafter as the "Mortgage Loans"); WHEREAS, pursuant to an assignment and assumption agreement (the "**Assignment and Assumption Agreement**"), dated as of July 1, 2006, between **the Bank**, as **assignor**, and the **Seller**, as **assignee**, **the Bank has assigned all of its right, title and interest** in and to the foregoing Bank Transfer Agreements and related Mortgage Loans as listed on Schedule A, in the case of Bank Transferred Mortgage Loans, or **Schedule B**, in the case of the **Bank Originated Mortgage Loans**, and the **Seller has accepted the rights and benefits of**, and assumed the obligations of the Bank under, the Bank Transfer Agreements; **[emphasis added]**

WHEREAS, the **Seller desires to sell**, **without recourse, all of its rights, title and interest** in and to the **Mortgage Loans to the Depositor**, assign all of its rights and interest under each Transfer Agreement and each Servicing Agreement relating to the Mortgage Loans referred to above, other than any servicing rights retained by the Seller hereunder, and delegate all of its obligations thereunder, to the Depositor; **[emphasis added]** and

WHEREAS, the Seller and the Depositor acknowledge and agree that the **Depositor will convey** the **Mortgage Loans to a Trust Fund** created pursuant to the Trust Agreement, **assign all of its rights** and delegate all of its obligations hereunder **to the Trustee for the benefit of the Certificateholders**, and that each reference herein to the Depositor is intended, unless otherwise specified, to mean the **Depositor or the Trustee, as assignee**, whichever is the **owner of the Mortgage Loans** from time to time. [**emphasis added**]

NOW, THEREFORE, in consideration of the mutual agreements herein set forth, and for other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, the Seller and the Depositor agree as follows:

ARTICLE I.

## CONVEYANCE OF MORTGAGE LOANS

Section 1.01.  **Sale of Mortgage Loans**.

(a)  Sale of Mortgage Loans. Concurrently with the execution and delivery of this Agreement, the Seller does hereby transfer, assign, setover, deposit with and otherwise convey to the Depositor, without recourse, subject to Sections 1.03 and 1.04, all the right, title and interest of the Seller in and to the Mortgage Loans identified on Schedules A and B hereto, having an approximate aggregate principal balance of **$710,883,174.03**. Such conveyance includes, without limitation, the right to all distributions of principal and interest received on or with respect to the Mortgage Loans on and after the Cut-off Date, other than payments of principal and interest due on or before such date, and all such payments due after such date but received prior to such date and intended by the related Mortgagors to be applied after such date, all Prepayment Charges received on or with respect to the Mortgage Loans on or after the Cut-off Date, together with all of the Seller's right, title and interest in and to each related account and all amounts from time to time credited to and the proceeds of such account, any REO Property and the proceeds thereof, the Seller's rights under **any Insurance Policies** relating to the Mortgage Loans, the Seller's security interest in any collateral pledged to secure the Mortgage Loans, including the Mortgaged Properties, and any proceeds of the foregoing.

Concurrently with the execution and delivery of this Agreement, the Seller hereby assigns to the Depositor all of its rights and interest under each **Transfer Agreement** and each Servicing Agreement, other than any servicing rights retained thereunder, and delegates to the Depositor all of its obligations thereunder, to the extent **relating to the Mortgage Loans**. The Seller and the Depositor further agree that this Agreement incorporates the terms and conditions of any assignment and assumption agreement or other assignment document required to be entered into under any of the Transfer Agreements (any such document an "Assignment Agreement") and that this Agreement constitutes an Assignment Agreement under such Transfer Agreement, and the Depositor hereby assumes the obligations of the assignee under each such Assignment Agreement. Concurrently with

the execution hereof, the Depositor tenders the purchase price set forth in that certain Terms Letter dated as of the date hereof, the form of which is attached as Exhibit B hereto (the "Purchase Price"). The Depositor hereby accepts such assignment and delegation, and shall be entitled to exercise all the rights of the Seller under each Transfer Agreement and each Servicing Agreement, other than any servicing rights thereunder, as if the Depositor had been a party to each such agreement.

