# IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF FLORIDA WEST PALM BEACH DIVISION

### CASE NO. 12-80364-CIV-MARRA/BRANNON

STATE OF FLORIDA, EX RELATIONE )
             JOHN KORMAN )
             Relator, )

v. )
    )

AURORA LOAN SERVICES LLC; )
OFFICE OF CEO, AND PRES OF AURORA; )
AURORA BANK FSB; )
MERSCORP HOLDINGS, INC; )
MORTGAGE ELECTRONIC )
REGISTRATION SYSTEMS INC; )
LEHMAN XS TRUST 2006-11; )
LASALLE BANK N.A. as TRUSTEE; )
U.S. BANCORP as successor TRUSTEE; )
ASSOCIATES LAND TITLE INC; )
THEODORE SCHULTZ, Individual; )
LAURA MCCANN, Individual; )
CYNTHIA WALLACE, Individual; )
JOANN REIN, Individual; )
LAW OFFICE OF DAVID J. STERN P.A.; )
DAVID JAMES STERN, Esquire; )
KAROL S. PIERCE, Esquire; )
CASSANDRA RACINE-RIGAUD, Esquire; )
MISTY BARNES, Esquire; )
DARLINE DIETZ, Notary; )
JOHN DOE 1 – 100; )
JANE DOE 1 – 100; )
    )
    )
             Defendants. )
                  /

FILED by _cy_ D.C.

JUL 03 2012

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - W.P.B.

CIVIL RIGHTS 1983 VIOLATION
FORGERY
USURY
CIVIL CONSPIRACY
STELLIONATION
INTRINSIC FRAUD
ATTEMPTED LARCENY
FRAUDULENT CONVERSION
CONSTRUCTIVE FRAUD
VIOLATION OF FDCPA
VIOLATION OF TCPA
VIOLATION OF FCRA
VIOLATION OF FDUTPA
MAIL FRAUD
WIRE FRAUD
UTTERING
R.I.C.O.
FRAUDULENT INDUCEMENT
FALSE CLAIM
MORTGAGE FRAUD
PROFESSIONAL NEGIGENCE

DEMAND FOR JURY TRIAL
Fed.R.Civ.P. 38(b)

## MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION TO AMEND COMPLAINT

Plaintiff, State of Florida files this Memorandum in support of its Motion to amend its Complaint; amended because it removed the dropped parties, removed unnecessary COUNTS, removed supposition and speculative arguments, and substituted the State of Florida as the Plaintiff in the status of *ex rel*. State of Florida is a subsidiary of the Corporate United States, see the Clearfield Doctrine. State of Florida reduced the number of pages in the Amended Complaint from 233 to 118, and reduced the number of paragraphs from 1062 to 538, saving on Judicial resources and at the same time trying to bring to light the really important issue, the on-going criminal enterprise which is [sic] illegally displacing thousands of people, using the Justice system to facilitate a crime, and thereafter enforcement of same, which is unjust, inequitable, and unconscionable, not to mention illegal. In other-words the Amended Complaint conforms to the evidence in hand.

## I.   **INTRODUCTION**

May 15th 2009 JOHN KORMAN (hereinafter "Relator") was served with a *lis pendens* by the Law Offices of David J. Stern P.A. *et al.*, re-presenting AURORA LOAN SERVICES LLC, the Servicer. The Servicer pretending to be the Creditor misinformed the Law Offices of David J. Stern P.A., it was the "Owner and Holder" of the Mortgage-NOTE, but these documents (Mortgage-NOTE) is missing, however the

proof of ownership is found in a document titled **CORPORATE ASSIGNMENT OF MORTGAGE**, which purports to assign the NOTE. The Court's reliance on an Assignment from MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC., (hereinafter "MERS"), which purports to assign a NOTE is an obvious cloud on the Title of that property in question; see "Exhibit DD" hereto attached and incorporated herein by reference, titled IN THE NEBRASKA COURT OF APPEALS CASE NO. A-04-000786, filed October 15th 2004; making it crystal clear MERS has no nexus to a NOTE, and MERS formally disavows any presumption MERS holds a beneficial interest in any NOTE. Furthermore Assignments in question are all executed thereafter recorded while the Assignor / Grantor is under Bankruptcy protection, in violation of 11 U.S.C. § 362(a)(3).

## II. STATEMENT OF FACTS

Pursuant to Rule 15 and 19(a), JOHN KORMAN (hereinafter "Relator") respectfully requested leave to file an Amended Complaint; Federal Rule of Civil Procedure 15 states that a party may amend a pleading once as a matter of course at any time before a responsive pleading is served. There have been no responsive pleadings in this instant matter prior to the filing of the Amended Complaint. *"[L]eave shall be freely given when justice so requires."* See <u>Foman v. Davis</u>, 371 U.S. 178 (1962). Furthermore, the Original Complaint and the Amended Complaint specifically reserved

the right to Amend as material facts come to light; see Comp ¶ [1], and Amended Comp.

¶ [1]; Relator has Standing to bring this Claim as an injured party, and is a Federal

Witness with first hand knowledge of the facts. The Office of Private Attorney General

is created and authorized by an Act of Congress, 93 Stat. 284, Public Law 96-170,

December 29th 1979, an Act to permit civil suits under section 1979 of the Revised

Statutes 42 U.S.C. 1983; i.e.,

This Court having taken Judicial Notice of Defendant's "Exhibit 1" will find

<u>COUNT III</u> *"... **action to enforce a lost, destroyed or stolen promissory note and**

**mortgage..."** ergo*, AURORA LOAN SERVICES LLC (hereinafter "AURORA") was

not in actual possession of the Mortgage or NOTE on the date of commencement, May

13th 2009.

AURORA's entire Foreclosure Action against Relator (Defendant's

Exhibit 1") and against others similarly situated rests entirely upon an Assignment from

MERS, executed and recorded contemporaneously with a Bankruptcy proceeding

against the Assignor / Grantor in violation of the Automatic Stay, see Title 11 U.S.C.

Section 362(3).

This Court taking Judicial Notice of Defendant's "Exhibit 1" will find

Relator's alleged NOTE attached thereto, is "Specially-Indorsed" set over to LEHMAN

BROTHERS HOLDING INC, *"without recourse"* from LEHMAN BROTHERS

BANK FSB; however,

MERS acting as nominee for LEHMAN BROTHERS BANK FSB Assigned the same NOTE originally set over to LEHMAN BROTHERS HOLDING INC to AURORA, Stellionation, which is a crime, and is alleged to be an on-going regularly conducted everyday type business activity by AURORA *et al.*, directly effecting Relator and others similarly situated; furthermore, the Assignment purports to Assign the Mortgage together with the NOTE, however this Mortgage-NOTE which is presumptively in possession of LEHMAN BROTHERS BANK FSB  is not disclosed to its Judicial Trustee administering the Bankrupt estate, as one its holdings.

Relator checked the public records office of the Registrar of Deeds of Palm Beach County and found no less than one-hundred-and-eighty (180) Assignments from MERS as Grantor, acting in the capacity as nominee for LEHMAN BROTHERS BANK FSB, set over the Mortgage **together with the NOTE** to AURORA in the year of 2009, while LEHMAN BROTHERS BANK FSB petitioned the court for Bankruptcy protection September 15th 2008;

MERS is Assigning the NOTE directly from the Bankrupt estate of LEHMAN BROTHERS BANK FSB without the judicial Trustee ratifying the negotiation; because,

MERS Certifying Officer knows it is actually Assigning a Phantom-Mortgage-NOTE from the Bankrupt estate of LEHMAN BROTHERS BANK FSB, as for an example, Relator's NOTE is held by LEHMAN BROTHERS HOLDING INC, *prima*

*fascia, ergo,* the Assignment is an Uttered document, created from whole-cloth, resulting in the creation of a counterfeit public record. AURORA has or is intentionally and knowingly caused to be created thousands of counterfeited public records; for an example see Compilation of "Exhibit DE" hereto attached and incorporated herein by reference, contains eight (8) true and correct copies of Certified Corporate Assignments of Mortgage, gathered by Relator and copied from the first electronic page of the public records, which does include Relator's <u>CORPORATE ASSIGNMENT OF MORTGAGE</u>. Each of these Assignments (Exhibit DE) share a common thread; each Assignment is titled <u>CORPORATE ASSIGNMENT OF MORTGAGE</u>; each Recording is requested by AURORA; each Assignment is prepared by AURORA; each Assignor is MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC as nominee for LEHMAN BROTHERS BANK FSB; each Assignee is AURORA LOAN SERVICES LLC; each Assignment purports to assign the "***Mortgage together with the NOTE***"; each Assignment displays the MERS Corporate Seal; each Assignment is recorded in the year of 2009, however three quarters (3/4) of the Assignments (Exhibit DE) are not recorded on the date of commencement, creating serious title issues in their own right; and all of the Assignments occur after LEHMAN BROTHERS BANK FSB petitioned the Court for Bankruptcy protection, if true is a Contempt of Court, each instance unique.

## III. **ARGUMENT**

The efficient administration of justice requires that a Plaintiff is given leave to file an Amended Complaint. Federal Rule of Civil Procedure 15(a) requires that leave to file an Amended Complaint be *"freely given when justice so requires."* This standard is readily met here; as a more detailed description of the issue at hand is found in the Amended Complaint, narrowing the scope of the issue presented in this litigation and will prevent the Court's time from being wasted at trial on collateral issues. The court may allow the pleadings to be amended to conform to the evidence and shall do so freely when the merits of the cause are more effectually presented thereby and the objecting party fails to satisfy the Court that the admission of such evidence will prejudice the objecting party in maintaining an action or defense upon the merits.

Defendants will not suffer any prejudice; as the U.S. Supreme Court determined that *"[i]n the absence of . . . undue delay, bad faith or dilatory motive . . . undue prejudice . . . futility of amendment, etc.—the leave sought should* . . . be *'freely given."* <u>Foman v. Davis</u>. The Sixth Circuit applies a balancing test of these factors, which turns on *substantial prejudice* to the opposing party. See, e.g., <u>Lawson v. Truck Drivers, Chauffeurs & Helpers, Local Union 100</u>, **698 F.2d 250, 256 (6th Cir. 1983)**; <u>Hageman v. Signal L.P. Gas, Inc.</u>, **486 F.2d 479, 484 (6th Cir. 1973)**. No such prejudice exists herein.

