# IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF FLORIDA WEST PALM BEACH DIVISION

## CASE NO. 12-80364-CIV-MARRA/BRANNON

| | |
|---|---|
| JOHN KORMAN<br>Private Attorney General,<br>                     Petitioner,<br>      v.<br><br>**AURORA LOAN SERVICES LLC;**<br>**OFFICE OF CEO, AND PRES** OF AURORA;<br>**AURORA BANK FSB;**<br>**MERSCORP HOLDINGS, INC;**<br>**MORTGAGE ELECTRONIC**<br>**REGISTRATION SYSTEMS INC;**<br>**LEHMAN XS TRUST 2006-11;**<br>**LASALLE BANK N.A.** as **TRUSTEE;**<br>**U.S. BANCORP** as successor **TRUSTEE;**<br>**ASSOCIATES LAND TITLE INC;**<br>**THEODORE SCHULTZ,** Individual;<br>**LAURA MCCANN,** Individual;<br>**CYNTHIA WALLACE,** Individual;<br>**JOANN REIN,** Individual;<br>**LAW OFFICE OF DAVID J. STERN P.A.;**<br>**DAVID JAMES STERN, Esquire;**<br>**KAROL S. PIERCE, Esquire;**<br>**CASSANDRA RACINE-RIGAUD, Esquire;**<br>**MISTY BARNES, Esquire;**<br>**DARLINE DIETZ,** Notary;<br>**JOHN DOE 1 – 100;**<br>**JANE DOE 1 – 100;**<br><br>                     Defendants. | FILED by ___ D.C.<br>AUG 08 2012<br>STEVEN M. LARIMORE<br>CLERK U.S. DIST. CT.<br>S.D. OF FLA. - W.P.B.<br><br>**CIVIL RIGHTS 1983 VIOLATION**<br>**FORGERY**<br>**USURY**<br>**CIVIL CONSPIRACY**<br>**STELLIONATION**<br>**INTRINSIC FRAUD**<br>**ATTEMPTED LARCENY**<br>**FRAUDULENT CONVERSION**<br>**CONSTRUCTIVE FRAUD**<br>**VIOLATION OF FDCPA**<br>**VIOLATION OF TCPA**<br>**VIOLATION OF FCRA**<br>**VIOLATION OF FDUTPA**<br>**MAIL FRAUD**<br>**WIRE FRAUD**<br>UTTERING<br>**R.I.C.O.**<br>**FRAUDULENT INDUCEMENT**<br>**FALSE CLAIM**<br>**MORTGAGE FRAUD**<br>**PROFESSIONAL NEGIGENCE**<br><br>**DEMAND FOR JURY TRIAL**<br>**Fed.R.Civ.P. 38(b)** |

## OBJECTION TO DEFENDANTS' AURORA LOAN SERVICES LLC, AURORA BANK FSB, MERSCORP HOLDINGS INC, MORTGAGE ELECTRONIC REGISTRATION SYATEMS INC, LASALLE BANK N.N., AS TRUSTEE, U.S. BANCORP AS SUCCESSOR TRUSTEE AND LEHMAN XS TRUST MORTGAGE PASS-THROUGH CERTIFICATES SERIES 2006-11'S MOTION TO DISMISS

Petitioner Objects to DEFENDANTS' AURORA LOAN SERVICES LLC, AURORA BANK FSB, MERSCORP HOLDINGS INC, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC, LASALLE BANK N.A., AS TRUSTEE, U.S. BANCORP AS SUCCESSOR TRUSTEE AND LEHMAN XS TRUST MORTGAGE PASS-THROUGH CERTIFICATES SERIES 2006-11's MOTION TO DISMISS, and as grounds state;

1.      In determining whether to grant a Rule 12(b)(6) motion, or a 8, 9(b) or 12(e) motion, the Court shall not dismiss a complaint if it includes ***"enough facts to state a claim for relief that is plausible on its face."*** __Bell Atlantic Corp. v. Twombly,__ 550 U.S. 544, 570, 127 S.Ct. 1955, (2007). The Court ***"must view the complaint in the light most favorable to the plaintiff and accept all of the plaintiffs well- pleaded facts as true."*** __American United Life Ins. Co. v. Martinez,__ 480 F.3d 1043, 1057 (11th Cir. 2007).

2.      The Supreme Court has explained that a complaint need only "***give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.***" __Swierkiewicz v. Sorema N.A.,__ 534 U.S. *506*, 512 (2002); __accord Atchison, Topeka & Santa Fe Ry. v. Buell,__ 480 U.S. *557*, 568 n.15 (1987). Federal Rules embody "notice pleading" and require only a concise statement of the claim, rather than evidentiary facts. The simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and to dispose of unmeritorious claims. See __Swierkiewicz,__ 534 U.S. at 512. Indeed, courts have found that if the information sought by the motion is obtainable through discovery, the motion should be denied. See, e.g., __Towers Tenant Ass'n v. Towers Ltd. P'ship,__ 563 F. Supp. 566, 569 (D.D.C. 1983).

3.      Defendants' Motion to Dismiss should be viewed in the proper light, which is, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC, (hereinafter "MERS") is a private registry, not unlike the public registry found within the County of Palm Beach Florida. MERS, or its authorized

agents, such as a Vice President or a Certifying Officer(s) of MERS lack the legal capacity to assign the Mortgage unilaterally, without the written authorization from the Lender pursuant to the Statute of Frauds; see **Agard, 8-10-77338-reg, U.S. Bankruptcy Court, Eastern District of New York Central Islip (2-10-2011)**. See also Petitioner's Exhibit hereto attached and incorporated herein by reference, titled MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC, vs NEBRASKA DEPARTMENT OF BANKING AND FINANCE; BRIEF OF APPELLANT (MERS). See also Petitioner's (~~DEFENDANT'S~~) REQUEST FOR JUDICIAL NOTICE OF ADJUDICATIVE FACT (DE 57) filed July 31st 2012.

4.      In the Appellant's (MERS) Brief counsel argues, in part, *"MERS, which only holds the beneficial interest in the Mortgage itself, in a nominee capacity for the owner and holder of the promissory note secured by such mortgage." "3. The District Court erred by not finding that MERS' ownership of a legal interest in the mortgage does not equate to MERS' ownership of the promissory note." "MERS does not take applications for, Underwrite or negotiate mortgage loans. MERS does not make or originate mortgage loans to consumers. MERS does not extend any credit to consumers. MERS does not service mortgage loans. MERS does not sell mortgage loans. Most importantly, MERS is not an investor who acquires mortgage loans on the secondary market." "Therefore, the Department and MERS are in agreement that the only statutory activity at issue, and the only issue for this Court to decide, is whether MERS acquires mortgage loans."* (Emphasis in the original.) Counsel for MERS continues to argue, in part; *"In its Order, the District Court failed to recognize that MERS, in its agreement with its members, cannot exercise, and is contractually prohibited from exercising, any of the rights or interests in the mortgages or other security documents. MERS is named as the "nominee" owner unless and until it is authorized to do so by the real and beneficial owners of such security documents." "MERS only acts when directed to by its members and for the sole benefit of the owners and holders of the promissory notes secured by*

*the mortgage instruments naming MERS as nominee owner." "Consequently, MERS is named as the mortgagee in a nominee capacity for the actual owner and holder of the promissory note secured by the mortgagee as described above." "MERS is not the owner of the promissory note secured by the mortgage and has no rights to the payments made by the debtor on such promissory note."* The Opinion handed down by the Supreme Court of Nebraska is found in Petitioner's (~~DEFENDANT'S~~) REQUEST FOR JUDICIAL NOTICE OF ADJUDICATIVE FACT (DE 57) filed July 31st 2012, **certified copy**.

5.      The first MERS assignment fabricated from whole cloth was used in CASE NO. 07-80998-CIV-RYSKAMP / VITUNAC, IN THE UNITES STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF FLORIDA; wherein, the Mortgage together with the NOTE is alleged to be assigned.

6.      AURORA LOAN SERVICES LLC and its employees LAURA MCCANN, and CYNTHIA WALLACE, a/k/a CINDY WALLACE testified *"Aurora is the assignee of the mortgage, pursuant to the Corporate Assignment of Mortgage attached hereto."* intentionally omitting any mention of the NOTE, after all the Mortgage follows the NOTE, assignment of the Mortgage alone without the NOTE is a nullity; see INTERROGATORY, Exhibit "A" attached to the Complaint. LAURA MCCANN, and CYNTHIA WALLACE further testified AURORA LOAN SERVICES LLC is the NOTE-Holder. When Petitioner requested to see the genuine NOTE and AURORA LOAN SERVICES LLC refused, Petitioner with-held payment with-out dishonor; see Uniform Commercial Code (hereinafter "U.C.C.") 3-501(2).

7.      Defendant AURORA LOAN SERVICES LLC files a Foreclosure Action (Case NO. 50-2009-CA-017057) against Petitioner on the 13th day of May 2009, claiming to be the Owner and Holder of the debt, only the Mortgage-NOTE is missing; AURORA LOAN SERVICES LLC admits it does not have possession, nor can AURORA LOAN SERVICES LLC draw a nexus between it and the original Lender showing it is the owner and holder from within the four corners of the Complaint.

8.      It is not until the un-Verified Amended Complaint is filed one year later does an Assignment appear, propounding the transfer of the "**Mortgage together with the NOTE**" set over to AURORA LOAN SERVICES LLC, from MERS; a fabricated document, created from whole-cloth, *ergo* created a counterfeit public record, and placed a cloud on Petitioner's title, and colorably provided Standing to Defendant AURORA LOAN SERVICES LLC.