(b)  Schedules of Mortgage Loans. The Depositor and the Seller have agreed upon which of the Mortgage Loans owned by the Seller are to be purchased by the Depositor pursuant to this Agreement and the Seller will prepare on or prior to the Closing Date a final schedule describing such Mortgage Loans (the "Mortgage Loan Schedule"). The Mortgage Loan Schedule shall conform to the requirements of the Depositor as set forth in this Agreement and to the definition of "Mortgage Loan Schedule" under the Trust Agreement. The Mortgage Loan Schedule attached hereto as Schedule A specifies those Mortgage Loans that are Transferred Mortgage Loans and the Mortgage Loan Schedule attached hereto as Schedule B specifies those Mortgage Loans that are Bank Originated Mortgage Loans, each of which categories of Mortgage Loans have been assigned by the Bank to the Seller pursuant to the Assignment and Assumption Agreement.

Section 1.02.  **Delivery of Documents**. [6]

(a)  In connection with such transfer and assignment of the Mortgage Loans hereunder, the Seller shall, at least three (3) Business Days prior to the Closing Date, deliver, or cause to be delivered, to the Depositor (or its designee) the documents or instruments with respect to each Mortgage Loan (each a "Mortgage File") so transferred and assigned, as specified in the related Transfer Agreements or Servicing Agreements.

---

[6] Closing date is July 31st 2006; Petitioner's Mortgage Loan was executed on September 29th 2006.

(b)  For Mortgage Loans (if any) that have been prepaid in full on or after the Cut-off Date and prior to the Closing Date, the Seller, in lieu of delivering the related Mortgage Files, herewith delivers to the Depositor an Officer's Certificate which shall include a statement to the effect that all amounts received in connection with such prepayment that are required to be deposited in the Collection Account maintained by the Master Servicer for such purpose have been so deposited.

Section 1.03.  **Review of Documentation**.

The Depositor, by execution and delivery hereof, acknowledges receipt of the Mortgage Files pertaining to the Mortgage Loans listed on the Mortgage Loan Schedule, subject to review thereof by Wells Fargo Bank National Association, LaSalle Bank National Association, Deutsche Bank National Trust Company and U.S. Bank National Association as applicable (each, a "Custodian" and, together, the "Custodians"), for the Depositor. Each Custodian is required to review, within 45 days following the Closing Date, each applicable Mortgage File. If in the course of such review the related Custodian identifies any Material Defect, the Seller shall be obligated to cure such Material Defect or to repurchase the related Mortgage Loan from the Depositor (or, at the direction of and on behalf of the Depositor, from the Trust Fund), or to substitute a Qualifying Substitute Mortgage Loan therefor, in each case to the same extent and in the same manner as the Depositor is obligated to the Trustee and the Trust Fund under Section 2.02I of the Trust Agreement.

**450.**     Aggregate Scheduled Principal Balance of Mortgaged NOTEs sold by

STRUCTURED ASSET SECURITIES CORPORATION to LASALLE BANK

NATIONAL ASSOCIATION's Trustee in trust for the benefit of Certificate-Holder,

identified within the MORTGAGE LOAN SALE AND ASSIGNMENT AGREEMENT,

recorded with the Securities and Exchange Commission is approximately Seven-

Hundred-Ten-Million-Eight-Hundred-Eighty-Three-Thousand-One-Hundred-Seventy-Four 03/100 (**$710,883,174.03**);

451.     Mortgaged NOTEs exchanged by STRUCTURED ASSET SECURITIES CORPORATION for DTC held Certificates in the amount of Nine-Hundred-Fifteen-Million-Four-Hundred-Seventy-Five-Thousand-Seven-Hundred-Seventy-Eight ($915,475,778.00), the approximant value of the NOTEs found under the TRUST AGREEMENT after said NOTEs is acquired by Trustee;

452.     Differential found between the values placed on the NOTEs in exchange for the Trust-Certificates is, an increase of Two-Hundred-Four-Million-Five-Hundred-Ninety-Two-Thousand-Six-Hundred-Three 97/100, ($204,592,603.97).


453.     PROSPECTUS SUPPLEMENT, filed with the Securities and Exchanged Commission, **June 2nd 2006**, section S-83, states in relevant part;

> *"The Seller's rights under each Sale Agreement will be assigned by the Seller to the Depositor pursuant to the Sale and Assignment Agreement and, in turn, assigned by the Depositor to the Trustee for the benefit of holders of the Certificates pursuant to the Trust Agreement."* [**NOTE**; LEHMAN BROTHERS BANK FSB, Originator is not a party to this document titled PROSPECTUS SUPPLEMENT, as LEHMAN BROTHERS BANK FSB sold all of its right title and interest to Seller July 1st 2006, (yesterday).]