The Amended Complaint does not add any causes of action, but rather more clearly describes the issues in the causes of action identified in the original complaint, *i.e.*, Defendants' violation of 11 U.S.C. § 362(a)(3), if we find LEHMAN BROTHERS BANK FSB actually held the property assigned, alternatively, should the Court find AURORA fabricating Assignments from whole-cloth knowing there is no substance to the claim creates and presents a substantial and specific danger to the public's health, safety or welfare for over ninety percent (90%) of people forced into foreclosure by this Servicer AURORA, people who borrowed money from LEHMAN BROTHERS BANK FSB n/k/a AURORA BANK FSB, as these people are either un-represented, under-represented, or chose to abandon their property due to AURORA's Superior-Knowledge and funding, *ergo* AURORA is preying upon the weak and un-informed by seizing property by employing a trick.

Commerce operates in truth; demand for truth is made of all parties for full disclosure.

In United States law, the ***Erie*** doctrine is a fundamental legal doctrine of civil procedure mandating that a federal court in diversity jurisdiction (and some allied state-law claims in federal-law actions) must apply state substantive law. The doctrine follows from Supreme Court landmark decision in **Erie Railroad Co. v. Tompkins**, **304 U.S. 64, 58 S. Ct. 817, 82 L. Ed. 1188 (1938),** decided on April 25, 1938, written by Justice Louis Brandeis. The case overturned **Swift v. Tyson**, which allowed federal judges sitting in a

state to ignore the common law local decisions of state courts in the same state, in cases based on diversity jurisdiction. The **Erie** doctrine today applies regardless of how the federal court may hear a state claim. Whether the federal court decides a state law issue *vis-a-vis* diversity jurisdiction or bankruptcy jurisdiction, the federal court must honor state common law when deciding state law issues. See, generally, **United Mine Workers v. Gibbs**, 383 U.S. 715 (1966) and **Butner v. United States**, 440 U.S. 48 (1979). State judge-made rules is every bit as binding on the federal courts as is state statutory provisions.

## CONCLUSION

For the foregoing reasons, Motion for Leave to File Amended Complaint should be GRANTED.

Respectfully submitted,

By: _____

JOHN KORMAN, Relator,
934 SW 21st Way,
Boca Raton 33486
Florida U.S.A.
(561) 393-0773
korman2001@comcast.net

## <u>CERTIFICATE OF SERVICE</u>

**THE UNDERSIGNED HEREBY CERTIFIES** that a true and correct copy of hereof has been forwarded, via first class U.S. Mail, to the following; Steven Ellison, Esquire, Broad and Cassel, One North Clematis Street, Suite 500, West Palm Beach Florida 33401;

Via e-mail to the following;

HARRIS K. SOLOMON
harris.solomon@brinkleymorgan.com
STACY M. SCHWARTZ
Stacy.schwartz@brinkleymorgan.com
ALBA L. CLEVELAND
Alba.Cleveland@brinkleymorgan.com
KALEY LOMBARDO
Kaley.Lombardo@brinkleymorgan.com

Spencer Tew
st@tewlaw.com
on this 3rd day of July, 2012.

John Korman
934 SW 21st Way
Boca Raton, Florida 33486
(561) 393-0773
korman2001@comcast.net

By: _____
John Korman

# Composite
## of
# Exhibit DD



A-04-000786

## IN THE NEBRASKA COURT OF APPEALS

MORTGAGE ELECTRONIC REGISTRATIONS SYSTEMS, INC.,
Plaintiff/Appellant

vs.

NEBRASKA DEPARTMENT OF BANKING AND FINANCE,
Defendant/Appellee

**BRIEF OF APPELLANT**

APPEAL FROM THE DISTRICT COURT OF
LANCASTER COUNTY, NEBRASKA

The Honorable John A. Colborn

Prepared and submitted by:

James M. Pfeffer, #19177
Joseph T. Breckenridge, #21918
Abrahams Kaslow & Cassman LLP
8712 West Dodge Road, Suite 300
Omaha, Nebraska 68114
Telephone (402) 392-1250
Attorneys for Plaintiff/Appellant

**FILED**

OCT 15 2004



CLERK
NEBRASKA SUPREME COURT
COURT OF APPEALS

JTB/303151.5

# TABLE OF CONTENTS

Page(s)

TABLE OF CASES AND STATUTES ............................................................... iii

STATEMENT OF THE BASIS OF JURISDICTION ................................................. 1

STATEMENT OF THE CASE ........................................................................ 1

    A.    Nature of the Case ......................................................................... 1

    B.    Issue Actually Tried in the Court Below ................................................ 2

    C.    How the Issue Was Decided and What Judgment Was Entered by the Court Below ..................................................................... 2

    D.    Scope of Review ........................................................................... 2

ASSIGNMENTS OF ERROR ......................................................................... 2

PROPOSITIONS OF LAW ............................................................................. 3

STATEMENT OF FACTS ............................................................................. 4

ARGUMENT

    I.    THE DISTRICT COURT ERRED IN CONCLUDING THAT MERS MEETS THE DEFINITION OF A "MORTGAGE BANKER" UNDER NEB. REV. STAT. § 45-702(6) AND IS THEREFORE REQUIRED TO REGISTER AS A MORTGAGE BANKER ........................................... 7

        I.A.    MERS DOES NOT "ACQUIRE" MORTGAGE LOANS OR ENGAGE IN ANY OF THE OTHER MORTGAGE BANKING ACTIVITIES DESCRIBED IN § 45-702(6), AND MERS' ABILITY TO EXERCISE INTERESTS IN A MORTGAGE LOAN, INCLUDING THE RIGHT TO FORECLOSE, IS NOT SUFFICIENT TO DEEM THAT MERS ACQUIRES MORTGAGE LOANS BECAUSE MERS MERELY ACTS IN A NOMINEE CAPACITY FOR THE OWNER AND HOLDER OF THE PROMISSORY NOTE SECURED BY THE MORTGAGE. ........................................... 7

I.B.  THE DISTRICT COURT SHOULD HAVE
RECOGNIZED THAT MERS' OWNERSHIP OF
A LEGAL INTEREST IN THE SECURITY
DOCUMENT DOES NOT EQUATE TO MERS'
OWNERSHIP OF THE PROMISSORY NOTE OR
OTHER DEBT INSTRUMENT EVIDENCING
THE LOAN MADE TO THE CONSUMER.............................   12

II.  THE DISTRICT COURT ERRED BY FAILING TO
DETERMINE THAT MORTGAGE LOAN CONSUMERS
WILL NOT BE HARMED IF MERS IS NOT
REGISTERED AS A MORTGAGE BANKER....................................   17

CONCLUSION ...................................................................................................   22

## TABLE OF CASES

Page(s)

*City of Grand Island v. County of Hall*, 196 Neb. 282, 242 N.W.2d 858 (1976)............ 14

*Connors v. Pantano*, 165 Neb. 515, 86 N.W.2d 367 (1957) ......................................... 14

*Craddock v. Brinkley*, 671 So. 2d 662 (Miss. 1996).................................................. 16

*DLH, Inc. v. Lancaster County Board of Commissioners*, 264 Neb. 358,
    648 N.W.2d 277 (2002) .......................................................................... 13

*Equitable Building & Loan Ass'n. of Grand Island v. Equitable Mortgage Corp.*,
    11 Neb. App. 850, 662 N.W.2d 205 (2003)................................................ 9

*Henkle & Joyce Hardware Co. v. Maco, Inc.*, 195 Neb. 565,
    239 N.W.2d 772 (1976) ........................................................................... 2

*James v. Paulson*, 261 Neb. 980, 622 N.W.2d 857 (2001)......................................... 2

*Little Blue Natural Resources Dist. v. Lower Platte North Natural Resources Dist.*,
    206 Neb. 535, 294 N.W.2d 598 (1980)..................................................... 14

*Pettigrew v. Home Ins. Co.*, 191 Neb. 312, 214 N.W.2d 920 (1974) ............................ 14

*South Boston Sav. Bank v. Commissioner of Revenue*, 418 Mass. 695,
    640 N.E.2d 462 (1994)............................................................................ 8

*State v. One 1972-Door Sedan Rambler*, 191 Neb. 462, 215 N.W.2d 845 (1974).......... 14

## STATUTES

Neb. Rev. Stat. § 25-1911 ................................................................................ 2

Neb. Rev. Stat. § 45-702(6) ...........................................................................2, 3, 5, 7, 13

Neb. Rev. Stat. § 45-702(8) ........................................................................... 13, 14, 15

Neb. Rev. Stat. §§ 45-701 to 45-721 ................................................................ 1

Neb. Rev. Stat. § 45-704................................................................................. 6

Neb. Rev. Stat. §§ 84-901 to 84-920 ............................................................... 6

Neb. Rev. Stat. §§ 76-1001 to 76-1018 ................................................................... 15

## OTHER CITATIONS

Merriam Webster's Collegiate Dictonary 683 (10th Ed. 1993) ........................................ 15

24 C.F.R. Part 3500.21 as of 4/1/03 (HUD's Reg. X).................................................... 20

## STATEMENT OF THE BASIS OF JURISDICTION

This appeal from the District Court of Lancaster County, Nebraska (the "District Court") is brought pursuant to Neb. Rev. Stat. § 25-1912. The trial judge entered the District Court's Order on May 27, 2004. The Notice of Intention to Appeal and requisite docket fee were filed with the District Court on June 25, 2004.

## STATEMENT OF THE CASE

**A.     Nature of the Case**

Plaintiff/Appellant, Mortgage Electronic Registration Systems, Inc. ("MERS"), appeals from the Order entered by the District Court on May 27, 2004 in favor of Defendant/Appellee, the Nebraska Department of Banking and Finance (the "Department"). The District Court's Order came as the result of MERS' Petition for Review, which MERS filed in the District Court on November 5, 2003, appealing the decision of the Department that MERS meets the requirements of a mortgage banker under the Nebraska Mortgage Bankers Registration and Licensing Act (the "Act"), Neb. Rev. Stat. §§ 45-701 to 45-721 (1998 and Supp. 2003). (T38) In the District Court's Order, the trial judge, John A. Colborn, ruled that MERS acquires mortgage loans under the Act, and is therefore required to register under the Act in order to continue to conduct business in the State of Nebraska. (T42) The District Court did not find that there is a bifurcation of interests between the holder of the promissory note evidencing a mortgage loan and MERS, which only holds the beneficial interest in the mortgage itself, in a nominee capacity for the owner and holder of the promissory note secured by such mortgage. (T42) MERS then filed this appeal.