9.      Although the un-Verified Amended Complaint added an un-timely assignment, and removed COUNT II, COUNT III remained; *"... action to enforce a lost, destroyed or stolen promissory note and Mortgage..."* See Defendant's Exhibit "3".

10.     These two aforementioned assignments, assigning the Mortgage together with the NOTE occurred contemporaneously while assignor is under Bankruptcy protection, is a Federal Crime under Title 11, done without notice to the Judicial Trustee administering the estate; furthermore,

11.     Assignor LEHMAN BROTHERS BANK FSB does not disclose Petitioner's Mortgage-NOTE as one of its Holdings amidst its "re-organization" under the Bankruptcy proceeding; as,

12.     LEHMAN BROTHERS BANK FSB set over all right, title and interest to LEHMAN BROTHERS HOLDINGS INC, which constructively sold all right, title and interest to STRUCTURED ASSET SECURITIES CORPORATION, which constructively sold its right, title and interest thereto LEHMAN XS TRUST MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-11. These aforementioned facts ¶ 9, ¶ 10, ¶ 11, and ¶ 12 are not in dispute;

13.     MERS Assignment is a Fraudulent Conveyance or Fraudulent Transfer because the Assignment of the Mortgage together with the NOTE is an illusionary assignment, as the Mortgage together with the NOTE does not exist within the debtor's (LEHMAN BROTHERS BANK FSB) estate.

14.     AURORA LOAN SERVICES LLC is telling the Court its Standing is predicated on a MERS assignment of the NOTE set over from LEHMAN BROTHERS BANK FSB, while in Bankruptcy, two years after LEHMAN BROTHERS BANK FSB sold all right, title and interest.

15.     The aforementioned assignments are fabricated for the sole purpose of litigation, to illegally deprive Petitioner and others similarly situated of their home, and it all comes from the top, starting with the President and the Chief Financial Officer (hereinafter "CFO"). AURORA LOAN SERVICES LLC, it's President and CFO, the people who signed the assignments, the lawyers who prosecute the case, all act without the Lenders authorization, an *ultra virus* act, done knowingly, as the aforementioned case illustrates in MERS vs NEBRASKA DEPARTMENT OF BANKING which concluded in 2005. This shows MERS lack of over-sight and lack of corporate governance years after the Supreme Court of Nebraska ruled in favor of MERS because MERS testified it did not do what these assignments purport to do.

16.     **Every MERS assignment** (in a Judicial State) assigning the Mortgage without the Lender's written authorization is constructively and administratively ineffective. A MERS assignment assigning a NOTE is an ineffective assignment, *ab initio*.

17.     Once a party is made aware of an *ultra virus* act and that party continues acting improperly, the improper act becomes an intentional act, done wantonly, with malice of forethought.

18.     Korman's Motion to DISMISS the Foreclosure Action in the State Court was **GRANTED** [1] on March 1st 2010 in respect to Plaintiff's (AURORA LOAN SERVICES LLC) violation of the verification requirement, see Fla.R.Civ.P. Rule 1.110(b), but AURORA LOAN SERVICES LLC was Order to *"… serve a properly verified second amended complaint no later than April 3, 2012."*

---

[1] The Honorable Judge John J. Hoy altered Plaintiff's prepared Order in favor of the Defendant (Korman), the prepared Order is Titled **ORDER DENYING DEFENDANT'S MOTION TO DISMISS**, looks like it is GRANTED in favor of the Plaintiff, but reading the Order we find…

19.     Effective as of the 30th day of March 2012 is a **NOTIFICATION OF ASSIGNMENT, SALE OR TRANSFER OF YOUR MORTGAGE LOAN**, set over to **SRMOF II 2011-1 TRUST**, it appears AURORA LOAN SERVICES LLC has abandoned its Claim; Petitioner is informed the Mortgage-NOTE has been transferred to this new entity, presumptively acquired from AURORA.

20.     Effective as of the first day of May 2012 Petitioner is informed by SELENE FINANCE, in part, *"Welcome to Selene Finance LP ("Selene"). The servicing of your mortgage loan is transferred from Aurora Bank to Selene"* (AURORA BANK FSB and AURORA LOAN SERVICES LLC merged July 21st 2011, (hereinafter "AURORA"))

21.     On the 22nd day of June 2012 AURORA LOAN SERVICES LLC (which no longer exists) filed a MOTION FOR EXTENSION OF TIME TO FILE VERIFIED AMENDED COMPLAINT, which was GRANTED on the 16th day of July 2012, AURORA LOAN SERVICES LLC was granted twenty (20) days in which to file a verified second amended complaint.

22.     The GLADSTONE LAW GROUP P.A. filed the MOTION FOR EXTENSION OF TIME, representing to represent AURORA LOAN SERVICES LLC, Danielle D. Hollander, an associate Esquire appeared, argued the Motion informing the court GLADSTONE LAW GROUP P.A. does not have the assignment yet (translation; so we are using AURORA's name (illegally, without a retainer agreement) until we can make it legal using the Assignee's name);

23.     The Honorable Senior Judge Howard H. Harrison reminded Ms. Hollander she needed to file a substitution of Plaintiff, she agreed.

---

[1] "THIS MATTER came on for consideration upon Defendant's Motion to Dismiss…" "The Motion is hereby granted (in favor of the Defendant) on the grounds of verification only. Plaintiff shall serve a properly verified second amended complaint no later than April 3, 2012. Denied on other grounds" (other grounds being the issue of standing, fabricated documents etc.) This Order **GRANTED the Defendant's Motion to Dismiss**.
(Reader is to disregard the title as it has no force or effect in law, only the body of the Order is law of this case.)

24.         Sandra Weisman, an associate Esquire is handling the case, indorsing the paperwork for

GLADSTONE LAW GROUP P.A.

25.         The GLADSTONE LAW GROUP P.A. intentionally (miss) informed the Court it

represents AURORA LOAN SERVICES LLC, when in fact it represents Selene Finance, the servicer of

**SRMOF II 2001-1 TRUST**, as AURORA LOAN SERVICES LLC left the arena on the 30th day of

March, *supra*, another Fraud upon the Court in development; furthermore, this Fraud upon the Court is

done with the full knowledge of GLADSTONE LAW GROUP P.A. *et al.*, that it does NOT represent

AURORA. It appears the GLADSTONE LAW GROUP P.A. is trying to save the $2,000.00 re-filing

fee.

26.         The GLADSTONE LAW GROUP P.A., the law office of BROAD AND CASSEL,

ALBERTELLI LAW, and LAW OFFICES OF DAVID J. STERN P.A., all received a Request to

Validate the alleged debt, Return-Receipt-Requested (hereinafter "RRR"), within the 30 days of their

first communication with Petitioner, but only LAW OFFICES OF DAVID J. STERN P.A., and The

GLADSTONE LAW GROUP P.A., continued collection efforts without Validating the debt, in violation

of the FDCPA. NOTICE TO PRINCIPAL IS NOTICE TO AGENT, (ASSOCIATE).

27.         Case NO. 50-2009-CA-017057-XXXX-MB, IN THE CIRCUIT COURT OF THE

FIFTEENTH JUDICIAL CIRCUIT, IN AND FOR PALM BEACH COUNTY, FLORIDA is dead;

however the official corner's report has not been released yet.

28.         The *"Alice in Wonderland World According to Korman"* is affirmed by Exhibit "Q"

attached to the Complaint, authored by Richard Kessler, titled EXPLANATION OF

SECURITIZATION. Richard Kessler is a graduate of Yale Law School and a Washington, DC

Attorney.

29.   **LEX ANASTASIANA**:
      lex Anastasiana (leks an-<<schwa>>-stay-shee-ay-n<<schwa>>).
      2. A law providing that a person purchasing a debt from the original creditor for less than
      its nominal value was not entitled to recover from the debtor more than the amount paid
      with lawful interest. Blacks 8th pg 2660.

30.   The question is; who has Petitioner's loan receivable on their books? It is the Trust Certificate

Holder, held in the street-name of CEDE & Co, nominee of the Depository Trust Company; documented

within the Pooling and Servicing Agreement; see also Exhibit "Q" attached to the Complaint.

31.   AURORA LOAN SERVICES LLC is a debt collector, admittedly. Every letter or piece

of literature ever mailed to Petitioner from AURORA reads, in part; *"Aurora Loan Services is a*

*debt collector. Aurora Loan Services is attempting to collect a debt and any information*

*obtained will be used for that purpose."*

32.   AURORA LOAN SERVICES LLC collecting the debt for LEHMAN BROTHERS BANK

FSB, the original Lender, AURORA LOAN SERVICES LLC is not considered to be a debt collector,

however once the debt was set over to LEHMAN BROTHERS HOLDINGS INC, a stranger to the

original negotiation, AURORA LOAN SERVICES LLC took on the cloak of a debt collector, liable

under the FDCPA.

33.   AURORA LOAN SERVICES LLC who has alleged it acquired the debt, should bring forth its

books and records and show this Court what it paid for Petitioner's alleged debt, and under the legal

theory of *lex Anastasiana* Petitioner is only liable for that amount which was actually paid, plus

lawful interest, otherwise the amount paid is Ten ($10.00), *prima fascia*. Charging Petitioner Fifty-

Thousand percent (50,000 %) interest on a Ten ($10.00) debt is more than double the criminal usury

rate; see §687.071(7), Fla. Stat. (2010).

34.   Under the TELEPHONE CONSUMER PROTECTION ACT (hereinafter "TCPA"), a call is

exempt from the TCPA if the call; **Is made to a consumer with whom the calling company has an**

**established business relationship. This relationship cannot be established merely by having made**

**a prior solicitation call. The customer ends this exemption when he or her requests that no more calls be made.** Petitioner and AURORA do not have an established business relationship. AURORA does not have an agreement with Petitioner, or any other Borrower in a similar situation. AURORA's agreement is with some stranger to the original negotiation, as such, when AURORA received a "do not call" letter, but continued to call Petitioner, violated the TCPA.