454.     Controlling-Document titled MORTGAGE LOAN SALE AND

ASSIGNMENT AGREEMENT or PROSPECTUS SUPPLEMENT filed with the Securities

and Exchange Commission furnishes affirmative intention of the party's to assign

Petitioner's debt to said Trust, however is not proof of actual assignment or transfer thereof;

455.     Petitioner can not locate a document showing conveyance of said debt,

with right, title and interest from Seller LEHMAN BROTHERS HOLDINGS INC

setover to Depositor STRUCTURED ASSET SECURITIES CORPORATION;

456.     Petitioner can not locate a document showing conveyance of said debt

from Depositor STRUCTURED ASSET SECURITIES CORPORATION, to Trustee,

LASALLE BANK NATIONAL ASSOCIATION in trust for the benefit of Certificate-

Holder;

457.     Each of the various agreements between the securitization entities stating

that each Entity had a right to an assignment / conveyance of all right, title and interest

is not in and of itself an assignment, nor conveyance, and the agreement is certainly not

in recordable form [7]. See U.S. Bank National Association v. Ibanez (2009).

_____

[7]          **ARTICLE I  DEFINITIONS, TRUST AGREEMENT**
**Assignment of Mortgage**: An assignment of the Mortgage, notice of transfer or equivalent
instrument, in recordable form, sufficient under the laws of the jurisdiction wherein the related
Mortgaged Property is located to reflect the sale of the Mortgage to the Trustee, which
assignment, notice of transfer or equivalent instrument may be in the form of one or more
blanket assignments covering the Mortgage Loans secured by Mortgaged Properties located in
the same jurisdiction, if permitted by law; provided, however, that none of the Custodians nor
the Trustee shall be responsible for determining whether any such assignment is in recordable
form. [emphasis added]

**458.**       Petitioner holds in hand a Screen-Shot[*] of a computer's monitor (hard-copy visual representation) of the Book-Entry data-base of the REMIC titled LEHMAN XS TRUST MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-11, which discloses either the Trustee did not receive Petitioner's Closing-Documents *ab initio*, or, failed to update the electronic Book-Entry Registration system indicating receipt of the documents which evidences the debt;

**459.**       Petitioner holds in hand a Screen-Shot of the Book-Entry data-base of the REMIC, found *prima fascia* evidence to show Trustee for LEHMAN XS TRUST MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-11 is not in possession of any of the Closing-Documents executed by this Petitioner;

**460.**       failure by Trustee to be in possession of Petitioner's closing documents is a violation of New York Estates Powers and Trusts Law ("EPTL") 7-1.18, and in conflict with the Controlling-Documents filed with the Securities and Exchange Commission; see **Kemp v. Countrywide Home Loans, Inc**. (2010).

**461.**       TRUST AGREEMENT mandate, in part, a NOTE must be transferred and delivered with an unbroken chain of endorsements from the Originator to all intervening parties with the final Special-Indorsement to the Trustee.

**462.**       The Law of Assignments is provided for by Article 9 of the U.C.C., but is superseded by the TRUST AGREEMENT, in part, as follows;

(b)      In connection with such transfer and assignment, the Depositor does hereby deliver to, and deposit with, or cause to be delivered to and deposited with, the Trustee, and/or the applicable Custodian acting on the Trustee's behalf, the following documents or instruments with respect to each Mortgage Loan (each a *"Mortgage File"*) so transferred and assigned:

(i)      with respect to each Mortgage Loan, the original Mortgage Note endorsed without recourse in proper form to the order of the Trustee, as shown on Exhibit B-4 hereto, or in blank (in each case, with all necessary intervening endorsements, as applicable) or with respect to any lost Mortgage Note, a lost note affidavit stating that the original Mortgage Note was lost, misplaced or destroyed, together with a copy of the related Mortgage Note:

463.      When assets are transferred to a New York Trust, there has to be actual delivery in as perfect a manner as possible, a mere recital is ineffective;

464.      The July 1st 2006 constructive assignment of Petitioner's NOTE, or others similarly situated to LEHMAN XS TRUST MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-11 without the actual transfer of said Promissory-NOTE is a nullity. **Merritt v Bartholick**, 36 N.Y 44(1867); **Kiuge v. Fugazy, 145 A.D. 2d 537 (1988)**.