**B.      Issue Actually Tried in the Court Below**

1.      Whether MERS acquires mortgages loans under the Act and is therefore required to register as a mortgage banker in Nebraska.

**C.      How the Issue Was Decided and What Judgment Was Entered by the Court Below**

1.      The District Court ruled that MERS does acquire mortgage loans under the Act and is therefore required to register as a mortgage banker in Nebraska.

**D.      Scope of Review**

"A judgment rendered or final order made by the district court may be reversed, vacated, or modified for errors appearing on the record." Neb. Rev. Stat. § 25-1911.

"In actions at law, the findings of the trier of fact will not be set aside on appeal unless clearly wrong.  In determining the sufficiency of the evidence to sustain the judgment, that evidence must be considered in the light most favorable to the successful party.  Every controverted fact must be resolved in favor of the successful party, and the successful party is entitled to the benefit of any reasonably deducible inferences." *Henkle & Joyce Hardware Co. v. Maco, Inc.*, 195 Neb. 565, 239 N.W.2d 772 (1976).

On a question of law, an appellate court is obligated to reach a conclusion independent of the determination reached by the court below. *James v. Paulson*, 261 Neb. 980, 622 N.W.2d 857 (2001).

<div align="center">

**ASSIGNMENTS OF ERROR**

</div>

1.      MERS does not meet the definition of a mortgage banker because MERS does not engage in any of the mortgage banking activities described in § 45-702(6) of the Act. Specifically, the District Court erred in determining that MERS "acquires" mortgage loans. Because MERS does not acquire mortgage loans and is therefore not a mortgage banker for

<div align="center">2</div>

purposes of § 45-702(6), the District Court's Order and determination that MERS is required to register as a mortgage banker under the Act should be reversed and this Court should find that MERS is not a mortgage banker under the Act and is therefore not required to register under the Act.

2.      The District Court erred in concluding that MERS' ability to exercise interests in a mortgage loan, including the right to foreclose, is sufficient to deem MERS as acquiring mortgage loans under the Act because the District Court failed to recognize that MERS merely serves in a nominee capacity for the owner and holder of the promissory note secured by the mortgage.

3.      The District Court erred by not finding that MERS' ownership of a legal interest in the mortgage does not equate to MERS' ownership of the promissory note.

4.      The District Court erred by not finding that mortgage loan consumers will not be harmed if MERS is not registered as a mortgage banker under the Act.

## PROPOSITIONS OF LAW

### I.

THE COMMON PARLANCE OF THE WORD "ACQUIRE" IN THE MORTGAGE BANKING INDUSTRY REFERS TO AN INVESTOR'S ACQUISITION OF A MORTGAGE LOAN ON THE SECONDARY MARKET.

*South Boston Sav. Bank v. Commissioner of Revenue,* 640 N.E.2d 462 (Mass. 1994).

### II.

A MORTGAGE AND A PROMISSORY NOTE ARE SEPARATE AND DISTINCT INSTRUMENTS.

*Craddock v. Brinkley, 671 So. 2d 662 (Miss. 1996).*

JTB/303151.5

## III.

THE MERS® SYSTEM DOES NOT ADVERSELY AFFECT THE BORROWER'S RIGHT TO LOAN INFORMATION BECAUSE, UNDER FEDERAL LAWS. EACH TIME THE SERVICING RIGHTS TO A MORTGAGE LOAN CHANGE, THE BORROWER IS NOTIFIED OF THE NEW SERVICER OF THE LOAN.

24 C.F.R. Part 3500.21 as of 4/1/03 (HUD's Reg. X).

### STATEMENT OF FACTS

MERS is a private corporation and is a wholly owned subsidiary of MERSCORP, INC. MERS' sole purpose is to hold mortgage liens in a nominee (limited form of agency) capacity for its members.  The mortgage information is registered on the MERS® System.  The MERS® System is a national electronic registry created by the mortgage banking industry to track the transfer of ownership interests and servicing rights in mortgage loans. (T17)  Over the life of a mortgage loan, the ownership of the mortgage loan and the servicing rights of the mortgage loan are likely to be sold and resold many times.  (T16)  Prior to MERS, an assignment or other appropriate document was required to be filed in the real estate records each time the servicing rights of a mortgage loan were transferred because the new servicer needed to appear in the land records in order to receive service of process.  (T16)  This process resulted in missed or inaccurate assignments causing an unclear or broken chain of title to a mortgage loan in the real estate records. (T16)  As a consequence, the transfer of the ownership interest in, including legal title to, mortgage loans, and the servicing rights relating to mortgage loans, and the release of mortgage liens was a cumbersome and expensive process to all involved. (T16) Prior to MERS, consumers were especially hit hard because research and recording costs were often passed on to consumers.  (T16)

To address these problems, in 1991 the Government National Mortgage Association ("Ginnie Mae"), the Mortgage Bankers Association of America ("MBA"), the Federal National Mortgage Association ("Fannie Mae"), the Federal Home Loan Mortgage Corporation ("Freddie Mac") and others within the mortgage banking industry created MERS to provide an electronic registration system and clearinghouse for title to mortgage loans and servicing rights that is similar to the process successfully used by the Depository Trust Company for the securities industry. (T16)  The MERS® System has been endorsed by, and MERS' members include, the MBA and many large and prominent national and international lenders, agencies such as Fannie Mae, Freddie Mac, and the American Land Title Association and many of the largest and most well-known title companies. (T16, 17)

MERS serves as the mortgagee of record in a nominee (i.e., agency) capacity for the approximately 1600+ mortgage lenders registered in the MERS® System.  MERS becomes the mortgagee of record with respect to such mortgage loans, as nominee for the beneficial owner of the mortgage loan, in one of two ways:  (1) the borrower and the lender name MERS as the mortgagee of record at the time the mortgage loan is originated, or (2) the lender causes a mortgage lien for which the lender previously originated or acquired the note secured by the mortgage to be assigned of record to MERS, so that MERS becomes the mortgagee of record in the real estate records in which the mortgage was recorded.  (E3, 4:3, Vol. II)

By letter dated July 11, 2002, the Department notified MERS that MERS meets the definition of a mortgage banker under Neb. Rev. Stat. § 45-702(6) (1998 & Supp. 2003) of the Act because MERS is "acquiring loans as a nominee for lenders in Nebraska".  The Department indicated that MERS must register as a mortgage banker in Nebraska pursuant to § 45-704 or

notify the Department of an exemption under the Act.  (E2, E1, 14:3, Vol. II)  MERS is not registered as a mortgage banker in any other state.  (5:11-19)

After the Department's July 11, 2002 correspondence, MERS and the Department exchanged numerous faxes, letters and phone calls concerning whether MERS is required to register as a mortgage banker under the Act.  (E2, E1, 1-13:3, Vol. II)  On June 19, 2003, MERS filed a Petition for Declaratory Order ("Petition For Declaratory Order") with the Department seeking a formal determination as to whether MERS is a mortgage banker within the meaning of the Act, and therefore, required to register as such under the Act.  (E3, 1:3, Vol. II)  A hearing on MERS' Petition for Declaratory Order was held before Samuel P. Baird (the "Director"), Director of the Department, on August 13, 2003.  During oral arguments, MERS and the Department narrowed the issue before the Director to the question of whether MERS' activities in Nebraska constitute, directly or indirectly, "acquiring mortgage loans" within the meaning of the Act.  (E3, 26:3, Vol. II)  The Department issued its Declaratory Order on October 7, 2003, finding that MERS is a mortgage banker under the Act.  As the basis for its decision, the Department stated that MERS directly or indirectly acquires mortgage loans.  As the result, the Department declared that MERS is required to register as a mortgage banker.  (E3, 25-29:3, Vol. II)

On November 5, 2003, MERS commenced its action in the District Court pursuant to the Administrative Procedure Act, Neb. Rev. Stat. §§ 84-901 to 84-920 (1999 & Supp. 2003), petitioning the District Court to review the Department's determination that MERS meets the definition of a mortgage banker under the Act.  In its Order, the District Court upheld the Department's determination that MERS acquires mortgage loans under the Act and is therefore required to be licensed as a mortgage banker under the Act.  (T41-43)

## ARGUMENT

### I.

**THE DISTRICT COURT ERRED IN CONCLUDING THAT MERS MEETS THE DEFINITION A "MORTGAGE BANKER" UNDER NEB. REV. STAT. § 45-702(6).**

### I.A.

**MERS DOES NOT "ACQUIRE" MORTGAGE LOANS OR ENGAGE IN ANY OF THE OTHER MORTGAGE BANKING ACTIVITIES DESCRIBED IN § 45-702(6), AND MERS' ABILITY TO EXERCISE INTERESTS IN A MORTGAGE LOAN, INCLUDING THE RIGHT TO FORECLOSE, IS NOT SUFFICIENT TO DEEM THAT MERS ACQUIRES MORTGAGE LOANS BECAUSE MERS MERELY ACTS IN A NOMINEE CAPACITY FOR THE OWNER AND HOLDER OF THE PROMISSORY NOTE SECURED BY THE MORTGAGE.**

Section 45-702(6) of the Act provides:  "Mortgage banker means any person not exempt under section 45-703 who, for compensation or gain or in the expectation of compensation or gain, directly or indirectly makes, originates, services, negotiates, acquires, sells, arranges for, or offers to make, originate, service, negotiate, acquire, sell, or arrange for ten or more mortgage loans in a calendar year".  Neb. Rev. Stat. § 45-702(6) (1998 & Supp. 2003) (emphasis added).