35.     Every automated collection call from AURORA is a separate and distinct violation.

36.     AURORA violated the FAIR CREDIT REPORTING ACT (hereinafter "FCRA") by reporting "unverified" information because if AURORA verified the alleged debt it would be required to get this verification from the Lender, which is not LEHMAN BROTHERS BANK FSB. Verification must come from the Lender and same be forwarded to the Borrower. All third-Party-Debt-Collectors must adhere to the FCRA. Petitioner mailed a number of Debt Validation letters to AURORA over a four year span, which was never complied with, yet the unverified debt (which is grossly over-stated by AURORA) remains on Petitioner's credit report, a violation of the FCRA, causing harm to Petitioner. All Debt Validation letters were mailed to AURORA "RRR." Penalty for a FCRA violation is One-Thousand ($1,000.00) per violation, which reoccurs monthly, per reporting agency, comes to a sum total of (approximately) One-Hundred-and-Ninety-Two-Thousand ($192,000.00), and counting, only now it is Selene Finance LP which is violating the FCRA, presently a non-party.

37.     The R.I.C.O. claim against AURORA or MERS must stand as a matter of law; Petitioner stands before this Court in the capacity of a Private Attorney General, not alone but with others similarly situated. Petitioner maintains, MERS maintains and the Supreme Court of Nebraska maintains MERS does not acquire Mortgage-NOTEs. However checking the Palm Beach County Court's Record find, on the first computer screen, the Certified assignments which comprise Petitioner's REQUEST FOR JUDICIAL NOTICE OF ADJUDICATIVE FACT, dated 8th day of

August 2012, wherein is found KORMAN's CORPORATE ASSIGNMENT OF MORTGAGE, and includes an additional Eight (8) such assignments. Each share a common thread; each corporate assignment is prepared by AURORA; within each corporate assignment the Assignor is LEHMAN BROTHERS BANK FSB while under Bankruptcy protection; each corporate assignment is found within an active 2009 civil foreclosure Action; each corporate assignment is indorsed by an AURORA employee; each corporate assignment purports to assign the *"...Mortgage together with the Note..."* each corporate assignment displays the MERS Seal, indicating an agency relationship between AURORA and MERS; and not one of the assignments which purports to assign the Mortgage together with the Note is accompanied by a Power-of-Attorney or similar authorization from the Lender; *ergo* each assignment is ineffective; should a foreclosure result from these colorable assignments is an injury sustained, which is preventable.

38.    This Court is in a unique position to prevent a crime, not just adjudicate an injury after the fact.

39.    Compilation of the Assignments makes nine (9) predicate acts of Fraud, all done knowingly within a one year span of time.

40.    Attorneys are learned people in the law, know MERS can not assign a beneficial interest in the NOTE (since 1995), but before this Court we have nine (9) such examples (there are hundreds) from the year 2009, (hundreds more in 2010 etc) after LEHMAN BROTHERS BANK FSB file for Bankruptcy, and four (4) years after the Opinion handed down in the Supreme Court of Nebraska.

41.    Petitioner is acting in the capacity as a lawful Private Attorney General, to enforce a legal right which will benefit the community as a whole; see **Judiciary Act of 1789**; see **Civil Rights Act of 1866**, 14 Stat. 27, (sometimes referred to as The Private Attorney General Act) 39th Congress, Sess 1, Ch 31 (1866), CHAP. XXXL,  (Formally titled): **An Act to protect all Persons in the United States in their Civil Rights, and furnish the Means of their Vindication**, April 9, 1866; Public Law 104-317, Oct 19, 1996, 110 Stat 3853; 93 stat 1284; Public Law 96-170, 96th Congress, Dec 9th 1979; and see also

**Administrative Procedure Act of 1946** (hereinafter "APA"), under S.7, 60 stat 237 and under United States Code, Title 5, **GOVERNMENT ORGANIZATION AND EMPLOYEES**. Pursuant to the APA of 1946, 60 stat 237, under S. 7, per Congressional decision, a private Citizen, non-lawyer / non-attorney has the right to act as counsel on behalf of a private Citizen in Court without having a law degree. A Citizen, who occupies the office of Private Attorney General, is authorized to bring a civil charge as well as a criminal Complaint.

42.    All Defendants are violating Petitioner's Civil Rights and the Civil Rights of others similarly situated by un-lawfully and illegally conspiring jointly and severally, to deprive Petitioner of possession of his primary domicile, and the others which are similarly situated, see **REQUEST FOR JUDICIAL NOTICE OF ADJUDICATIVE FACT, dated 8th day of August 2012; see also MERS vs NEBRASKA DEPARTMENT OF BANKING,** it is black on white paper. These Corporations are an on-going criminal enterprise which is shifting a great deal of wealth to a select few pulling the strings.   .

43.    These Corporate Assignments, *supra*, are not innocent mistakes; they are the norm, intentional acts, *modus operandi*, and each assignment is a known illegal act done with *dolus*.

44.    Petitioner is informed and believe, allege thereon that herein each Defendant is an Agent, Servant, representative, or/and employee of their co-Defendants, and in doing the things herein alleged is acting in the capacity of authority as Agent, Servant, representative, or/and employee, with the permission and consent of their co-Defendants.

45.    Petitioner is informed and believes, allege thereon that here each Defendant assisted, aided and abetted, adopted, ratified, approved, or condoned the actions of each other Defendant, and each Defendant, Corporate or otherwise, is acting as the alter ego of the other in the acts alleged herein; for example;

46.     LASALLE BANK N.A., AS TRUSTEE, U.S. BANCORP AS SUCCESSOR TRUSTEE for

LEHMAN XS TRUST MORTGAGE PASS-THROUGH CERTIFICATES SERIES 2006-11, aided

and abetted all the actors by doing nothing, but knows everything, and profited from keeping quiet.

Trustee and successor Trustee know they are missing most of the Closing-Documents, as they were

never delivered. Trustee is collecting on the insurance policies and default credit swaps and allowing

the Servicer to foreclose, *albeit* they know a crime is being committed and they say nothing. When a

person becomes aware of a crime and does nothing either to prevent the crime and or report the crime

becomes complicit in that crime. Whether by contract, or a nod-and-a-wink, failure to report a crime,

the witness to the crime has entered into a civil conspiracy with the party of the first part.

47.     A Creditor is entitled to be paid, once. Once the Creditor has been paid the debt is discharged.

> Uniform Commercial Code 3-602(a), states, in relevant part;
>
> *(b) … an instrument is paid to the extent payment is made*
> *(i) by or on behalf of a party obliged to pay the instrument, and*
> *(ii) to a person entitled to enforce the instrument. To the extent of the*
> *payment, the obligation of the party obliged to pay the instrument is*
> *discharged even though payment is made with knowledge of a claim to the*
> *instrument under Section 3-306 by another person.*

48.     AURORA, the Servicer, filed a Complaint against Petitioner using fabricated assignments,

using learned Attorneys who know the documents are fabricated, or should know, miss-informs the

Court in order to deprive a home-owner of their life savings, in some cases. What most people know is

they borrowed a sum of money, bought a home and for whatever reason failed to make the payments,

therefore they lose the home through foreclosure. What most people do not know is the party

foreclosing on the home has nothing to do with the debt owed, and is getting a free house, with the

home-owner's equity. A free house can be sold for a fraction of its assessed value as it is all profit to

the pretend Lender / Plaintiff (minus the legal expense).

49.     Defendants herein all conspired jointly, or severally to deprive home-owner's of possession by suing them and picking off the low hanging fruit. This activity, using the Courts as a profit center is a denial of a due process right, whereby through trickery, legal-ease and Superior-Knowledge home-owners are deprived of a due process right, and their lawful right to possess property, both rights protected under the Constitution.

50.     Petitioner strongly objects to Defendant suggesting this case be Dismissed on a Fed.R.Civ.P. Rule 8 violation. Petitioner believes the Complaint is simple, concise, clear and direct. Petitioner believes anyone reading this Complaint understands, as does the Defendant, the Assignment is fraudulent, that point can not be emphasized or repeated enough until someone actually understands it.

51.     MERS and AURORA are involved with creating improper mortgage assignments. See MERS vs NEBRASKA DEPARTMENT OF BANKING, *supra*. Petitioner recitation of how a NOTE is securitized was very short, simple, concise, clear and direct considering the Pooling and Servicing Agreement, Trust Agreement, Prospectus, Master Agreement and others (hereinafter "Controlling-Documents"), amounts to about Fifteen-Hundred (1,500) pages reduced to five (5) pages found in the Complaint. However when a Complaint carries an accusation of Fraud it must be pled with particularity, names, dates, places, times, events etc., which takes some space. This law-suit has more than one or two accusations of Fraud, and varies types of Fraud by multiple parties, occurring at varies times over a five year period. If Petitioner does not mention an injury waves the right to do so later, so all injuries must be pled, and this case has Thirty-Five (35) legitimate counts of alleged wrong doing, and a proper foundation must be laid within the four corners of the Complaint, for each instance.

52.     The Declaratory Judgment issue needs to be viewed in proper context. On the first day of May the State Foreclosure Action was conditionally DISMISSED, however AURORA was given until the 3rd day of April 2012 to file an Amended Complaint. When that time passed Petitioner relied on an Order of the Court (presumptively) Dismissing the case on the 4th day of April Petitioner filed his

Complaint on the 5th day of April to avoid this "piecemeal" perception. Reading the Order signed by the Honorable Judge John J. Hoy, ORDERED AND ADJUDGED in part; "… ***shall serve a properly verified second amended complaint no later than*** …"  (emphasis added)

53.    Petitioner is trying very hard to play by the rules and those rules do allow a full and complete expression of ones injury, the fraudulent behavior of a Corporation and people running it, no matter the size of the Complaint, so long as it is simple, concise, clear and direct.