465.      However, appearing on the public record is a Verified colorable Assignment from LEHMAN BROTHERS BANK FSB, assigned directly to AURORA;

466.      assigned directly to AURORA ignoring the aforementioned intermediate Assignees, caused a break in the Chain-of-Title.

467.        Bogus Assignment (Extrinsic Fraud) used as *prima fascia* evidence to

show an interest in Petitioner's property, or Bogus Assignment once recorded thereafter

used against another American as *prima fascia* evidence, is an act of Intrinsic Fraud;

468.        Bogus Assignment done by avarice is also attempted Larceny; as,

469.        LEHMAN BROTHERS BANK FSB negotiated Petitioner's NOTE with

someone other than AURORA *ab initio,* as seen by the Special-Indorsement found on

the copy of the alleged NOTE AURORA presented as its Exhibit in Case NO. 09-CA-

017057;

470.        AURORA is not now, nor ever was the Real-Party-in-Interest in relation to

Petitioner's debt in question; also,

471.        AURORA is not now, nor ever was Holder-in-Due-Course in relation to

Petitioner's debt in question;

472.        AURORA admits *infra*, it is not the Creditor; as such,


**473.        AURORA is committing, or has committed an Act, or Acts of Intrinsic**

**Fraud in each Foreclosure wherein LEHMAN BROTHERS BANK FSB is the**

**Original Lender, AURORA is Servicer, and thereafter AURORA commences a**

**Foreclosure Action in its own name for its own benefit, appearing as the Plaintiff**

**Creditor or Mortgagee of record, after September 15th 2008.**

474.      MERS® originally appeared on public record as Mortgagee, as Nominee for LEHMAN BROTHERS BANK FSB, however, MERS® is not Nominee for LEHMAN XS TRUST MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-11; as,

475.      LEHMAN XS TRUST MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-11 is not a MERS® Member; moreover,

476.      LEHMAN XS TRUST MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-11 is without an agency agreement with MERS® but is the registered Holder of Petitioner's debt, and other Americans similarly situated pursuant to the TRUST AGREEMENT;

477.      Assignment of Petitioner's debt, and those of others similarly situated from LEHMAN BROTHERS BANK FSB to AURORA is fabricated in part by THEODORE SCHULTZ, Certifying Officer of MERS®, a/k/a Vice President of MERS®; alternatively,

478.       THEODORE SCHULTZ is an employee of AURORA, occupying the Office of Assistant Vice President of AURORA;

479.      THEODORE SCHULTZ, Assistant Vice President of AURORA holds Superior-Knowledge, to aforementioned Controlling-Documents;

480.      THEODORE SCHULTZ Assistant Vice President of AURORA used a Stamp / Seal issued by alleged co-conspirator MERS®, to seal the deal, at least in form;

481.     THEODORE SCHULTZ Acting in the capacity of Certifying Officer for

MERS®, as Grantor / Assignor authorized the assignment of Petitioner's Mortgage and

NOTE to THEODORE SCHULTZ's employer, the Grantee / Assignee AURORA;

482.     THEODORE SCHULTZ ignored all of the intervening (off-record)

assignments, as these (off-record) assignments do not appear on the MERS® system; as,

483.     these intervening (off-record) assignments do not appear on the MERS®

system for want of a successor identified as a MERS® Member; as,

484.     MERS® lacks the legal capacity to assign beneficial interest in a thing it

does not own or hold, absent actual possession and Power-of-Attorney, or similar

authorization in writing from the Lender, its successor, or assignee thereof.

485.     Florida Foreclosure law requires that *all* successive transfers of the mortgage

be recorded prior to foreclosure; see Title XL, Real and Personal Property Section

701.02; AURORA *et al.*, AURORA knows this to be true, or should know same.