MERS does not take applications for, underwrite or negotiate mortgage loans.  MERS does not make or originate mortgage loans to consumers.  MERS does not extend any credit to consumers.  MERS does not service mortgage loans.  MERS does not sell mortgage loans. Most

importantly, MERS is not an investor who acquires mortgage loans on the secondary market. (E3, 18:3, Vol. II)

The Department and MERS agree that MERS does not underwrite, make, originate, service, negotiate, sell, arrange for or offer to make, originate, service, negotiate, sell or arrange for mortgage loans. Therefore, the Department and MERS are in agreement that the only statutory activity at issue, and the only issue for this Court to decide, is whether MERS acquires mortgage loans. (E3, 26:3, Vol. II)

Although the legislative history of the Act does not discuss why the term "acquire" was used in § 45-702(6), the common parlance of the word "acquire" in the mortgage banking industry refers to an investor's acquisition of a mortgage loan on the secondary market. For instance, in *South Boston Sav. Bank v. Commissioner of Revenue*, 640 N.E.2d 462 (Mass. 1994), a Massachusetts court characterized the two ways a bank may come into possession of a mortgage loan. The court, in *South Boston Sav. Bank*, stated: "A bank may come into possession of a mortgage loan either by directly issuing a loan secured by the mortgage of real estate or by acquiring a loan previously issued by another lender." *Id.* at 466-67 (emphasis added).

A brief history of why the secondary mortgage market was created helps illustrate this commonly understood meaning of the term "acquire". The secondary mortgage market evolved to facilitate the free flow of money available for mortgage loans to consumers. Without the secondary market, primary mortgage lenders would be limited in the amount of mortgage loans they could make to consumers because they only have so much capital available to make mortgage loans. Through the secondary market, investors acquire loans from the primary mortgage lenders, thus providing primary lenders with more capital to make additional mortgage loans. The secondary market ultimately provides a free-flow of cash to mortgage lenders to

make loans to consumers to purchase homes.  The primary mortgage lenders benefit because they have additional capital to make more loans and they also receive their ordinary lender's fees/commissions for originating the loan.  The investors benefit because, as owners of the loans, they are entitled to the interest income to be earned from the loans.  Consumers benefit because there are more funds available for mortgage loans so more consumers can get mortgage financing.

Besides loan "servicing" activities, all of the mortgage banking activities described in § 45-702(6) involve the extension of credit.  This Court has previously recognized that mortgage bankers lend money to consumers.  In *Equitable Building and Loan Association of Grand Island v. Equitable Mortgage Corporation,* 11 Neb. App. 850, 662 N.W. 2d 205 (Neb. 2003), the court stated that "a mortgage banker actually lends its own money, closes the loans, earns a service premium for the loans, and then sells the loans to another bank." *Id.* at 209 (emphasis added). The question then becomes whether MERS lends money to consumers to purchase homes, either at the primary or secondary level.  It is not disputed that MERS is not a primary lender who makes, originates, or negotiates or arranges for the making or originating of a mortgage loan directly to a consumer.  Similarly, MERS is not an investor who acquires or negotiates or arranges for the acquisition of mortgage loans on the secondary market or a bank or servicing company which acquires the servicing rights to mortgage loans for fee income.  (E3, 18:3, Vol. II)

There is no rational basis for determining that MERS acquires loans.  In its Order, the District Court stated:

The procedures for members using the MERS system and documents used for recording the mortgages [or] other security documents reference MERS as having

the right "to exercise interests, including, but not limited to, the right to foreclose and sell the property, and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument." MERS' active participation in the mortgage loan industry of indirectly or directly acquiring legal title to mortgages along with the ability to exercise lender rights such as foreclosure are sufficient to classify MERS as "acquiring" mortgage loans as referenced under Neb. Rev. Stat. § 45-702(6). (T42)

In its Order, the District Court failed to recognize that MERS, in its agreement with its members, cannot exercise, and is contractually prohibited from exercising, any of the rights or interests in the mortgages or other security documents. MERS is named as the "nominee" owner unless and until it is authorized to do so by the real and beneficial owners of such security documents. (T38-43) In the Terms and Conditions between MERS and its members, MERS' authority is clearly limited as evidenced by the following provision from the Terms and Conditions:

MERS shall serve as mortgagee of record with respect to all such mortgage loans solely as a nominee, in an administrative capacity, for the beneficial owner or owners thereof from time to time. MERS shall have no rights whatsoever to any payments made on account of such mortgage loans, to any servicing rights related to such mortgage loans, or to any mortgaged properties securing such mortgage loans. MERS agrees not to assert any rights (other than rights specified in the Governing Documents) with respect to such mortgage loans or mortgaged properties. (E3,13:3, Vol. II)

MERS only acts when directed to by its members and for the sole benefit of the owners and holders of the promissory notes secured by the mortgage instruments naming MERS as nominee owner. For this reason, MERS' ability to exercise any interests in mortgage loans, including the right to foreclose, is not sufficient to deem MERS as acquiring mortgage loans under the Act because MERS does not receive any of the benefits from taking such actions. MERS has no interest at all in the promissory note evidencing the mortgage loan. MERS has no financial or other interest in whether or not a mortgage loan is repaid. As described above, MERS simply holds mortgage liens in a nominee capacity and through its electronic registry, tracks changes in the ownership of mortgage loans and the servicing rights related thereto. MERS is clearly listed as a nominee in the mortgage, which is recorded in the real estate records. When a MERS member sells or transfers a mortgage loan or the servicing rights thereunder, MERS tracks such sale or transfer in the MERS® System and there is no need for filing anything in the real estate records because the mortgage lien remains with MERS. Once MERS becomes the mortgagee of record of a mortgage, MERS remains the mortgagee of record of the mortgage even when the beneficial ownership interest in the promissory note secured by the mortgage or the servicing rights are sold or transferred from one MERS member to another. (E3, 3-5:3, Vol. II) In addition, MERS is required by the various State recording statutes to have a recordable interest in the mortgage in order for MERS to be named in the mortgage. Consequently, MERS is named as the mortgagee in a nominee capacity for the actual owner and holder of the promissory note secured by the mortgagee as described above.

MERS is not the owner of the promissory note secured by the mortgage and has no rights to the payments made by the debtor on such promissory note. Rather, MERS holds the mortgage lien as nominee for the owner of the promissory note. MERS is not the owner of the servicing

JTB/303151.5

rights relating to the mortgage loan and MERS does not service loans. The beneficial interest in the mortgage (or the person or entity whose interest is secured by the mortgage) runs to the owner and holder of the promissory note. In essence, MERS immobilizes the mortgage lien while transfers of the promissory notes and servicing rights continue to occur. (E3,5:3, Vol. II)

For the foregoing reasons, MERS cannot be deemed to be acquiring mortgage loans under the Act and does not otherwise meet the definition of a mortgage banker. Consequently, the Court should reverse the District Court's Order that MERS is required to register as a mortgage banker.

## I.B.

## THE DISTRICT COURT SHOULD HAVE RECOGNIZED THAT MERS' OWNERSHIP OF A LEGAL INTEREST IN THE SECURITY DOCUMENT DOES NOT EQUATE TO MERS' OWNERSHIP OF THE PROMISSORY NOTE OR OTHER DEBT INSTRUMENT EVIDENCING THE LOAN MADE TO THE CONSUMER.

Each of the categories of persons listed in § 45-702(6) directly or indirectly receive consideration from mortgage loans and have an ownership or servicing interest in the notes secured by mortgages. As more fully explained below, MERS does not make or acquire promissory notes or debt instruments of any nature and therefore cannot be said to be acquiring mortgage loans. MERS simply holds legal title to mortgages and deeds of trust as a nominee for the owner of the promissory note. MERS has no interest in the notes secured by mortgages or the servicing rights related thereto.

JTB/303151.5

The Department asserts that MERS directly or indirectly acquires mortgage loans because MERS holds legal title to deeds of trust or mortgages in a nominee capacity for lenders. At the hearing on MERS' Petition for Declaratory Order, counsel for the Department stated: "MERS is the mortgage nominee or beneficiary nominee.  Therefore, it acquires the <u>legal title to the mortgage loan</u> when the conveyance is recorded."  (E2, 5:3, Vol. II)  Furthermore, the Department asserts that MERS holds title to Nebraska real property.  (E3, 4-5:3, Vol. II)  These assertions by the Department are in error.  MERS holds legal title to the mortgage or deed of trust in a nominee capacity simply to immobilize the mortgage lien in MERS and to provide MERS with a recordable interest to comply with the recording statutes of various states.  The mortgage loan refers to the promissory note to which MERS does not acquire any interest.

The Department's analysis is fundamentally flawed because it fails to recognize an important distinction between a loan instrument and a security instrument.  By stating that MERS acquires legal title to the "mortgage loan", the Department confuses the analysis.  MERS does not acquire any interest (legal or beneficial) in the <u>loan instrument</u> (i.e., the promissory note or other debt instrument).  Rather, MERS, in a nominee capacity for lenders, merely acquires legal title to the <u>security instrument</u> (i.e., the deed of trust or mortgage that secures the loan).

The Department's position that "mortgage loans are not legally divided under the Act" is incorrect.  In § 45-702(6), the word "mortgage" modifies the word "loans" to specify certain types of loans – loans secured by interests in real property.  The Act's definition of a "mortgage loan" in § 45-702(8) makes this point even more certain.  Section 45-702(8) of the Act defines "mortgage loan" to mean "<u>any loan or extension of credit</u> secured by a lien on real property, including a refinancing of a contract of sale or an assumption or refinancing of a prior loan or extension of credit."  Neb. Rev. Stat. § 45-702(8) (1998 and Supp. 2003) (emphasis added).

JTB/303151.5

Absent anything to the contrary, statutory language is to be given its plain meaning, and a court will not look beyond a statute or interpret it when the meaning of its words are plain, direct and unambiguous. *DLH, Inc. v. Lancaster County Board of Commissioners*, 264 Neb. 358, 648 N.W.2d 277 (2002). Further, in *Little Blue Natural Resources District v. Lower Platte North Natural Resources District*, 206 Neb. 535, 294 N.W.2d 598 (1980), the court stated:

> Cardinal rules of statutory construction, however, prohibit us from ignoring entire phrases of a statute or giving the plain meaning of a statute a strained or absurd interpretation. "Where the language of a statute is plain and unambiguous, no interpretation is needed and the court is without authority to change the language." *City of Grand Island v. County of Hall*, 196 Neb. 282, 286, 242 N.W.2d 858, 861 (1976).
>
> In interpreting the meaning of a statutory provision, the whole provision should be read in order to arrive at a conclusion as to its proper meaning. *Pettigrew v. Home Ins. Co.*, 191 Neb. 312, 214 N.W.2d 920 (1974). Moreover, courts should give statutory language its plain and ordinary meaning. *State v. One 1970 2-Door Sedan Rambler*, 191 Neb. 462, 215 N.W.2d 849 (1974); *Connors v. Pantano*, 165 Neb. 515, 86 N.W.2d 367 (1957).