54.    Attorneys which are Third-Party-Debt-Collectors, as are all the attorneys herein mentioned, can be held liable under the FDCPA, 15 U.S.C.S. § 1692 *et seq*, see **Heintz v. Jenkins, 514 U.S. 291; 115 S. Ct. 1489, 131 L. Ed. 2d 395 (1995)**;

55.    A Mortgage-NOTE is considered a consumer debt; an Attorney in the business of collecting consumer debts falls under the FDCPA. The allegation herein is these Attorney's are working for the Servicer, who does not have the Lender's permission to commence an Action, Lender may not even be aware there is a foreclosure going on because he/she/it is getting their payment every month, pursuant to the "Controlling-Documents." Petitioner is not in Default, never was. This is why no-one will verify the debt.

56.    Attorneys which use the Court system for personal gain by filing frivolous law-suits can be held liable for that behavior, they are not immune.

57.    Fraud upon the Court by an Attorney, Officer of the Court, done knowingly, or done byway of that Attorney's incompetence, can be held liable for that behavior by the Court.

58.    Judicial Estoppel is properly exercised by the Court wherein a Plaintiff takes a position which is diametrically opposed to a prior position; therefore Judicial Estoppel is warranted within this instant action. AURORA coming into Court averring it is the Owner and Holder of the NOTE is a fraudulent factum (which it refused to verify). AURORA has never told the Court, not once, it is the Servicer acting for some third party. It is clear, AURORA is the Servicer, filed a Complaint in its own name for

its own benefit, and offered to modify Petitioner's Mortgage-NOTE without the legal capacity to perform.

59.     Any accountant will tell you there are two sides of a ledger, the Credit side and the Debit side. When a NOTE is deposited with a banking institution, like LEHMAN BROTHERS BANK FSB, the face value of the NOTE appears on their Debit side of the ledger and the Borrower's account is credited with the amount on the face of the NOTE. The NOTE is the Bank's liability, and the Borrowers' asset / deposit. The Borrower created the debt instrument and is the source of the funds; see Petitioner's Exhibit "C" Certified copy in hand, titled AFFIDAVIT OF WALKER F. TODD, EXPERT WITNESS FOR THE DEFENDANTS, attached to the Complaint. The Borrower is the Creditor under "GAAP" Generally Accepted Accounting Principles. The Borrower holds a possessory right in the NOTE and must be turned over once discharged. The Petitioner was never told the NOTE was going to be sliced and diced and would never be returned, this is contrary to establish law.

60.     Petitioner's NOTE can not be transferred with a blank indorsement because Petitioner's NOTE is a non-negotiable instrument, as such; this NOTE must be Specially-Indorsed and delivered to the endorsee, who must accept it perfecting the negotiation. A NOTE indorsed "*without recourse*" means the Indorser relinquishes all liability attached to the instrument, from the new Holder.

61.     Double-Dipping occurs when the NOTE is securitized and the NOTE remains in existence. It is illegal to have the NOTE and the derivative security exist together, which has the legal effect of doubling the debt. See Petitioner's Exhibit "E" Certified copy in hand, attached to the Complaint, wherein the Attorney for the Florida Banker's Association, before the Supreme Court of Florida admitted; "*...the physical document* (NOTE) *was deliberately eliminated to avoid confusion immediately upon its conversion to an electronic file.*" (emphasis added for clarity)

62.     Stellionation is the act of selling the same thing more than once.

63.     Regulation Z; Sec. 226.39 Mortgage transfer disclosures, requires the new owner of the "**debt**" to notify the Borrower of a change of creditor, which is a condition precedent to collection of that debt.

64.     Petitioner denies obtaining a $650,000.00 loan from LEHMAN BROTHERS BANK FSB, Petitioner does admit to receiving a credit for $650,000.00. Furthermore Petitioner denies LEHMAN BROTHERS BANK FSB was the Lender, LEHMAN BROTHERS BANK FSB is the Strawman, as the loan was table-funded by the Trust-Certificate-Holder(s) by way of a Sold-Forward contract. See the Controlling-Documents, as they are a matter of public record.

65.     In Petitioner mind's eye Fraudulent Inducement is analogous to a fisherman's baited hook. Opposing Counsel argues this is not fraudulent inducement because the fish did not bite, no harm no foul. But opposing Counsel is correct, Petitioner was not injured in the modification scheme because is the duty of Maker to verify payment reaches the true Owner-Holder of an alleged debt, **Powers v. Woolfolk**, **132 Mo. App. 354, 111 S. W. 1187; Hoffmaster v. Black, 78 Ohio St. 1, 84 N. E. 423, 21 L. R. A. (N. S.) 62, 125 Am. St. Rep. 679, 14 Ann. Cas. 877; Baxter v. Little, 6 Mete. (Mass.) 7, 39 Am. Dee. 707.** Petitioner believes and is informed AURORA LOAN SERVICES LLC does not Hold the NOTE therefore is not the proper party to negotiate with, others were not so fortunate. But this Fraudulent Inducement Modification Scheme does display the elements of R.I.C.O. wherein both the Telecommunication Wires and the Mails were employed to carry out the scheme. But first the Assignment must show AURORA has Standing to foreclose, an Assignment facilitated by MERS.

66.     Slander of Title starts the clock on the Statute of Limitation the moment the Civil Foreclosure Action terminates. The Foreclosure stays the Statute of Limitation. Slander of Title occurred when AURORA recorded two Assignments against the property using fabricated documents. The damage done is emotional and embarrassment, unjustifiably. The Slander of Title is a *lis pendens* filed against the property using fabricated documents, recorded in the public, cost time and money to defend.

67.      All the State issues must remain under Federal Jurisdiction to avoid "piecemeal" litigation.

68.     State Courts can not take Jurisdiction over a controversy regarding a Federal question; however the Federal Court may dispose of a State Civil matter. All the issues herein are inter-related and stem from the same cause.

**WHEREFORE**, PREMISES CONSIDERED, including the admissible evidence found within the JUDICIAL NOTICE filing, this Court should DENY DEFENDANTS MOTION TO DISMISS, in the alternative permit Petitioner leave to Amend.

Respectfully submitted;


By: _____

JOHN KORMAN, Petitioner,
934 SW 21st Way,
Boca Raton 33486
Florida U.S.A.
(561) 393-0773
korman2001@comcast.net

## CERTIFICATE OF SERVICE

**THE UNDERSIGNED HEREBY CERTIFIES** that a true and correct copy of hereof has been forwarded, via first class U.S. Mail, to the following; Steven Ellison, Esquire, Broad and Cassel, One North Clematis Street, Suite 500, West Palm Beach Florida 33401;

Via e-mail to the following;

HARRIS K. SOLOMON
harris.solomon@brinkleymorgan.com
STACY M. SCHWARTZ
Stacy.schwartz@brinkleymorgan.com
ALBA L. CLEVELAND
Alba.Cleveland@brinkleymorgan.com
KALEY LOMBARDO
Kaley.Lombardo@brinkleymorgan.com

Spencer Tew
st@tewlaw.com
on this ___8___ rd day of ~~July~~ August, 2012.

John Korman
934 SW 21st Way
Boca Raton, Florida 33486
(561) 393-0773
korman2001@comcast.net

By: _____
John Korman



A-04-000786

---

## IN THE NEBRASKA COURT OF APPEALS

---

MORTGAGE ELECTRONIC REGISTRATIONS SYSTEMS, INC.,
Plaintiff/Appellant

vs.

NEBRASKA DEPARTMENT OF BANKING AND FINANCE,
Defendant/Appellee

**BRIEF OF APPELLANT**

APPEAL FROM THE DISTRICT COURT OF
LANCASTER COUNTY, NEBRASKA

The Honorable John A. Colborn

Prepared and submitted by:

James M. Pfeffer, #19177
Joseph T. Breckenridge, #21918
Abrahams Kaslow & Cassman LLP
8712 West Dodge Road, Suite 300
Omaha, Nebraska 68114
Telephone (402) 392-1250
Attorneys for Plaintiff/Appellant



FILED

OCT 15 2004

CLERK
NEBRASKA SUPREME COURT
COURT OF APPEALS

JTB/303151.5

## TABLE OF CONTENTS

| | Page(s) |
|---|---|
| TABLE OF CASES AND STATUTES ................................................... | iii |
| STATEMENT OF THE BASIS OF JURISDICTION ................................... | 1 |
| STATEMENT OF THE CASE ................................................................. | 1 |
|     A.   Nature of the Case ...................................................... | 1 |
|     B.   Issue Actually Tried in the Court Below ........................ | 2 |
|     C.   How the Issue Was Decided and What Judgment Was Entered by the Court Below ................................ | 2 |
|     D.   Scope of Review ........................................................ | 2 |
| ASSIGNMENTS OF ERROR ................................................................. | 2 |
| PROPOSITIONS OF LAW ...................................................................... | 3 |
| STATEMENT OF FACTS ...................................................................... | 4 |
| ARGUMENT | |
|     I.   THE DISTRICT COURT ERRED IN CONCLUDING THAT MERS MEETS THE DEFINITION OF A "MORTGAGE BANKER" UNDER NEB. REV. STAT. § 45-702(6) AND IS THEREFORE REQUIRED TO REGISTER AS A MORTGAGE BANKER ................................ | 7 |
|         I.A.   MERS DOES NOT "ACQUIRE" MORTGAGE LOANS OR ENGAGE IN ANY OF THE OTHER MORTGAGE BANKING ACTIVITIES DESCRIBED IN § 45-702(6), AND MERS' ABILITY TO EXERCISE INTERESTS IN A MORTGAGE LOAN, INCLUDING THE RIGHT TO FORECLOSE, IS NOT SUFFICIENT TO DEEM THAT MERS ACQUIRES MORTGAGE LOANS BECAUSE MERS MERELY ACTS IN A NOMINEE CAPACITY FOR THE OWNER AND HOLDER OF THE PROMISSORY NOTE SECURED BY THE MORTGAGE. ............................ | 7 |