486.     On or shortly after March 24th 2010 Petitioner received a letter from Kahrl

Wutscher LLP, a law Firm, alleged to represent AURORA, informing Petitioner *"…*

*the current owner of the debt is: LEHMAN BROTHERS HOLDINGS INC 745*

*Seventh Ave., 7th Floor, New York, NY 10019."* See "Exhibit I", pg 2 of 5, 6th par,

hereto attached and incorporated herein by reference; wherein,

487.    Kahrl Wutscher LLP, a law Firm, alleged to represent AURORA, discloses on page four (4), "Exhibit I" AURORA is *"... the current servicer, master servicer and/or sub-servicer of this loan and that the current owner of the loan is identified in the text box disclosures above."*

488.    Then again on September 1st 2010 in response to Petitioner's question; *"Who is AURORA LOAN SERVICES LLC servicing the above-referenced account for?"* response; *"...the current owner of the subject loan ... name of the current owner of the debt is: LEHMAN BROTHERS HOLDINGS INC 745 Seventh Ave., 7th Floor, New York, NY 10019."* See "Exhibit J" hereto attached and incorporated herein by reference.

489.    LEHMAN BROTHERS HOLDINGS INC, (under Bankruptcy protection) is a non-party in Case Number 09 CA 017057 division AW (~~active~~ foreclosure action against Petitioner herein), in part, the cause of this action; then,

490.    on MERS® web-site, **"https://www.MERS-servicerid.org/sis/"**, Member Identification Number ("MIN") 1000254-4000339538-8, as this number appears on Petitioner's alleged Mortgage, returns a disclosure identifying AURORA BANK FSB as Investor / Owner of Petitioner's alleged debt, on July 26th 2011; see "Exhibit K" hereto attached and incorporated by reference;

491.    On MERS® web-site, MIN 1000254-4000339538-8 identifies AURORA LOAN SERVICES LLC as the Servicer of this alleged debt.

492.         Identified now is four (4) Entities claiming owner-ship interest and right to

Petitioner's alleged debt, or is registered as such; AURORA LOAN SERVICES LLC

(Servicer, now registered as Mortgagee / Beneficiary), LEHMAN XS TRUST

MORTGAGE PASS-THROUGH CERTIFICATES SERIES 2006-11 (Foreign (New

York) Unincorporated-Association, or A Contractual Organization without Standing in

the State of Florida), LEHMAN BROTHERS HOLDINGS INC (under Bankruptcy

protection, as of September 15th 2008), and AURORA BANK FSB f/k/a LEHMAN

BROTHERS BANK FSB, emerging from Bankruptcy.

493.         It is the duty of Maker to verify payment reaches the true Owner-Holder of

an alleged debt, **Powers v. Woolfolk, 132 Mo. App. 354, 111 S. W. 1187; Hoffmaster**

**v. Black, 78 Ohio St. 1, 84 N. E. 423, 21 L. R. A. (N. S.) 62, 125 Am. St. Rep. 679, 14**

**Ann. Cas. 877; Baxter v. Little, 6 Mete. (Mass.) 7, 39 Am. Dee. 707.**

494.         Monthly Mortgage-Payment from a Maker setover to AURORA is

ineffective finding all interested parties under Bankruptcy protection, Maker looking for

evidence as to a known Holder and Owner of Maker's NOTE, or Agent thereof;

**Marling v. Nonimensen, 127 Wis. 363, 106 N. W. 844, 5 L. R. A. (N. S.) 412, 115**

**Am. St. Rep. 1017, 7 Ann. Oas. 364 ; Baumgartner v. Peterson. 93 Iowa, 572, 62 N.**

**W. 27 ; Burhans v. Ilutcheson, 25 Kan. 625, 37 Am. Rep. 274; Birket v. El ward, €8**

**Kan. 295, 74 Pac. 1100, 64 L. R. A. 568, 104 Am. St. Rep. 405, 1 Ann. Cas. 272;**

**Smith v. Lawson**, 18 \V. Va. 212, 41 Am. Rep. 688 ; **Carpenter v. Longan**, 16 Wall. 271, 21 L. Ed. 313; **Swift v. Bank of Washington**, 114 Fed. 643, 52 C. O. A. 339; as,

**495.**　　　Petitioner comes to find LEHMAN XS TRUST MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-11 is a Phantom-Entity to the extent it is not registered within the State of New York, Delaware, or Florida, nor is it registered anywhere within the corporate UNITED STATES; means,

**496.**　　　it (this Phantom-Entity) is not a person, as that term is defined;

**497.**　　　only a person has the capacity to be a Holder;

**498.**　　　Pursuant to Florida Statute, any legally recognized person can be a holder in due course, § 673.3021 Fla. Stat.; A "holder" is defined as *"[t]he person in possession of a negotiable instrument that is payable either to bearer or to an identified person that is the person in possession,"* § 673.201(21)(a) Fla. Stat.