*Little Blue Natural Resources District*, 294 N.W.2d at 603 (emphasis added).

From the plain face of § 45-702(8), it is clear that the Act is intended to regulate and to require the licensure of persons who, *inter alia*, acquire "loans", not persons who acquire mortgages, deeds of trust or other security instruments. The words "any loan or extension of credit" set forth in § 45-702(8) clearly suggest that the lending of money or extending of credit or arranging for or negotiating the lending of money (for example a loan broker) is the conduct

being regulated by the Act. This "plain meaning" interpretation of the Act's definition of "mortgage loan" is in accord with the commonly understood meaning of the word "loan".

Webster's Dictionary defines "loan" as: money lent at interest; something lent usually for the borrower's temporary use; etc. Merriam Webster's Collegiate Dictionary 683 (10th ed. 1993). Since MERS does not acquire any interest in a debt instrument evidencing a loan (i.e., money being lent at interest) and does not make loans, arrange for loans or negotiate the terms of loans, it cannot be said to be acquiring loans, including mortgage loans, and therefore it logically cannot be deemed a mortgage banker. Thus, under a "plain meaning" interpretation of the Act, including the definition of a mortgage banker, in order for a person to acquire a mortgage loan, such person must acquire a legal or beneficial interest in the promissory note or other debt instrument evidencing such mortgage loan.

As demonstrated above, the Act distinguishes the interests in the promissory note or debt instrument on the one hand, from interests in the deed of trust or security instrument on the other. It is important to understand that MERS may acquire a legal interest in a mortgage or deed of trust (as nominee for the actual lender) without acquiring any corresponding interest, legal or beneficial, in the promissory note secured by such deed of trust. This is because the note owner appoints MERS to be its agent to only hold the mortgage lien interest, not to hold any interest in the note. Besides MERS, other parties acquire legal interests in deeds of trust without being deemed mortgage bankers under the Act. For instance, under the Nebraska Trust Deeds Act, Neb. Rev. Stat. §§ 76-1001 to 76-1018 (1996 and Supp. 2003), a borrower may convey real property by a trust deed to a third party trustee as security for the performance of the borrower's obligations to his/her lender. Although a trustee under the Nebraska Trust Deeds Act receives legal title to the trust deed securing the borrower's obligations, the trustee often does not hold an

15

interest (legal or beneficial) in the promissory note or debt instrument evidencing the borrower's obligations. As such, the trustee merely holds legal title in a nominee capacity for the lender, much like MERS. Yet, neither the Trust Deeds Act nor the Mortgage Bankers Act requires such trustees to register as a mortgage banker, despite holding legal title.

In addition to the foregoing, courts have frequently noted the critical difference between loan instruments and security instruments. A mortgage and a promissory note are separate and distinct documents. *Craddock v. Brinkley*, 671 So. 2d 662, 665 (Miss. 1996).

Accordingly, a person may hold legal title to a note while appointing another entity to hold legal title to the mortgage securing such note. In the mortgage banking industry, it is standard industry practice for an investor, such as Fannie Mae or Freddie Mac, to hold legal title to notes secured by mortgages and use a separate servicing entity to hold title to the mortgage via a recorded mortgage or assignment. With the development of MERS, these interests are now split three ways instead of two. The investor continues to own and hold the promissory note, but under the MERS® System, the servicing entity only holds contractual servicing rights and MERS holds legal title to the mortgage as nominee for the benefit of the investor (or owner and holder of the note) and not for itself. MERS does not hold any interest (legal or beneficial) in the promissory notes that are secured by such mortgages or in any servicing rights associated with the mortgage loan. The debtor on the note owes no obligation to MERS and does not pay MERS on the note. MERS holds legal title to the mortgage for the benefit of the owner of the note. In effect, the mortgage lien becomes immobilized by MERS continuing to hold the mortgage lien when the note is sold from one investor to another via an endorsement and delivery of the note or the transfer of the servicing rights from one MERS member to another MERS member via a purchase and sale agreement which is a non-recordable contractual right. Legal title to the

16

mortgage remains in MERS after such transfers and is tracked by MERS in its electronic registry. (E3, 4-5:3, Vol. II)

As demonstrated above, MERS cannot be deemed to be acquiring mortgage loans under the Act because it does not obtain legal or beneficial title in loan instruments. MERS does not acquire an interest in promissory notes or debt instruments of any nature. Plainly interpreted, the Act requires the licensure of persons who acquire <u>loans of the mortgage variety</u> (i.e., loans secured by mortgages). For these reasons, the Court should recognize that MERS' ownership of a legal interest in the security documents registered on the MERS® System does not equate to MERS ownership of the debt instruments evidencing the loans made to consumers. The Court should further recognize that without owning an interest in the debt instruments, MERS cannot be deemed to be acquiring mortgage **loans** under the Act. As a result, the Court should reverse the District Court's Order that MERS is required to be registered as a mortgage banker.

For the foregoing reasons, the District Court erred in concluding that MERS meets the definition of a "mortgage banker" under Neb. Rev. Stat. § 45-702(6). Consequently, the Court should reverse the District Court's Order and determination that MERS is required to register as a mortgage banker under the Act and the Court should find that MERS is not a mortgage banker under the Act and is therefore not required to register under the Act.

## II.

## THE DISTRICT COURT ERRED BY FAILING TO DETERMINE THAT MORTGAGE LOAN CONSUMERS WILL NOT BE HARMED IF MERS IS NOT REGISTERED AS A MORTGAGE BANKER.

The Department asserts that a number of potential problems for mortgage loan customers could arise if MERS is not registered as a mortgage banker, including:

1. MERS keeps all of its records for mortgage transactions in its central database, which is accessible only to its clients with a legal interest in the mortgage.

2. Without licensure, MERS is not required to post a surety bond or other form of security to protect consumers from damages resulting from its potential inaction or action.

3. Due to the private nature of MERS' business, if MERS goes out of business, its records may become completely inaccessible to the public and the expenses to update the public records may be significant.

4. MERS may fail to timely release the security interest it holds legal title to under a deed of trust or mortgage when a mortgage loan is paid off.

5. Consumers may discover that real estate liens are not properly recorded, and if MERS is not required to maintain a license, MERS does not have an incentive to answer consumer complaints and consumers would not have a venue. (E2, 10-11:3, Vol. II)

The Department's concern with each of these potential problems is misplaced. In the mortgage banking industry, after a mortgage loan is made, it is standard practice for the promissory note evidencing the loan and the servicing rights associated with the loan to be transferred, sold and resold many times. Prior to MERS, an assignment or other appropriate document was required to be filed in the real estate records each time the servicing rights of a mortgage loan were transferred because the new servicer needed to appear in the land records in

18

order to receive service of process. This resulted in missed or inaccurate assignments causing an unclear or broken chain of title to a mortgage loan in the real estate records. As a consequence, the transfer of the ownership interest in, including legal title to, mortgage loans, and the servicing rights relating to mortgage loans, and the release of mortgage liens was a cumbersome and expensive process to all involved, including consumers because the research and recording costs are often passed on to the consumer. (E3, 3:3, Vol. II)

The MERS® System provides an enormous cost benefit to consumers because these recording and research costs, which were formally passed on to the consumers, no longer exist under the MERS® System. The MERS® System simply is a way to increase the efficiency and accuracy of tracking the ownership of the rights associated with mortgage loans so that the mortgage industry can better and more economically serve a greater number of people. What MERS tracks are non-recordable transfers. Servicing rights are transferred vis-à-vis a purchase and sale agreement which is a non-recordable contract right. The beneficial note interests are transferred by endorsement and delivery of the note which is also a non-recordable event. The mortgage lien remains with MERS so no assignment of the mortgage lien is needed when these non-recordable transfers occur and are tracked on the MERS® System.

Other than the cost savings that the MERS® System passes on to consumers of loans from MERS members, consumers are largely unaffected by MERS' involvement in the mortgage banking industry. It is true that MERS' registry or database (tracking the ownership interest and servicing rights) is only accessible by MERS' members, the public, at no cost, has access to the name and telephone number of the current mortgage servicer 7 days a week, 24 hours a day. It is the servicer that the consumer needs to contact for specific loan information, not MERS. Moreover, the MERS® System does not adversely affect the borrower's right to such

JTB/303151.5

information because, under federal laws, each time the servicing rights to a mortgage loan change, the borrower is notified of the new servicer of the loan. *See* 24 C.F.R. Part 3500.21 as of 4/1/03 (HUD's Reg. X).

Furthermore, none of the other potential problems noted above by the Department adversely affect consumers. MERS is largely transparent to the consumer. Original lenders of mortgage loans, investors who purchase or acquire mortgage loans on the secondary market, and servicers of mortgage loans are the "persons" under the Act that mortgage loan consumers need to be protected from because it is these persons who actually underwrite loans, make loans, service loans, acquire loans, and ultimately decide whether or not a consumer is in default on the loan.

MERS does not collect mortgage payments. MERS does not hold escrows for taxes and insurance. MERS does not provide any servicing functions on mortgage loans, whatsoever. Those rights are typically held by the servicer of the loan, who may or may not also be the holder of the note. The beneficial interest in the mortgage (or the person or entity whose interest is secured by the mortgage) runs to the owner and holder of the promissory note and/or servicing rights thereunder.

From a consumer protection standpoint, MERS is invisible to a consumer. In the event a consumer has a problem with his/her mortgage loan, such consumer is not going to contact MERS, but the servicer of the loan. As MERS merely holds legal title to the security instrument as nominee for the lender, it lacks authority to do anything more than notify the lender or loan servicer of the consumer's complaint. Other than holding legal title to the security instrument in order to immobilize the lien in the real estate records, any other action taken by MERS with

JTB/303151.5

respect to a consumer's mortgage loan is taken at the direct instruction of the lender or loan servicer and for such lender or loan servicer's benefit.