I.B.   THE DISTRICT COURT SHOULD HAVE RECOGNIZED THAT MERS' OWNERSHIP OF A LEGAL INTEREST IN THE SECURITY DOCUMENT DOES NOT EQUATE TO MERS' OWNERSHIP OF THE PROMISSORY NOTE OR OTHER DEBT INSTRUMENT EVIDENCING THE LOAN MADE TO THE CONSUMER..............................  12

II.   THE DISTRICT COURT ERRED BY FAILING TO DETERMINE THAT MORTGAGE LOAN CONSUMERS WILL NOT BE HARMED IF MERS IS NOT REGISTERED AS A MORTGAGE BANKER...................................  17

CONCLUSION ........................................................................................  22

## TABLE OF CASES

Page(s)

*City of Grand Island v. County of Hall*, 196 Neb. 282, 242 N.W.2d 858 (1976)............ 14

*Connors v. Pantano*, 165 Neb. 515, 86 N.W.2d 367 (1957) ............................................ 14

*Craddock v. Brinkley*, 671 So. 2d 662 (Miss. 1996)........................................................ 16

*DLH, Inc. v. Lancaster County Board of Commissioners*, 264 Neb. 358,
    648 N.W.2d 277 (2002) ............................................................................................ 13

*Equitable Building & Loan Ass'n. of Grand Island v. Equitable Mortgage Corp.*,
    11 Neb. App. 850, 662 N.W.2d 205 (2003)............................................................. 9

*Henkle & Joyce Hardware Co. v. Maco, Inc.*, 195 Neb. 565,
    239 N.W.2d 772 (1976) ............................................................................................ 2

*James v. Paulson*, 261 Neb. 980, 622 N.W.2d 857 (2001)............................................... 2

*Little Blue Natural Resources Dist. v. Lower Platte North Natural Resources Dist.*,
    206 Neb. 535, 294 N.W.2d 598 (1980)................................................................... 14

*Pettigrew v. Home Ins. Co.*, 191 Neb. 312, 214 N.W.2d 920 (1974) ............................. 14

*South Boston Sav. Bank v. Commissioner of Revenue*, 418 Mass. 695,
    640 N.E.2d 462 (1994)............................................................................................. 8

*State v. One 1972-Door Sedan Rambler*, 191 Neb. 462, 215 N.W.2d 845 (1974).......... 14

## STATUTES

Neb. Rev. Stat. § 25-1911 .............................................................................................. 2

Neb. Rev. Stat. § 45-702(6) ..................................................................................2, 3, 5, 7, 13

Neb. Rev. Stat. § 45-702(8) ................................................................................. 13, 14, 15

Neb. Rev. Stat. §§ 45-701 to 45-721 ............................................................................. 1

Neb. Rev. Stat. § 45-704........................................................................................... 6

Neb. Rev. Stat. §§ 84-901 to 84-920 ........................................................................... 6

Neb. Rev. Stat. §§ 76-1001 to 76-1018 ............................................................   15

## **OTHER CITATIONS**

Merriam Webster's Collegiate Dictonary 683 (10th Ed. 1993) .......................................   15

24 C.F.R. Part 3500.21 as of 4/1/03 (HUD's Reg. X)....................................................   20

## STATEMENT OF THE BASIS OF JURISDICTION

This appeal from the District Court of Lancaster County, Nebraska (the "District Court") is brought pursuant to Neb. Rev. Stat. § 25-1912. The trial judge entered the District Court's Order on May 27, 2004. The Notice of Intention to Appeal and requisite docket fee were filed with the District Court on June 25, 2004.

## STATEMENT OF THE CASE

### A.     Nature of the Case

Plaintiff/Appellant, Mortgage Electronic Registration Systems, Inc. ("MERS"), appeals from the Order entered by the District Court on May 27, 2004 in favor of Defendant/Appellee, the Nebraska Department of Banking and Finance (the "Department"). The District Court's Order came as the result of MERS' Petition for Review, which MERS filed in the District Court on November 5, 2003, appealing the decision of the Department that MERS meets the requirements of a mortgage banker under the Nebraska Mortgage Bankers Registration and Licensing Act (the "Act"), Neb. Rev. Stat. §§ 45-701 to 45-721 (1998 and Supp. 2003). (T38) In the District Court's Order, the trial judge, John A. Colborn, ruled that MERS acquires mortgage loans under the Act, and is therefore required to register under the Act in order to continue to conduct business in the State of Nebraska. (T42) The District Court did not find that there is a bifurcation of interests between the holder of the promissory note evidencing a mortgage loan and MERS, which only holds the beneficial interest in the mortgage itself, in a nominee capacity for the owner and holder of the promissory note secured by such mortgage. (T42) MERS then filed this appeal.

**B.     Issue Actually Tried in the Court Below**

1.     Whether MERS acquires mortgages loans under the Act and is therefore required to register as a mortgage banker in Nebraska.

**C.     How the Issue Was Decided and What Judgment Was Entered by the Court Below**

1.     The District Court ruled that MERS does acquire mortgage loans under the Act and is therefore required to register as a mortgage banker in Nebraska.

**D.     Scope of Review**

"A judgment rendered or final order made by the district court may be reversed, vacated, or modified for errors appearing on the record." Neb. Rev. Stat. § 25-1911.

"In actions at law, the findings of the trier of fact will not be set aside on appeal unless clearly wrong.  In determining the sufficiency of the evidence to sustain the judgment, that evidence must be considered in the light most favorable to the successful party.  Every controverted fact must be resolved in favor of the successful party, and the successful party is entitled to the benefit of any reasonably deducible inferences." *Henkle & Joyce Hardware Co. v. Maco, Inc.*, 195 Neb. 565, 239 N.W.2d 772 (1976).

On a question of law, an appellate court is obligated to reach a conclusion independent of the determination reached by the court below. *James v. Paulson*, 261 Neb. 980, 622 N.W.2d 857 (2001).

## ASSIGNMENTS OF ERROR

1.     MERS does not meet the definition of a mortgage banker because MERS does not engage in any of the mortgage banking activities described in § 45-702(6) of the Act. Specifically, the District Court erred in determining that MERS "acquires" mortgage loans. Because MERS does not acquire mortgage loans and is therefore not a mortgage banker for

JTB/303151.5

purposes of § 45-702(6), the District Court's Order and determination that MERS is required to register as a mortgage banker under the Act should be reversed and this Court should find that MERS is not a mortgage banker under the Act and is therefore not required to register under the Act.

2.      The District Court erred in concluding that MERS' ability to exercise interests in a mortgage loan, including the right to foreclose, is sufficient to deem MERS as acquiring mortgage loans under the Act because the District Court failed to recognize that MERS merely serves in a nominee capacity for the owner and holder of the promissory note secured by the mortgage.

3.      The District Court erred by not finding that MERS' ownership of a legal interest in the mortgage does not equate to MERS' ownership of the promissory note.

4.      The District Court erred by not finding that mortgage loan consumers will not be harmed if MERS is not registered as a mortgage banker under the Act.

## PROPOSITIONS OF LAW

### I.

THE COMMON PARLANCE OF THE WORD "ACQUIRE" IN THE MORTGAGE BANKING INDUSTRY REFERS TO AN INVESTOR'S ACQUISITION OF A MORTGAGE LOAN ON THE SECONDARY MARKET.

*South Boston Sav. Bank v. Commissioner of Revenue*, 640 N.E.2d 462 (Mass. 1994).

### II.

A MORTGAGE AND A PROMISSORY NOTE ARE SEPARATE AND DISTINCT INSTRUMENTS.

*Craddock v. Brinkley, 671 So. 2d 662 (*Miss. 1996).

JTB/303151.5

## III.

THE MERS® SYSTEM DOES NOT ADVERSELY AFFECT THE BORROWER'S RIGHT TO LOAN INFORMATION BECAUSE, UNDER FEDERAL LAWS, EACH TIME THE SERVICING RIGHTS TO A MORTGAGE LOAN CHANGE, THE BORROWER IS NOTIFIED OF THE NEW SERVICER OF THE LOAN.