**499.**　　　Artificial Person. An entity, such as a corporation, created by law and given certain legal rights and duties of a human being; a being, real or imaginary, who for the purpose of legal reasoning is treated more or less as a human being. • An entity is a person for purposes of the Due Process and Equal Protection Clauses but is not a citizen for purposes of the Privileges and Immunities Clauses in Article IV, § 2, and in the Fourteenth Amendment. — Also termed fictitious person; juristic person; juridical person; legal person; moral person. Cf. LEGAL ENTITY. [Cases: Corporations 1.1(2). C.J.S. Corporations § 2.] **Black's 8th Edition pg 3619.**

**500.**     Only an entity existing as real or legally created person under the law is

capable of being a Holder in the State of Florida;

**501.**     A pledge or subsequent transfer of Petitioner's Mortgage-NOTE, or others

similarly situated, to LEHMAN XS TRUST MORTGAGE PASS-THROUGH

CERTIFICATES, SERIES 2006-11, a Phantom-Entity which does not legally exist

without the State of New York, lacks Standing within Florida; however pursuant to,

**502.**     TRUST AGREEMENT (law of the case) LEHMAN XS TRUST

MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-11 is registered as

Holder of Petitioner's debt, and the debt of other Americans similarly situated, as

collateral interest of Mortgage-Backed Securities; whereas,

**503.**     DTC's Certificate-Holder is the true Beneficiary, Real-Party-in-Interest;

**504.**     Real-Party-in-Interest based on the fact the Certificate-Holder is the

investor, hard money lender, and ultimate taxpayer on the gain; however,

**505.**     Trust-Certificates are customarily held in the Street-Name [*] of CEDE & Co.

**506.**     MERS® and CEDE & Co seem to function in a similar respect in so far as

both provide an electronic registry (no paper) which identifies the Creditor (privately);

**507.**     MERS® and CEDE & Co are both Bankruptcy remote entities which hold

property as Nominee for an undisclosed third party Principal, placing a cloud on

Petitioner's Title, and others similarly situated.

508.        Petitioner's research has lead to the discovery of this Phantom-Entity, which is a Computer-Book-Entry-System [*], titled "LEHMAN XS TRUST 2006-11," analogous to a Microsoft® Excel® Electronic-Spread-Sheet, subcategorized by Classes, or Tranches [*];

509.        LEHMAN XS TRUST MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-11, contains twenty-four (24) such Classes, or Tranches;

510.        Petitioner has personally reviewed all the Synthetic-NOTEs held in each Class, or Tranche, found the debt in question, found within fifteen (15) of said twenty-four (24) Classes, or Tranches;

511.        Petitioner found the debt in question cloned fifteen (15) times at full face value, each cloned Synthetic-NOTE bears a unique CUSIP-Number[*] identifying different class of securities.

512.        Each Class, or Tranche holding Petitioner's alleged debt at full face value and corresponding CUSIP Number is as follows;

        Class / Tranche titled Pd 1A1 CUSIP Number 52522WAA7;

513.        Class / Tranche titled 1A2 CUSIP Number 52522WAB5, is wholly owned by Maiden Lane II LLC. See ASSET PURCHASE AGREEMENT dated December 12, 2008; found at this following link,

**http://www.wikinvest.com/stock/American_International_Group_(AIG)/Filing/10-Q/2010/Ex-10.3/D9973547  ;**

514.        Class / Tranche titled 1A3 CUSIP Number 52522WAC3, is wholly owned

by Maiden Lane II LLC, See ASSET PURCHASE AGREEMENT dated December 12,

2008 *supra*, and AMERICAN INTERNATIONAL GROUP INC – FORM 8-K – EX-

99.1 – March 10, 2011; found at the following link,

**http://www.faqs.org/sec-filings/110310/AMERICAN-INTERNATIONAL-
GROUP-INC_8-K/y90210exv99w1.htm** ;

515.        whereby the Current out standing balance of just these two mentioned

tranches being purchased by AMERICAN INTERNATIONAL GROUP INC is Two-

Hunderd-One-Million-Ninety-Eight-Thousand-Five-Hundred-Fifty-Nine 00/100,

($201,098,559.00);