To further illustrate this lack of authority, the Terms and Conditions governing the relationship with MERS and its members provides:

> MERS shall serve as mortgagee of record with respect to all such mortgage loans solely as a nominee, in an administrative capacity, for the beneficial owner or owners thereof from time to time. MERS shall have no rights whatsoever to any payments made on account of such mortgage loans, to any servicing rights related to such mortgage loans, or to any mortgaged properties securing such mortgage loans. MERS agrees not to assert any rights (other than rights specified in the Governing Documents) with respect to such mortgage loans or mortgaged properties. (E3, 13:3, Vol. II)

Based upon the foregoing, there is no benefit to mortgage loan consumers in requiring MERS to be licensed as a mortgage banker. MERS' sole function to the mortgage banking industry is to track changes in the ownership and servicing rights in mortgage loans on its electronic registry. In order for MERS to track such changes, the recording laws require MERS to hold legal title to the deed of trust securing the consumer's mortgage loan in a nominee or administrative capacity for the real lender. The Act is intended to protect consumers from lenders and loan service providers, not MERS, because these are the parties that make decisions with respect to consumers' mortgage loans. Any action taken by MERS with respect to a consumer's mortgage loan is taken at the direct instruction of the lender or loan service provider. Because consumers will not be harmed if MERS is not registered as a mortgage banker, the

Court should reverse the District Court's Order that MERS is required to be registered as a mortgage banker.

## CONCLUSION

MERS does not meet the Act's definition of a mortgage banker. MERS does not directly or indirectly make, originate, service negotiate, acquire, sell, arrange for or offer to make, originate, service, negotiate, acquire, sell, arrange for mortgage loans. MERS does not receive compensation or gain in consideration for its performance of any of the mortgage banking activities described in the Act. MERS does not obtain legal or beneficial title to promissory notes or other debt instruments; therefore, under a "plain meaning" interpretation of the Act, it cannot be deemed to be acquiring mortgage loans. Finally, mortgage loan consumers will not be harmed if MERS is not required to register as a mortgage banker. For the foregoing reasons, MERS is not a mortgage banker for purposes of § 45-702(6), and the District Court's Order and conclusion that MERS is required to register as a mortgage banker under the Act should be reversed.

DATED this 14th day of October, 2004.

MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS, INC., Plaintiff/Appellant

By: _____
Joseph T. Breckenridge, #21918
James M. Pfeffer, #19177
ABRAHAMS KASLOW & CASSMAN LLP
8712 West Dodge Road, Suite 300
Omaha, Nebraska 68114
(402) 392-1250
Attorneys for Petitioner/Plaintiff

JTB/303151.5

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the above and foregoing Brief Of Appellant was served upon Defendant/Appellee by mailing two copies of same to the following addresses by regular United States mail, postage prepaid, this 14th day of October, 2004:

> Nebraska Department of Banking and Finance
> Samuel P. Baird, Director
> 1200 N St., Ste. 311, The Atrium
> Lincoln, Nebraska 68509
>
> Nebraska Department of Banking and Finance
> c/o Attorney General
> 2115 State Capitol Bldg.
> Lincoln, Nebraska 68509
> Attention: Fredrick F. Neid

Joseph T. Breckenridge

JTB/303151.5

# Composite
# of
# Exhibit DE

CFN 20090332756
OR BK 23462 PG 0273
RECORDED 07/24/2009 16:11:08
Palm Beach County, Florida
Sharon R. Bock, CLERK & COMPTROLLER
Pgs 0273 - 274; (2pgs)

Recording Requested By:
AURORA LOAN SERVICES   08 78826

When Recorded Return To:

ASSIGNMENT PREP
AURORA LOAN SERVICES
P.O. Box 1706
Scottsbluff, NE 69363-1706

## CORPORATE ASSIGNMENT OF MORTGAGE

Palm Beach, Florida
SELLER'S SERVICING #:0035163879 "KORMAN"

MERS #: 100075440093396388  VRU #: 1-888-679-6377

Date of Assignment: June 8th, 2009
Assignor: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC AS NOMINEE FOR LEHMAN BROTHERS BANK, FSB, A FEDERAL SAVINGS BANK ITS SUCCESSORS AND ASSIGNS at 3300 S.W. 34TH AVENUE, SUITE 101, OCALA, FL 34474
Assignee: AURORA LOAN SERVICES LLC at 2617 COLLEGE PARK, SCOTTSBLUFF, NE 69361
Executed By: JOHN J KORMAN, A MARRIED MAN, JOINED BY HIS SPOUSE, PAMELA KORMAN  To: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC AS NOMINEE FOR LEHMAN BROTHERS BANK, FSB, A FEDERAL SAVINGS BANK
Date of Mortgage: 09/29/2006 Recorded: 10/11/2006 in Book/Reel/Liber: 20949 Page/Folio: 0270 as Instrument No.: 20060578615 in Palm Beach, Florida

Property Address: 934 SW 21ST WAY, BOCA RATON, FL 33486

Legal: LOT 8, BLOCK 7, BRAMALEA UNICORP, BOCA RATON - SECOND ADDITION P.U.D., ACCORDING TO MAP OR PLAT THEREOF AS RECORDED IN PLAT BOOK 47, PAGE 139 OF THE PUBLIC RECORDS OF PALM BEACH COUNTY, FLORIDA.

KNOW ALL MEN BY THESE PRESENTS that in consideration of the sum of TEN and NO/100ths DOLLARS and other good and valuable consideration, paid to the above named Assignor, the receipt and sufficiency of which is hereby acknowledged, the said Assignor hereby assigns unto the above-named Assignee, the said Mortgage together with the Note or other evidence of indebtedness (the "Note"), said Note having an original principal sum of $650,000.00 with interest, secured thereby, together with all moneys now owing or that may hereafter become due or owing in respect thereof, and the full benefit of all the powers and of all the covenants and provisos therein contained, and the said Assignor hereby grants and conveys unto the said Assignee, the Assignor's beneficial interest under the Mortgage.

TO HAVE AND TO HOLD the said Mortgage and Note, and also the said property unto the said Assignee forever, subject to the terms contained in said Mortgage and Note.

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC AS NOMINEE FOR LEHMAN BROTHERS BANK, FSB, A FEDERAL SAVINGS BANK ITS SUCCESSORS AND ASSIGNS
On June 8th, 2009

By: _____
THEODORE SCHULTZ, Vice-President

WITNESS                          WITNESS

_____          _____
JAN S. FLORIDA                   SUSAN LINDHORST

*ALS*ALS/ALS/09/08/2009 08:01:19 AM* ALS/OTAL3*00000000000000000*0000* 1LPALM*00813879 FLSTATE_MORT_ASSIGN_ASSN *RAGALSA*

EXHIBIT "B"



STATE OF FLORIDA - PALM BEACH COUNTY
I hereby certify that this is a true and correct copy
of a PORTION OF
As filed in my office. WITNESS my hand and Official Seal.
THIS ____ DAY OF _____ 20__
SHARON R. BOCK
CLERK & COMPTROLLER
By _____
DEPUTY CLERK

CFN 20090050012
OR BK 23079 PG 0020
RECORDED 02/13/2009 09:33:18
Palm Beach County, Florida
Sharon R. Bock, CLERK & COMPTROLLER
Pgs 0020 - 21; (2pgs)

Recording Requested By:
AURORA LOAN SERVICES

When Recorded Return To:

Kathleen Olson
AURORA LOAN SERVICES
P.O. Box 1706
Scottsbluff, NE 69363-1706

**RECORD AND RETURN TO** →

LAW OFFICES OF
MARSHALL C. WATSON, P.A.
1800 N.W. 49th Street, Suite 120
Ft. Lauderdale, FL 33309

## CORPORATE ASSIGNMENT OF MORTGAGE

Palm Beach, Florida
SELLER'S SERVICING #:0035894757 "WATERS"

MERS #: 100025440002571583 VRU #: 1-888-679-6377

Date of Assignment: January 29th, 2009
Assignor: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC AS NOMINEE FOR LEHMAN BROTHERS BANK, FSB, A FEDERAL SAVINGS BANK IT'S SUCCESSORS AND ASSIGNS at 3300 S.W. 34TH AVENUE, SUITE 101, OCALA, FL 34474
Assignee: AURORA LOAN SERVICES LLC at 2617 COLLEGE PARK, SCOTTSBLUFF, NE 69361
Executed By: HOWARD G WATERS, A SINGLE MAN To: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR LEHMAN BROTHERS BANK, FSB, A FEDERAL SAVINGS BANK
Date of Mortgage: 07/26/2005 Recorded: 08/02/2005 in Book/Reel/Liber: 19010 Page/Folio: 0227 as Instrument No.: 20050481548 In Palm Beach, Florida

Property Address: 4783 VIA PALM LAKES, #107, WEST PALM BEACH, FL 33417

Legal: THAT CERTAIN CONDOMINIUM PARCEL, COMPOSED OF UNIT # 107, BUILDING #1 OF PALM LAKE, A CONDOMINIUM, ACCORDING TO THE DECLARATION OF CONDOMINIUM THEREOF, AS RECORDED IN OFFICIAL RECORDS BOOK 18598, PAGE 0656 OF THE PUBLIC RECORDS OF PALM BEACH COUNTY, FLORIDA (THE "PROPERTY").

KNOW ALL MEN BY THESE PRESENTS that in consideration of the sum of TEN and NO/100ths DOLLARS and other good and valuable consideration, paid to the above named Assignor, the receipt and sufficiency of which is hereby acknowledged, the said Assignor hereby assigns unto the above-named Assignee, the said Mortgage together with the Note or other evidence of indebtedness (the "Note"), said Note having an original principal sum of $138,320.00 with interest, secured thereby, together with all moneys now owing or that may hereafter become due or owing in respect thereof, and the full benefit of all the powers and of all the covenants and provisos therein contained, and the said Assignor hereby grants and conveys unto the said Assignee, the Assignor's beneficial interest under the Mortgage.

TO HAVE AND TO HOLD the said Mortgage and Note, and also the said property unto the said Assignee forever, subject to the terms contained in said Mortgage and Note.