24 C.F.R. Part 3500.21 as of 4/1/03 (HUD's Reg. X).

### STATEMENT OF FACTS

MERS is a private corporation and is a wholly owned subsidiary of MERSCORP, INC. MERS' sole purpose is to hold mortgage liens in a nominee (limited form of agency) capacity for its members. The mortgage information is registered on the MERS® System. The MERS® System is a national electronic registry created by the mortgage banking industry to track the transfer of ownership interests and servicing rights in mortgage loans. (T17) Over the life of a mortgage loan, the ownership of the mortgage loan and the servicing rights of the mortgage loan are likely to be sold and resold many times. (T16) Prior to MERS, an assignment or other appropriate document was required to be filed in the real estate records each time the servicing rights of a mortgage loan were transferred because the new servicer needed to appear in the land records in order to receive service of process. (T16) This process resulted in missed or inaccurate assignments causing an unclear or broken chain of title to a mortgage loan in the real estate records. (T16) As a consequence, the transfer of the ownership interest in, including legal title to, mortgage loans, and the servicing rights relating to mortgage loans, and the release of mortgage liens was a cumbersome and expensive process to all involved. (T16) Prior to MERS, consumers were especially hit hard because research and recording costs were often passed on to consumers. (T16)

To address these problems, in 1991 the Government National Mortgage Association ("Ginnie Mae"), the Mortgage Bankers Association of America ("MBA"), the Federal National Mortgage Association ("Fannie Mae"), the Federal Home Loan Mortgage Corporation ("Freddie Mac") and others within the mortgage banking industry created MERS to provide an electronic registration system and clearinghouse for title to mortgage loans and servicing rights that is similar to the process successfully used by the Depository Trust Company for the securities industry. (T16)  The MERS® System has been endorsed by, and MERS' members include, the MBA and many large and prominent national and international lenders, agencies such as Fannie Mae, Freddie Mac, and the American Land Title Association and many of the largest and most well-known title companies. (T16, 17)

MERS serves as the mortgagee of record in a nominee (i.e., agency) capacity for the approximately 1600+ mortgage lenders registered in the MERS® System.  MERS becomes the mortgagee of record with respect to such mortgage loans, as nominee for the beneficial owner of the mortgage loan, in one of two ways:  (1) the borrower and the lender name MERS as the mortgagee of record at the time the mortgage loan is originated, or (2) the lender causes a mortgage lien for which the lender previously originated or acquired the note secured by the mortgage to be assigned of record to MERS, so that MERS becomes the mortgagee of record in the real estate records in which the mortgage was recorded.  (E3, 4:3, Vol. II)

By letter dated July 11, 2002, the Department notified MERS that MERS meets the definition of a mortgage banker under Neb. Rev. Stat. § 45-702(6) (1998 & Supp. 2003) of the Act because MERS is "acquiring loans as a nominee for lenders in Nebraska".  The Department indicated that MERS must register as a mortgage banker in Nebraska pursuant to § 45-704 or

notify the Department of an exemption under the Act. (E2, E1, 14:3, Vol. II) MERS is not registered as a mortgage banker in any other state. (5:11-19)

After the Department's July 11, 2002 correspondence, MERS and the Department exchanged numerous faxes, letters and phone calls concerning whether MERS is required to register as a mortgage banker under the Act. (E2, E1, 1-13:3, Vol. II) On June 19, 2003, MERS filed a Petition for Declaratory Order ("Petition For Declaratory Order") with the Department seeking a formal determination as to whether MERS is a mortgage banker within the meaning of the Act, and therefore, required to register as such under the Act. (E3, 1:3, Vol. II) A hearing on MERS' Petition for Declaratory Order was held before Samuel P. Baird (the "Director"), Director of the Department, on August 13, 2003. During oral arguments, MERS and the Department narrowed the issue before the Director to the question of whether MERS' activities in Nebraska constitute, directly or indirectly, "acquiring mortgage loans" within the meaning of the Act. (E3, 26:3, Vol. II) The Department issued its Declaratory Order on October 7, 2003, finding that MERS is a mortgage banker under the Act. As the basis for its decision, the Department stated that MERS directly or indirectly acquires mortgage loans. As the result, the Department declared that MERS is required to register as a mortgage banker. (E3, 25-29:3, Vol. II)

On November 5, 2003, MERS commenced its action in the District Court pursuant to the Administrative Procedure Act, Neb. Rev. Stat. §§ 84-901 to 84-920 (1999 & Supp. 2003), petitioning the District Court to review the Department's determination that MERS meets the definition of a mortgage banker under the Act. In its Order, the District Court upheld the Department's determination that MERS acquires mortgage loans under the Act and is therefore required to be licensed as a mortgage banker under the Act. (T41-43)

JTB/303151.5

## ARGUMENT

### I.

**THE DISTRICT COURT ERRED IN CONCLUDING THAT MERS MEETS THE DEFINITION A "MORTGAGE BANKER" UNDER NEB. REV. STAT. § 45-702(6).**

#### I.A.

**MERS DOES NOT "ACQUIRE" MORTGAGE LOANS OR ENGAGE IN ANY OF THE OTHER MORTGAGE BANKING ACTIVITIES DESCRIBED IN § 45-702(6), AND MERS' ABILITY TO EXERCISE INTERESTS IN A MORTGAGE LOAN, INCLUDING THE RIGHT TO FORECLOSE, IS NOT SUFFICIENT TO DEEM THAT MERS ACQUIRES MORTGAGE LOANS BECAUSE MERS MERELY ACTS IN A NOMINEE CAPACITY FOR THE OWNER AND HOLDER OF THE PROMISSORY NOTE SECURED BY THE MORTGAGE.**

Section 45-702(6) of the Act provides:  "Mortgage banker means any person not exempt under section 45-703 who, for compensation or gain or in the expectation of compensation or gain, directly or indirectly makes, originates, services, negotiates, acquires, sells, arranges for, or offers to make, originate, service, negotiate, acquire, sell, or arrange for ten or more mortgage loans in a calendar year".  Neb. Rev. Stat. § 45-702(6) (1998 & Supp. 2003) (emphasis added).

MERS does not take applications for, underwrite or negotiate mortgage loans.  MERS does not make or originate mortgage loans to consumers.  MERS does not extend any credit to consumers.  MERS does not service mortgage loans.  MERS does not sell mortgage loans. Most

JTB/303151.5

importantly, MERS is not an investor who acquires mortgage loans on the secondary market. (E3, 18:3, Vol. II)

The Department and MERS agree that MERS does not underwrite, make, originate, service, negotiate, sell, arrange for or offer to make, originate, service, negotiate, sell or arrange for mortgage loans.   Therefore, the Department and MERS are in agreement that the only statutory activity at issue, and the only issue for this Court to decide, is whether MERS <u>acquires</u> mortgage loans.  (E3, 26:3, Vol. II)

Although the legislative history of the Act does not discuss why the term "acquire" was used in § 45-702(6), the common parlance of the word "acquire" in the mortgage banking industry refers to an investor's acquisition of a mortgage loan on the secondary market.  For instance, in *South Boston Sav. Bank v. Commissioner of Revenue*, 640 N.E.2d 462 (Mass. 1994), a Massachusetts court characterized the two ways a bank may come into possession of a mortgage loan.  The court, in *South Boston Sav. Bank*, stated: "A bank may come into possession of a mortgage loan either by directly issuing a loan secured by the mortgage of real estate <u>or by acquiring a loan previously issued by another lender.</u>" *Id*. at 466-67 (emphasis added).

A brief history of why the secondary mortgage market was created helps illustrate this commonly understood meaning of the term "acquire".  The secondary mortgage market evolved to facilitate the free flow of money available for mortgage loans to consumers.  Without the secondary market, primary mortgage lenders would be limited in the amount of mortgage loans they could make to consumers because they only have so much capital available to make mortgage loans.  Through the secondary market, investors acquire loans from the primary mortgage lenders, thus providing primary lenders with more capital to make additional mortgage loans.  The secondary market ultimately provides a free-flow of cash to mortgage lenders to

8

make loans to consumers to purchase homes.  The primary mortgage lenders benefit because they have additional capital to make more loans and they also receive their ordinary lender's fees/commissions for originating the loan.  The investors benefit because, as owners of the loans, they are entitled to the interest income to be earned from the loans.  Consumers benefit because there are more funds available for mortgage loans so more consumers can get mortgage financing.

Besides loan "servicing" activities, all of the mortgage banking activities described in § 45-702(6) involve the extension of credit.  This Court has previously recognized that mortgage bankers lend money to consumers.  In *Equitable Building and Loan Association of Grand Island v. Equitable Mortgage Corporation*, 11 Neb. App. 850, 662 N.W. 2d 205 (Neb. 2003), the court stated that "a mortgage banker actually lends its own money, closes the loans, earns a service premium for the loans, and then sells the loans to another bank." *Id.* at 209 (emphasis added). The question then becomes whether MERS lends money to consumers to purchase homes, either at the primary or secondary level.  It is not disputed that MERS is not a primary lender who makes, originates, or negotiates or arranges for the making or originating of a mortgage loan directly to a consumer.  Similarly, MERS is not an investor who acquires or negotiates or arranges for the acquisition of mortgage loans on the secondary market or a bank or servicing company which acquires the servicing rights to mortgage loans for fee income.  (E3, 18:3, Vol. II)

There is no rational basis for determining that MERS acquires loans.  In its Order, the District Court stated:

> The procedures for members using the MERS system and documents used for recording the mortgages [or] other security documents reference MERS as having

the right "to exercise interests, including, but not limited to, the right to foreclose and sell the property, and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument."   MERS' active participation in the mortgage loan industry of indirectly or directly acquiring legal title to mortgages along with the ability to exercise lender rights such as foreclosure are sufficient to classify MERS as "acquiring" mortgage loans as referenced under Neb. Rev. Stat. § 45-702(6).  (T42)

In its Order, the District Court failed to recognize that MERS, in its agreement with its members, cannot exercise, and is contractually prohibited from exercising, any of the rights or interests in the mortgages or other security documents.  MERS is named as the "nominee" owner unless and until it is authorized to do so by the real and beneficial owners of such security documents.  (T38-43)  In the Terms and Conditions between MERS and its members, MERS' authority is clearly limited as evidenced by the following provision from the Terms and Conditions:

MERS shall serve as mortgagee of record with respect to all such mortgage loans solely as a nominee, in an administrative capacity, for the beneficial owner or owners thereof from time to time.  MERS shall have no rights whatsoever to any payments made on account of such mortgage loans, to any servicing rights related to such mortgage loans, or to any mortgaged properties securing such mortgage loans.  MERS agrees not to assert any rights (other than rights specified in the Governing Documents) with respect to such mortgage loans or mortgaged properties. (E3,13:3, Vol. II)