516.        NOTEs originally valued at approximately Seven-Hundred-Ten-Million-

Eight-Hundred-Eighty-Three-Thousand-One-Hundred-Seventy-Four 03/100

($710,883,174.03), is now valued (considering there are twenty-four (24) Tranches) at

over Two-Billion ($2,000,000,000.00) as a Ball Park figure;

517.        Class / Tranche titled Pd 1A4 CUSIP Number 52522WAD1;

518.        Class / Tranche titled Pd M1 CUSIP Number 52522WAJ8;

519.        Class / Tranche titled Pd M2 CUSIP Number 52522WAK5;

520.        Class / Tranche titled Pd M3 CUSIP Number 52522WAL3;

521.        Class / Tranche titled Pd M4 CUSIP Number 52522WAM1;

522.        Class / Tranche titled Pd M5 CUSIP Number 52522WAN9;

523.        Class / Tranche titled Pd M6 CUSIP Number 52522WAP4;

524.     Class / Tranche titled Pd M7 CUSIP Number 52522WAQ2;

525.     Class / Tranche titled Pd M8 CUSIP Number 52522WAR0;

526.     Class / Tranche titled Pd M9 CUSIP Number 52522WAS8;

527.     Class / Tranche titled Pd M10 CUSIP Number 52522WAT6;

528.     Class / Tranche titled Pd P CUSIP Number BCCOS65M3;

529.     The Code "Pd" means "Paid Down."

530.     Seven-Hundred-Ten-Million-Eight-Hundred-Eighty-Three-Thousand-One-Hundred-Seventy-Four 03/100 ($710,883,174.03), over a thirty year period will most likely not generate Two-Billion ($2,000,000,000.00) plus interest in cash-flow; *ergo,*

531.     Trust was destined to fail over time, but not until the Trust acquired cash or equity from the investor(s), up-front[*];

532.     LEHMAN XS TRUST MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-11 created enough Trust-Certificates (a/k/a BONDS a/k/a Securities) of Petitioner's NOTE in particular to appear fifteen times at the stated monetary face value of the genuine NOTE which Maker created at Closing and setover to LEHMAN BROTHERS BANK FSB in trust;

533.     STRUCTURED ASSET SECURITIES CORPORATION appears to be acting in the same capacity as a BANK, fractionalizing its Holdings, using said Holdings as a reserve for leverage.

534.

535.　　　　Petitioner holds in hand a Screen-Shot of each one of the fifteen Tranches which contain the identical Synthetic-NOTE cloned from the genuine NOTE Petitioner signed, at full face value, (because of the software licensing agreement Petitioner can not volunteer these screen-shots as evidence at this time, unless ordered to do so by this Court, or by way of a Discovery Request);

536.　　　　AIG has recently made an offer to Maiden Lane II LLC, to purchase two of Petitioner's cloned Synthetic-NOTEs associated with CUSIP Numbers 52522WAB5 and 52522WAC3, purchased from the Federal Reserve Bank of New York, third party Purchase-Money-Mortgage[*], paying down Maiden Lane II LLC's outstanding debt.

537.　　　　A once Secured-NOTE, Monetized, Securitized, Fractionalized and now perhaps subrogated in part by AIG from the Federal Reserve Bank of New York (non-MERS® Member), raises the argument, there is no longer a Holder-in-Due-Course; See "Exhibit Q" Explanation-of-Securitization, hereto attached and incorporated herein by reference.