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC AS NOMINEE FOR LEHMAN BROTHERS BANK, FSB, A FEDERAL SAVINGS BANK IT'S SUCCESSORS AND ASSIGNS
On January 29th, 2009

By: [signature]
JOANN REIN, Vice-President

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. CORPORATE SEAL 1995 DELAWARE

WITNESS
[signature]
SUSAN LINDHORST

WITNESS
[signature]
JANIE FLORES

STATE OF FLORIDA • PALM BEACH COUNTY
I hereby certify that this is a true and correct copy of a PORTION OF Case # 2009CA012276 Complaint page 36
as filed in my office. WITNESS my hand and Official Seal
THIS 26 DAY OF June 2012
SHARON R. BOCK
CLERK & COMPTROLLER
By [signature]
DEPUTY CLERK

*FO*OFOALSF01/29/2009 10:52:49 AM* ALSD1ALSA0000000000000000542007* FLPALM* 0035894757 FLSTATE_MORT_ASSIGN_ASSN **FOALSF*

09-02320

Recording Requested By:
AURORA LOAN SERVICES

When Recorded Return To:

Deborah Backus
AURORA LOAN SERVICES
P.O. Box 1706
Scottsbluff, NE 69363-1706

Palm Beach, Florida
SELLER'S SERVICING #:0037354560 "ILER"

## CORPORATE ASSIGNMENT OF MORTGAGE

MERS #: 100075440002998794 VRU #: 1-888-679-6377

Date of Assignment: August 7th, 2008
Assignor: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. at P.O. BOX 2026, G4318 MILLER ROAD, FLINT, MI 48501-2026
Assignee: AURORA LOAN SERVICES LLC at 2617 COLLEGE PARK, PO BOX 1706, SCOTTSBLUFF, NE 69361
Executed By: DONALD ILER AND CARMEN ILER To: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR LEHMAN BROTHERS BANK, FSB, A FEDERAL SAVINGS BANK
Date of Mortgage: 02/13/2006 Recorded: 02/23/2006 in Book/Reel/Liber: 19964 Page/Folio: 0003 as Instrument No.: 20060109161 in Palm Beach, Florida

Property Address: 621 NORTH F STREET, LAKE WORTH, FL 33461

Legal: THE SOUTH 12.5 FEET OF LOT 22, AND ALL OF LOT 23, BLOCK 189, THE TOWNSITE OF LUCERNE (F/K/A LAKE WORTH) ACCORDING TO THE PLAT RECORDED IN PLAT BOOK 2, PAGE 29, AS RECORDED IN THE PUBLIC RECORDS OF PALM BEACH COUNTY, FLORIDA; SAID LAND SITUATE, LYING AND BEING IN PALM BEACH COUNTY, FLORIDA.

KNOW ALL MEN BY THESE PRESENTS that in consideration of the sum of TEN and NO/100ths DOLLARS and other good and valuable consideration, paid to the above named Assignor, the receipt and sufficiency of which is hereby acknowledged, the said Assignor hereby assigns unto the above-named Assignee, the said Mortgage together with the Note or other evidence of indebtedness (the "Note"), said Note having an original principal sum of $153,000.00 with interest, secured thereby, together with all moneys now owing or that may hereafter become due or owing in respect thereof, and the full benefit of all the powers and of all the covenants and provisos therein contained, and the said Assignor hereby grants and conveys unto the said Assignee, the Assignor's beneficial interest under the Mortgage.

TO HAVE AND TO HOLD the said Mortgage and Note, and also the said property unto the said Assignee forever, subject to the terms contained in said Mortgage and Note.

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.
On August 7th, 2008

By: _____
JOANN REIN, Vice President

WITNESS                              WITNESS

_____                  _____
JAMIE FLORES                         SUSAN LINDHORST

STATE OF FLORIDA • PALM BEACH COUNTY
I hereby certify that this is a true and correct copy
of a PORTION OF Case # 200826027953
Recorded in OR BOOK ___ PAGE ___
as filed in my office. WITNESS my hand and Official Seal

THIS 28 DAY OF ___ 20 12
SHARON R. BOCK
CLERK & COMPTROLLER

By _____
DEPUTY CLERK

CB\DEALS\08\07\2008 12:29:28 PM' ALS01ALS\MXXXXXXXXXXXXXXXX01304" FLPALM/ 0037354560 FLSTATE_MORT_ASSIGN_ASSN "DEALS\"

08-41531

Recording Requested By:
AURORA LOAN SERVICES

When Recorded Return To:

Lawrence Leseberg
AURORA LOAN SERVICES
P.O. Box 1706
Scottsbluff, NE  69363-1706

*FC*

## CORPORATE ASSIGNMENT OF MORTGAGE

Palm Beach, Florida
SELLER'S SERVICING # 0047169354 "HESSEE"

MERS #: 100025440043926935  VRU #: 1-888-679-6377

Date of Assignment: December 18th, 2008
Assignor: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC AS NOMINEE FOR LEHMAN BROTHERS
BANK, FSB, A FEDERAL SAVINGS BANK IT'S SUCCESSORS AND ASSIGNS at 3300 S.W. 34TH AVENUE,
SUITE 101, OCALA, FL 34474
Assignee: AURORA LOAN SERVICES LLC at 2617 COLLEGE PARK, PO BOX 1706, SCOTTSBLUFF, NE 69361
Executed By: KEVIN  L HESSEE, JOINED BY MELANIE L. HESSEE, HIS WIFE.  To: MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC., AS NOMINEE FOR LEHMAN BROTHERS BANK, FSB, A FEDERAL SAVINGS
BANK
Date of Mortgage: 07/19/2007 Recorded: 07/30/2007 in Book/Reel/Liber: 21978 Page/Folio: 1617 as Instrument
No.: 20070362786  In Palm Beach, Florida

Property Address: 706  XANADU PLACE, JUPITER, FL  33477

Legal:  See Exhibit "A" Attached Hereto And By This Reference Made A Part Hereof

KNOW ALL MEN BY THESE PRESENTS that in consideration of the sum of TEN and NO/100ths DOLLARS and
other good and valuable consideration, paid to the above named Assignor, the receipt and sufficiency of which is
hereby acknowledged, the said Assignor hereby assigns unto the above-named Assignee, the said Mortgage
together with the Note or other evidence of indebtedness (the "Note"), said Note having an original principal sum of
$595,200.00 with interest, secured thereby, together with all moneys now owing or that may hereafter become due
or owing in respect thereof, and the full benefit of all the powers and of all the covenants and provisos therein
contained, and the said Assignor hereby grants and conveys unto the said Assignee, the Assignor's beneficial
interest under the Mortgage.

TO HAVE AND TO HOLD the said Mortgage and Note, and also the said property unto the said Assignee forever,
subject to the terms contained in said Mortgage and Note.

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC AS NOMINEE FOR LEHMAN BROTHERS BANK,
FSB, A FEDERAL SAVINGS BANK IT'S SUCCESSORS AND ASSIGNS
On December 18th, 2008

By: _____
REGINA GARCIA, Vice-President

WITNESS

_____
SUSAN LINDHORST

WITNESS

_____
JANIE FLORES

STATE OF FLORIDA - PALM BEACH COUNTY
I hereby certify that this is a true and correct copy
of a PORTION OF _____
_____
as filed in my office. WITNESS my hand and the official Seal
THIS ____ DAY OF _____, 20__
SHARON R. BOCK
CLERK & COMPTROLLER
By _____
DEPUTY CLERK

08-05196

Recording Requested By:
AURORA LOAN SERVICES

When Recorded Return To:

Lawrence Leseberg
AURORA LOAN SERVICES
P.O. Box 1706
Scottsbluff, NE 69363-1706

*fc*

## CORPORATE ASSIGNMENT OF MORTGAGE

Palm Beach, Florida
SELLER'S SERVICING #:0039639432 "GORANSON"

MERS #: 100025440003450050  VRU #: 1-888-679-6377

Date of Assignment: February 11th, 2009
Assignor: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC AS NOMINEE FOR LEHMAN BROTHERS
BANK, FSB, A FEDERAL SAVINGS BANK IT'S SUCCESSORS AND ASSIGNS at 3300 S.W. 34TH AVENUE,
SUITE 101, OCALA, FL 34474
Assignee: AURORA LOAN SERVICES LLC at 2617 COLLEGE PARK, SCOTTSBLUFF, NE 69361
Executed By: KAREN GORANSON , A MARRIED WOMAN, JOINED BY HER HUSBAND, R. ROBERT DUMMICH
To: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR LEHMAN BROTHERS
BANK, FSB, A FEDERAL SAVINGS BANK
Date of Mortgage: 10/27/2006 Recorded: 11/08/2006 in Book/Reel/Liber: 21061 Page/Folio: 1255 as Instrument
No.: 20060628127 in Palm Beach, Florida

Property Address: 232 DIXIE BOULEVARD, DELRAY BEACH, FL 33444

Legal: See Exhibit "A" Attached Hereto And By This Reference Made A Part Hereof

KNOW ALL MEN BY THESE PRESENTS that in consideration of the sum of TEN and NO/100ths DOLLARS and
other good and valuable consideration, paid to the above named Assignor, the receipt and sufficiency of which is
hereby acknowledged, the said Assignor hereby assigns unto the above-named Assignee, the said Mortgage
together with the Note or other evidence of indebtedness (the "Note"), said Note having an original principal sum of
$325,000.00 with interest, secured thereby, together with all moneys now owing or that may hereafter become due
or owing in respect thereof, and the full benefit of all the powers and of all the covenants and provisos therein
contained, and the said Assignor hereby grants and conveys unto the said Assignee, the Assignor's beneficial
interest under the Mortgage.

TO HAVE AND TO HOLD the said Mortgage and Note, and also the said property unto the said Assignee forever,
subject to the terms contained in said Mortgage and Note.