JTB/303151.5

MERS only acts when directed to by its members and for the sole benefit of the owners and holders of the promissory notes secured by the mortgage instruments naming MERS as nominee owner.  For this reason, MERS' ability to exercise any interests in mortgage loans, including the right to foreclose, is not sufficient to deem MERS as acquiring mortgage loans under the Act because MERS does not receive any of the benefits from taking such actions. MERS has no interest at all in the promissory note evidencing the mortgage loan.  MERS has no financial or other interest in whether or not a mortgage loan is repaid.  As described above, MERS simply holds mortgage liens in a nominee capacity and through its electronic registry, tracks changes in the ownership of mortgage loans and the servicing rights related thereto. MERS is clearly listed as a nominee in the mortgage, which is recorded in the real estate records. When a MERS member sells or transfers a mortgage loan or the servicing rights thereunder, MERS tracks such sale or transfer in the MERS® System and there is no need for filing anything in the real estate records because the mortgage lien remains with MERS.  Once MERS becomes the mortgagee of record of a mortgage, MERS remains the mortgagee of record of the mortgage even when the beneficial ownership interest in the promissory note secured by the mortgage or the servicing rights are sold or transferred from one MERS member to another.  (E3, 3-5:3, Vol. II)   In addition, MERS is required by the various State recording statutes to have a recordable interest in the mortgage in order for MERS to be named in the mortgage. Consequently, MERS is named as the mortgagee in a nominee capacity for the actual owner and holder of the promissory note secured by the mortgagee as described above.

MERS is not the owner of the promissory note secured by the mortgage and has no rights to the payments made by the debtor on such promissory note.  Rather, MERS holds the mortgage lien as nominee for the owner of the promissory note.  MERS is not the owner of the servicing

JTB/303151.5

rights relating to the mortgage loan and MERS does not service loans.  The beneficial interest in the mortgage (or the person or entity whose interest is secured by the mortgage) runs to the owner and holder of the promissory note.  In essence, MERS immobilizes the mortgage lien while transfers of the promissory notes and servicing rights continue to occur.  (E3,5:3, Vol. II)

For the foregoing reasons, MERS cannot be deemed to be acquiring mortgage loans under the Act and does not otherwise meet the definition of a mortgage banker.  Consequently, the Court should reverse the District Court's Order that MERS is required to register as a mortgage banker.

### I.B.

**THE DISTRICT COURT SHOULD HAVE RECOGNIZED THAT MERS' OWNERSHIP OF A LEGAL INTEREST IN THE SECURITY DOCUMENT DOES NOT EQUATE TO MERS' OWNERSHIP OF THE PROMISSORY NOTE OR OTHER DEBT INSTRUMENT EVIDENCING THE LOAN MADE TO THE CONSUMER.**

Each of the categories of persons listed in § 45-702(6) directly or indirectly receive consideration from mortgage loans and have an ownership or servicing interest in the notes secured by mortgages.  As more fully explained below, MERS does not make or acquire promissory notes or debt instruments of any nature and therefore cannot be said to be acquiring mortgage loans.  MERS simply holds legal title to mortgages and deeds of trust as a nominee for the owner of the promissory note. MERS has no interest in the notes secured by mortgages or the servicing rights related thereto.

JTB/303151.5

The Department asserts that MERS directly or indirectly acquires mortgage loans because MERS holds legal title to deeds of trust or mortgages in a nominee capacity for lenders. At the hearing on MERS' Petition for Declaratory Order, counsel for the Department stated: "MERS is the mortgage nominee or beneficiary nominee. Therefore, it acquires the legal title to the mortgage loan when the conveyance is recorded." (E2, 5:3, Vol. II) Furthermore, the Department asserts that MERS holds title to Nebraska real property. (E3, 4-5:3, Vol. II) These assertions by the Department are in error. MERS holds legal title to the mortgage or deed of trust in a nominee capacity simply to immobilize the mortgage lien in MERS and to provide MERS with a recordable interest to comply with the recording statutes of various states. The mortgage loan refers to the promissory note to which MERS does not acquire any interest.

The Department's analysis is fundamentally flawed because it fails to recognize an important distinction between a loan instrument and a security instrument. By stating that MERS acquires legal title to the "mortgage loan", the Department confuses the analysis. MERS does not acquire any interest (legal or beneficial) in the loan instrument (i.e., the promissory note or other debt instrument). Rather, MERS, in a nominee capacity for lenders, merely acquires legal title to the security instrument (i.e., the deed of trust or mortgage that secures the loan).

The Department's position that "mortgage loans are not legally divided under the Act" is incorrect. In § 45-702(6), the word "mortgage" modifies the word "loans" to specify certain types of loans – loans secured by interests in real property. The Act's definition of a "mortgage loan" in § 45-702(8) makes this point even more certain. Section 45-702(8) of the Act defines "mortgage loan" to mean "any loan or extension of credit secured by a lien on real property, including a refinancing of a contract of sale or an assumption or refinancing of a prior loan or extension of credit." Neb. Rev. Stat. § 45-702(8) (1998 and Supp. 2003) (emphasis added).

Absent anything to the contrary, statutory language is to be given its plain meaning, and a court will not look beyond a statute or interpret it when the meaning of its words are plain, direct and unambiguous. *DLH, Inc. v. Lancaster County Board of Commissioners*, 264 Neb. 358, 648 N.W.2d 277 (2002). Further, in *Little Blue Natural Resources District v. Lower Platte North Natural Resources District*, 206 Neb. 535, 294 N.W.2d 598 (1980), the court stated:

> Cardinal rules of statutory construction, however, prohibit us from ignoring entire phrases of a statute or giving the plain meaning of a statute a strained or absurd interpretation. "Where the language of a statute is plain and unambiguous, no interpretation is needed and the court is without authority to change the language." *City of Grand Island v. County of Hall*, 196 Neb. 282, 286, 242 N.W.2d 858, 861 (1976).
>
> In interpreting the meaning of a statutory provision, the whole provision should be read in order to arrive at a conclusion as to its proper meaning. *Pettigrew v. Home Ins. Co.*, 191 Neb. 312, 214 N.W.2d 920 (1974). Moreover, courts should give statutory language its plain and ordinary meaning. *State v. One 1970 2-Door Sedan Rambler*, 191 Neb. 462, 215 N.W.2d 849 (1974); *Connors v. Pantano*, 165 Neb. 515, 86 N.W.2d 367 (1957).

*Little Blue Natural Resources District*, 294 N.W.2d at 603 (emphasis added).

From the plain face of § 45-702(8), it is clear that the Act is intended to regulate and to require the licensure of persons who, *inter alia*, acquire "loans", not persons who acquire mortgages, deeds of trust or other security instruments. The words "any loan or extension of credit" set forth in § 45-702(8) clearly suggest that the lending of money or extending of credit or arranging for or negotiating the lending of money (for example a loan broker) is the conduct

14

being regulated by the Act.  This "plain meaning" interpretation of the Act's definition of "mortgage loan" is in accord with the commonly understood meaning of the word "loan".

Webster's Dictionary defines "loan" as: money lent at interest; something lent usually for the borrower's temporary use; etc.  Merriam Webster's Collegiate Dictionary 683 (10th ed. 1993). Since MERS does not acquire any interest in a debt instrument evidencing a loan (i.e., money being lent at interest) and does not make loans, arrange for loans or negotiate the terms of loans, it cannot be said to be acquiring loans, including mortgage loans, and therefore it logically cannot be deemed a mortgage banker.  Thus, under a "plain meaning" interpretation of the Act, including the definition of a mortgage banker, in order for a person to acquire a mortgage loan, such person must acquire a legal or beneficial interest in the promissory note or other debt instrument evidencing such mortgage loan.

As demonstrated above, the Act distinguishes the interests in the promissory note or debt instrument on the one hand, from interests in the deed of trust or security instrument on the other. It is important to understand that MERS may acquire a legal interest in a mortgage or deed of trust (as nominee for the actual lender) without acquiring any corresponding interest, legal or beneficial, in the promissory note secured by such deed of trust.  This is because the note owner appoints MERS to be its agent to only hold the mortgage lien interest, not to hold any interest in the note.  Besides MERS, other parties acquire legal interests in deeds of trust without being deemed mortgage bankers under the Act.  For instance, under the Nebraska Trust Deeds Act, Neb. Rev. Stat. §§ 76-1001 to 76-1018 (1996 and Supp. 2003), a borrower may convey real property by a trust deed to a third party trustee as security for the performance of the borrower's obligations to his/her lender.  Although a trustee under the Nebraska Trust Deeds Act receives legal title to the trust deed securing the borrower's obligations, the trustee often does not hold an

interest (legal or beneficial) in the promissory note or debt instrument evidencing the borrower's obligations. As such, the trustee merely holds legal title in a nominee capacity for the lender, much like MERS. Yet, neither the Trust Deeds Act nor the Mortgage Bankers Act requires such trustees to register as a mortgage banker, despite holding legal title.

In addition to the foregoing, courts have frequently noted the critical difference between loan instruments and security instruments. A mortgage and a promissory note are separate and distinct documents. *Craddock v. Brinkley*, 671 So. 2d 662, 665 (Miss. 1996).