538.　　　　AIG will own two-fifteens (2/15) of Petitioner's alleged debt, but discharge twice the face value of the NOTE; See U.C.C. § 3-203.  TRANSFER OF INSTRUMENT; RIGHTS ACQUIRED BY TRANSFER; the transferee obtains no rights under this Article and has only the rights of a partial assignee, which would exclude subrogation; however,

**539.**       AIG is negotiating to purchase Petitioner's asset found under both CUSIP

Numbers 52522WAB5 and 52522WAC3, in which each CUSIP Number contains a

Synthetic-NOTE cloned from the genuine NOTE, created by Petitioner as Borrower /

Maker / Donor, each NOTE at full face value, paid for at one-hundred cents on the

dollar, times two, by an Insurer / Investor; or,

**540.**       Genuine NOTE was *"... **deliberately eliminated to avoid confusion** ..."*

*ab initio* upon its digital metamorphosis into a Mortgage-Backed Security, hypothecated

for Trust-Certificates in multiples of the underlying appraised value of the collateralized

interest; thereafter,

**541.**       January 26th 2007 Senior Vice President, Michael Hitzmann, for Structured

Asset Securities Corporation, as depositor for LEHMAN XS TRUST MORTGAGE

PASS-THROUGH CERTIFICATES, SERIES 2006-11, Beneficiary of the revenue

generated from the Trust Certificates a/k/a BONDS a/k/a Securities, filed a Form 15-D

with the Securities and Exchange Commission, notifying the world of its cessation of

doing any additional business;

**542.**       Petitioner alleges STRUCTURED ASSET SECURITIES

CORPORATION, exchanged Petitioner's Mortgage-NOTE, and others similarly

situated for said Trust-Certificates, Securities / BONDS which it sold to investors, in

multiples of the NOTE's original face value, cashed in and closed-up shop within seven

(7) months.

543.     Under the INVESTMENT COMPANY ACT OF 1940, LEHMAN XS

TRUST MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-11

recording Form 15-D, January 26th 2007, is considered on that date, by the Securities

and Exchange Commission to be an **Unregistered Investment Company**; *supra*,

544.     Foreign-Unregistered-Investment-Company lacks the capacity to sue in the

State of Florida, no Standing, and is not an injured party, *supra*; furthermore,

545.     Unregistered-Investment-Company lacks the capacity to Assign

Petitioner's NOTE, and those of others similarly situated after its Closing-Date;

546.     Unregistered-Investment-Company lacks the capacity to Assign

Petitioner's NOTE, and the NOTEs of others similarly situated to AURORA, pursuant

to the Controlling-Documents, and New York Trust Law.

547.     Furthermore, Defendant LEHMAN BROTHERS BANK FSB or the Real-

Lender still holds the liability owed to the Makers, for deposit of their NOTEs; as,

548.     LEHMAN BROTHERS BANK FSB *et al.,* negotiated Petitioner's NOTE,

and those of other Americans similarly situated, which ultimately is employed to fund

said Investment-Company; as such,

549.     Petitioner, and others similarly situated are undisclosed investors, by

externality, Third-Party-Beneficiaries; as,

550.     Petitioner and others similarly situated hold a Possessory-Interest in their

respective NOTE, see U.C.C. §3-306.

551.       Petitioner's NOTE, and the NOTEs of other Americans similarly situated which was negotiated between LEHMAN BROTHERS BANK FSB and LEHMAN BROTHERS HOLDINGS INC is discharged with respect to LEHMAN BROTHERS BANK FSB, *ab initio,* as a true sale, (U.C.C. §3-311); thereafter,

552.       LEHMAN BROTHERS HOLDINGS INC acting in the capacity as Assignor constructively Assigned Petitioner's NOTE, and the NOTEs of others similarly situated to said Investment-Company, by way of STRUCTURED ASSET SECURITIES CORPORATION, as a true sale, discharged Makers' debt with respect to LEHMAN BROTHERS HOLDINGS INC;

553.       STRUCTURED ASSET SECURITIES CORPORATION's debt was discharged upon receipt of DTC held Trust-Certificates, sold to Trust-Certificate-Holder[s];

554.       DTC Trust-Certificate-Holder's debt was discharged byway of Petitioner's future tax obligation, and the tax obligation of other Americans similarly situated, known as TROUBLED ASSET RELIEF PROGRAM, ("TARP");

555.       Congress voted for the "bailouts," which are actually buy-backs, to use public money (and more funds borrowed from the Federal Reserve, 16 Trillion pursuant to the recent audit of the Federal Reserve) to purchase back the bad paper and cover the credit swaps, dropping the cost of STRUCTURED ASSET SECURITIES CORPORATION's scam onto the American people;