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC AS NOMINEE FOR LEHMAN BROTHERS BANK,
FSB, A FEDERAL SAVINGS BANK IT'S SUCCESSORS AND ASSIGNS
On February 11th, 2009

By: _____
JOANN REIN, Vice-President

WITNESS                                          WITNESS

_____                        _____
SUSAN LINDHORST                                JANIE FLORES

STATE OF FLORIDA - PALM BEACH COUNTY
I hereby certify that this is a true and correct copy
of a PORTION of _____ 82.5

as filed in my office. WITNESS my hand and official Seal

THIS ___ DAY OF _____, 20_12_
SHARON R. BOCK
CLERK & COMPTROLLER

By: _____
DEPUTY CLERK

*SLP*LEAL37*02/11/2009 01:09:59 PM* ALEDUALSIA00000000000000545150* FLPALM* 0039639432 FLSTATE_MORT_ASSGN_ASSM *LLEALS*

*09-07674*

Recording Requested By:
AURORA LOAN SERVICES

When Recorded Return To:

Kathleen Olson
AURORA LOAN SERVICES
P.O. Box 1706
Scottsbluff, NE 69363-1706

Palm Beach, Florida
## CORPORATE ASSIGNMENT OF MORTGAGE
SELLER'S SERVICING #:0038120350 "AMMONS"

MERS #: 100025440002596382  VRU #: 1-888-679-6377

Date of Assignment: March 19th, 2009
Assignor: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC AS NOMINEE FOR LEHMAN BROTHERS BANK, FSB, A FEDERAL SAVINGS BANK IT'S SUCCESSORS AND ASSIGNS at 3300 S.W. 34TH AVENUE, SUITE 101, OCALA, FL 34474
Assignee: AURORA LOAN SERVICES LLC at 2617 COLLEGE PARK, SCOTTSBLUFF, NE 69361
Executed By: CHRISTOPHER AMMONS AND SAMANTHA AMMONS, HUSBAND AND WIFE  To: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR LEHMAN BROTHERS BANK, FSB, A FEDERAL SAVINGS BANK
Date of Mortgage: 08/02/2005 Recorded: 08/15/2005 in Book/Reel/Liber: 19079 Page/Folio: 0695 as Instrument No.: 20050510783 ReRecorded 12/21/2005 in Book/Reel/Liber: 19635 Page/Folio: 0003 as Instrument No.: 20050776920  in Palm Beach, Florida

Property Address: 3227  32ND WAY, WEST PALM BEACH, FL  33406

Legal: TOWNHOME LOT 158-B, VILLAGE OF SANDALWOOD LAKES PLAT NO. 2, ACCORDING TO THE PLAT RECORDED IN PLAT BOOK 45, PAGE 89, AS RECRDED IN PUBLIC RECORDS OF PALM BEACH COUNTY, FLORIDA; SAID LAND SITUATE, LYING AND BEING IN PALM BEACH COUNTY, FLORIDA.

KNOW ALL MEN BY THESE PRESENTS that in consideration of the sum of TEN and NO/100ths DOLLARS and other good and valuable consideration, paid to the above named Assignor, the receipt and sufficiency of which is hereby acknowledged, the said Assignor hereby assigns unto the above-named Assignee, the said Mortgage together with the Note or other evidence of indebtedness (the "Note"), said Note having an original principal sum of $164,000.00 with interest, secured thereby, together with all moneys now owing or that may hereafter become due or owing in respect thereof, and the full benefit of all the powers and of all the covenants and provisos therein contained, and the said Assignor hereby grants and conveys unto the said Assignee, the Assignor's beneficial interest under the Mortgage.

TO HAVE AND TO HOLD the said Mortgage and Note, and also the said property unto the said Assignee forever, subject to the terms contained in said Mortgage and Note.

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC AS NOMINEE FOR LEHMAN BROTHERS BANK, FSB, A FEDERAL SAVINGS BANK IT'S SUCCESSORS AND ASSIGNS
On March 19th, 2009

By _____
JOANN REIN, Vice-President

WITNESS                                                    WITNESS

_____                         _____
DEBORAH BACKUS                                    JANIE FLORES

STATE OF FLORIDA - PALM BEACH COUNTY
I hereby certify that this is a true and correct copy
or a PORTION OF _____

as filed in my office. WITNESS my Hand and Official Seal

THIS 26 DAY OF _____, 20 12
SHARON R. BOCK
CLERK & COMPTROLLER

By _____
DEPUTY CLERK

09-18403

Recording Requested By:
AURORA LOAN SERVICES

When Recorded Return To:

Rhonda Gall
AURORA LOAN SERVICES
P.O. Box 1706
Scottsbluff, NE  69363-1706

---

*RC*

Palm Beach, Florida

## CORPORATE ASSIGNMENT OF MORTGAGE

SELLER'S SERVICING #:0040563561 "CASTILLO"
OLD SERVICING #: 3190672024

MERS #: 100039231906720242 VRU #: 1-888-679-6377

Date of Assignment: December 16th, 2008
Assignor: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. at 3300 S.W. 34TH AVENUE, SUITE 101, OCALA, FL 34474
Assignee: AURORA LOAN SERVICES LLC at 2617 COLLEGE PARK, PO BOX 1706, SCOTTSBLUFF, NE 69361
Executed By: PERCY CASTILLO, A MARRIED PERSON To: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR FIRST MAGNUS FINANCIAL CORPORATION, AN ARIZONA CORPORATION
Date of Mortgage: 04/27/2007 Recorded: 05/14/2007 in Book/Reel/Liber: 21728 Page/Folio: 0999 as Instrument
No.: 20070233313 In Palm Beach, Florida

Property Address: 9193 OLMSTEAD DRIVE, LAKE WORTH, FL 33467

Legal: LOT 21, REGENCY LAKE ESTATES, ACCORDING TO THE PLAT THEREOF, RECORDED IN PLAT BOOK 75, AT PAGE 100, OF THE PUBLIC RECORDS OF PALM BEACH COUNTY, FLORIDA.

KNOW ALL MEN BY THESE PRESENTS that in consideration of the sum of TEN and NO/100ths DOLLARS and other good and valuable consideration, paid to the above named Assignor, the receipt and sufficiency of which is hereby acknowledged, the said Assignor hereby assigns unto the above-named Assignee, the said Mortgage together with the Note or other evidence of indebtedness (the "Note"), said Note having an original principal sum of $513,000.00 with interest, secured thereby, together with all moneys now owing or that may hereafter become due or owing in respect thereof, and the full benefit of all the powers and of all the covenants and provisos therein contained, and the said Assignor hereby grants and conveys unto the said Assignee, the Assignor's beneficial interest under the Mortgage.

TO HAVE AND TO HOLD the said Mortgage and Note, and also the said property unto the said Assignee forever, subject to the terms contained in said Mortgage and Note.

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.
On December 16th, 2008

By:
JOANN REIN, Vice-President

WITNESS

JANIE FLORES

WITNESS

DEBORAH BACKUS

STATE OF AURORA - PALM BEACH COUNTY
I hereby certify that this is a true and correct copy
of a PORTION of
as filed in my office. WITNESS my hand and Official Seal
THIS 26 DAY OF
SHARON R. BOCK
CLERK & COMPTROLLER
By
DEPUTY CLERK

*0040*SRGALSF17/16/2008 02:32:32 PM* ALSD1AL3UA0000000000000000532722* FLPALM* 0040563561 FLSTATE_MORT_ASSIGN_ASSN **RGALS*

*08 65204*

Recording Requested By:
AURORA LOAN SERVICES

When Recorded Return To:

Rhonda Gail
AURORA LOAN SERVICES
P.O. Box 1706
Scottsbluff, NE 69363-1706

## CORPORATE ASSIGNMENT OF MORTGAGE

Palm Beach, Florida
SELLER'S SERVICING #:0045877194 "WILLIAMS"

MERS #: 100025440003733018  VRU #: 1-888-679-6377

Date of Assignment: March 12th, 2009
Assignor: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC AS NOMINEE FOR LEHMAN BROTHERS BANK, FSB, A FEDERAL SAVINGS BANK IT'S SUCCESSORS AND ASSIGNS at 3300 S.W. 34TH AVENUE, SUITE 101, OCALA, FL 34474
Assignee: AURORA LOAN SERVICES LLC at 2617 COLLEGE PARK, SCOTTSBLUFF, NE 69361
Executed By: ANDREW B WILLIAMS, A SINGLE MAN  To: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC AS NOMINEE FOR LEHMAN BROTHERS BANK, FSB, A FEDERAL SAVINGS BANK
Date of Mortgage: 03/28/2007 Recorded: 04/13/2007 in Book/Reel/Liber: 21616 Page/Folio: 0760 as Instrument No.: 20070177492 In Palm Beach, Florida

Property Address: 8483  ROCK CREEK DRIVE, LAKE WORTH, FL 33467

Legal: LOT 10, FAIRFIELDS LACUNA PLAT 6, ACCORDING TO THE PLAT THEREOF, AS RECORDED IN PLAT BOOK 58, PAGE 148, OF THE PUBLIC RECORDS OF PALM BEACH COUNTY, FLORIDA.

   KNOW ALL MEN BY THESE PRESENTS that in consideration of the sum of TEN and NO/100ths DOLLARS and other good and valuable consideration, paid to the above named Assignor, the receipt and sufficiency of which is hereby acknowledged, the said Assignor hereby assigns unto the above-named Assignee, the said Note and Mortgage together with the Note or other evidence of indebtedness (the "Note"), said Note having an original principal sum of $372,000.00 with interest, secured thereby, together with all moneys now owing or that may hereafter become due or owing in respect thereof, and the full benefit of all the powers and of all the covenants and provisos therein contained, and the said Assignor hereby grants and conveys unto the said Assignee, the Assignor's beneficial interest under the Mortgage.

   TO HAVE AND TO HOLD the said Mortgage and Note, and also the said property unto the said Assignee forever, subject to the terms contained in said Mortgage and Note.

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC AS NOMINEE FOR LEHMAN BROTHERS BANK, FSB, A FEDERAL SAVINGS BANK IT'S SUCCESSORS AND ASSIGNS
On March 12th, 2009

By _____
JOANN REIN, Vice-President

WITNESS

_____
SUSAN LINDHORST

WITNESS

_____
JANIE FLORES

STATE OF FLORIDA * PALM BEACH COUNTY
I hereby certify that this is a true and correct copy
of a PORTION of _____
_____
as filed in my office. WITNESS my hand and official Seal.
THIS ___ DAY OF _____ 20__
SHARON R. BOCK
CLERK & COMPTROLLER
By _____
DEPUTY CLERK

09-17078