Accordingly, a person may hold legal title to a note while appointing another entity to hold legal title to the mortgage securing such note. In the mortgage banking industry, it is standard industry practice for an investor, such as Fannie Mae or Freddie Mac, to hold legal title to notes secured by mortgages and use a separate servicing entity to hold title to the mortgage via a recorded mortgage or assignment. With the development of MERS, these interests are now split three ways instead of two. The investor continues to own and hold the promissory note, but under the MERS® System, the servicing entity only holds contractual servicing rights and MERS holds legal title to the mortgage as nominee for the benefit of the investor (or owner and holder of the note) and not for itself. MERS does not hold any interest (legal or beneficial) in the promissory notes that are secured by such mortgages or in any servicing rights associated with the mortgage loan. The debtor on the note owes no obligation to MERS and does not pay MERS on the note. MERS holds legal title to the mortgage for the benefit of the owner of the note. In effect, the mortgage lien becomes immobilized by MERS continuing to hold the mortgage lien when the note is sold from one investor to another via an endorsement and delivery of the note or the transfer of the servicing rights from one MERS member to another MERS member via a purchase and sale agreement which is a non-recordable contractual right. Legal title to the

16

mortgage remains in MERS after such transfers and is tracked by MERS in its electronic registry. (E3, 4-5:3, Vol. II)

As demonstrated above, MERS cannot be deemed to be acquiring mortgage loans under the Act because it does not obtain legal or beneficial title in loan instruments. MERS does not acquire an interest in promissory notes or debt instruments of any nature. Plainly interpreted, the Act requires the licensure of persons who acquire <u>loans of the mortgage variety</u> (i.e., loans secured by mortgages). For these reasons, the Court should recognize that MERS' ownership of a legal interest in the security documents registered on the MERS® System does not equate to MERS ownership of the debt instruments evidencing the loans made to consumers. The Court should further recognize that without owning an interest in the debt instruments, MERS cannot be deemed to be acquiring mortgage **loans** under the Act. As a result, the Court should reverse the District Court's Order that MERS is required to be registered as a mortgage banker.

For the foregoing reasons, the District Court erred in concluding that MERS meets the definition of a "mortgage banker" under Neb. Rev. Stat. § 45-702(6). Consequently, the Court should reverse the District Court's Order and determination that MERS is required to register as a mortgage banker under the Act and the Court should find that MERS is not a mortgage banker under the Act and is therefore not required to register under the Act.

## II.

## THE DISTRICT COURT ERRED BY FAILING TO DETERMINE THAT MORTGAGE LOAN CONSUMERS WILL NOT BE HARMED IF MERS IS NOT REGISTERED AS A MORTGAGE BANKER.

The Department asserts that a number of potential problems for mortgage loan customers could arise if MERS is not registered as a mortgage banker, including:

1.  MERS keeps all of its records for mortgage transactions in its central database, which is accessible only to its clients with a legal interest in the mortgage.

2.  Without licensure, MERS is not required to post a surety bond or other form of security to protect consumers from damages resulting from its potential inaction or action.

3.  Due to the private nature of MERS' business, if MERS goes out of business, its records may become completely inaccessible to the public and the expenses to update the public records may be significant.

4.  MERS may fail to timely release the security interest it holds legal title to under a deed of trust or mortgage when a mortgage loan is paid off.

5.  Consumers may discover that real estate liens are not properly recorded, and if MERS is not required to maintain a license, MERS does not have an incentive to answer consumer complaints and consumers would not have a venue. (E2, 10-11:3, Vol. II)

The Department's concern with each of these potential problems is misplaced.  In the mortgage banking industry, after a mortgage loan is made, it is standard practice for the promissory note evidencing the loan and the servicing rights associated with the loan to be transferred, sold and resold many times.  Prior to MERS, an assignment or other appropriate document was required to be filed in the real estate records each time the servicing rights of a mortgage loan were transferred because the new servicer needed to appear in the land records in

order to receive service of process. This resulted in missed or inaccurate assignments causing an unclear or broken chain of title to a mortgage loan in the real estate records.  As a consequence, the transfer of the ownership interest in, including legal title to, mortgage loans, and the servicing rights relating to mortgage loans, and the release of mortgage liens was a cumbersome and expensive process to all involved, including consumers because the research and recording costs are often passed on to the consumer. (E3, 3:3, Vol. II)

The MERS® System provides an enormous cost benefit to consumers because these recording and research costs, which were formally passed on to the consumers, no longer exist under the MERS® System. The MERS® System simply is a way to increase the efficiency and accuracy of tracking the ownership of the rights associated with mortgage loans so that the mortgage industry can better and more economically serve a greater number of people.  What MERS tracks are non-recordable transfers.  Servicing rights are transferred vis-à-vis a purchase and sale agreement which is a non-recordable contract right.  The beneficial note interests are transferred by endorsement and delivery of the note which is also a non-recordable event.  The mortgage lien remains with MERS so no assignment of the mortgage lien is needed when these non-recordable transfers occur and are tracked on the MERS® System.

Other than the cost savings that the MERS® System passes on to consumers of loans from MERS members, consumers are largely unaffected by MERS' involvement in the mortgage banking industry.  It is true that MERS' registry or database (tracking the ownership interest and servicing rights) is only accessible by MERS' members, the public, at no cost, has access to the name and telephone number of the current mortgage servicer 7 days a week, 24 hours a day.  It is the servicer that the consumer needs to contact for specific loan information, not MERS. Moreover, the MERS® System does not adversely affect the borrower's right to such

19

information because, under federal laws, each time the servicing rights to a mortgage loan change, the borrower is notified of the new servicer of the loan. *See* 24 C.F.R. Part 3500.21 as of 4/1/03 (HUD's Reg. X).

Furthermore, none of the other potential problems noted above by the Department adversely affect consumers. MERS is largely transparent to the consumer. Original lenders of mortgage loans, investors who purchase or acquire mortgage loans on the secondary market, and servicers of mortgage loans are the "persons" under the Act that mortgage loan consumers need to be protected from because it is these persons who actually underwrite loans, make loans, service loans, acquire loans, and ultimately decide whether or not a consumer is in default on the loan.

MERS does not collect mortgage payments. MERS does not hold escrows for taxes and insurance. MERS does not provide any servicing functions on mortgage loans, whatsoever. Those rights are typically held by the servicer of the loan, who may or may not also be the holder of the note. The beneficial interest in the mortgage (or the person or entity whose interest is secured by the mortgage) runs to the owner and holder of the promissory note and/or servicing rights thereunder.

From a consumer protection standpoint, MERS is invisible to a consumer. In the event a consumer has a problem with his/her mortgage loan, such consumer is not going to contact MERS, but the servicer of the loan. As MERS merely holds legal title to the security instrument as nominee for the lender, it lacks authority to do anything more than notify the lender or loan servicer of the consumer's complaint. Other than holding legal title to the security instrument in order to immobilize the lien in the real estate records, any other action taken by MERS with

respect to a consumer's mortgage loan is taken at the direct instruction of the lender or loan servicer and for such lender or loan servicer's benefit.

To further illustrate this lack of authority, the Terms and Conditions governing the relationship with MERS and its members provides:

> MERS shall serve as mortgagee of record with respect to all such mortgage loans solely as a nominee, in an administrative capacity, for the beneficial owner or owners thereof from time to time. MERS shall have no rights whatsoever to any payments made on account of such mortgage loans, to any servicing rights related to such mortgage loans, or to any mortgaged properties securing such mortgage loans. MERS agrees not to assert any rights (other than rights specified in the Governing Documents) with respect to such mortgage loans or mortgaged properties. (E3, 13:3, Vol. II)

Based upon the foregoing, there is no benefit to mortgage loan consumers in requiring MERS to be licensed as a mortgage banker. MERS' sole function to the mortgage banking industry is to track changes in the ownership and servicing rights in mortgage loans on its electronic registry. In order for MERS to track such changes, the recording laws require MERS to hold legal title to the deed of trust securing the consumer's mortgage loan in a nominee or administrative capacity for the real lender. The Act is intended to protect consumers from lenders and loan service providers, not MERS, because these are the parties that make decisions with respect to consumers' mortgage loans. Any action taken by MERS with respect to a consumer's mortgage loan is taken at the direct instruction of the lender or loan service provider. Because consumers will not be harmed if MERS is not registered as a mortgage banker, the

Court should reverse the District Court's Order that MERS is required to be registered as a mortgage banker.

## CONCLUSION

MERS does not meet the Act's definition of a mortgage banker. MERS does not directly or indirectly make, originate, service negotiate, acquire, sell, arrange for or offer to make, originate, service, negotiate, acquire, sell, arrange for mortgage loans. MERS does not receive compensation or gain in consideration for its performance of any of the mortgage banking activities described in the Act. MERS does not obtain legal or beneficial title to promissory notes or other debt instruments; therefore, under a "plain meaning" interpretation of the Act, it cannot be deemed to be acquiring mortgage loans. Finally, mortgage loan consumers will not be harmed if MERS is not required to register as a mortgage banker. For the foregoing reasons, MERS is not a mortgage banker for purposes of § 45-702(6), and the District Court's Order and conclusion that MERS is required to register as a mortgage banker under the Act should be reversed.

DATED this 14th day of October, 2004.

MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS, INC., Plaintiff/Appellant


By: _____
Joseph T. Breckenridge, #21918
James M. Pfeffer, #19177
ABRAHAMS KASLOW & CASSMAN LLP
8712 West Dodge Road, Suite 300
Omaha, Nebraska 68114
(402) 392-1250
Attorneys for Petitioner/Plaintiff

22

JTB/303151.5

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the above and foregoing Brief Of Appellant was served upon Defendant/Appellee by mailing two copies of same to the following addresses by regular United States mail, postage prepaid, this 14th day of October, 2004:

Nebraska Department of Banking and Finance
Samuel P. Baird, Director
1200 N St., Ste. 311, The Atrium
Lincoln, Nebraska 68509

Nebraska Department of Banking and Finance
c/o Attorney General
2115 State Capitol Bldg.
Lincoln, Nebraska 68509
Attention:  Fredrick F. Neid

Joseph T. Breckenridge