UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

WEST PALM BEACH DIVISION

CASE NO.12-80364-civ-MARRA/BRANNON

JOHN KORMAN,
Private Attorney General,

        Petitioner,

v.

AURORA LOAN SERVICES, LLC; OFFICE OF
CEO, AND PRES OF AURORA; AURORA
BANK FSB; MERSCORP HOLDINGS, INC;
MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS, INC.; etc., et. al.,

        Defendants.
_____/

**REPLY MEMORANDUM OF AURORA LOAN SERVICES LLC, AURORA BANK FSB, MERSCORP HOLDINGS, INC., MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., LASALLE BANK, N.A., AS TRUSTEE, U.S. BANCORP, AS SUCCESSOR TRUSTEE AND LEHMAN XS TRUST MORTGAGE PASS-THROUGH CERTIFICATE SERIES 2006-11**

Pursuant to Local Rule 7.1, the Defendants, AURORA LOAN SERVICES LLC ("Aurora"), AURORA BANK, FSB (the "Bank"), MERSCORP HOLDINGS, INC., MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. (collectively "MERS"), LASALLE BANK, N.A., AS TRUSTEE ("LaSalle"), U.S. BANCORP AS SUCCESSOR TRUSTEE ("U.S. Bank") and LEHMAN XS TRUST MORTGAGE PASS-THROUGH CERTIFICATE SERIES 2006-11 ("Lehman XS") (collectively the "Defendants") reply to the memorandum/objection served by the Plaintiff, John Korman ("Korman") on or about August 8, 2012 in opposition to these Defendants' Motion to Dismiss and in support state the following:

## Introduction

In his opposition to the Defendants' Motion to Dismiss, Korman does not argue that his Complaint alleges the elements necessary to state a cause of action for each of his 35 counts, but simply reiterates the hollow premise that Aurora lacks standing in the State Court Foreclosure Action because the June 2009 Assignment was either fraudulent or invalid. Relying on an appellate brief filed in a Nebraska state court appeal in 2004, Korman again harps on his solitary premise, i.e., that MERS has no legal right to assign promissory notes since it can never acquire an interest in them in the first instance. However, the Nebraska Court was only considering whether MERS was required under state law to be a licensed mortgage broker, and therefore, did not consider whether a lender could acquire standing in a foreclosure action other than through a note assignment executed by MERS. As stated in the Defendant's motion to dismiss, notwithstanding the alleged invalidity of the June 2009 Assignment, Aurora could readily acquire standing in the State Court Foreclosure Action either because it was acting as the authorized agent of the owner, *See, Mortgage Electronic Registration Systems, Inc. v. Revoredo*, 955 So. 2d 33 (Fla. 3d DCA 2007), or because it held the note endorsed in blank and thereby acquired an equitable assignment of the mortgage, *See, WM Specialty Mortgage, LLC v. Salomon*, 874 So. 2d 680 (Fla. 4th DCA 2004).

## Count 22 – Fair Debt Collection Practices Act

In paragraphs 26 and 32 of his opposition, Korman addresses the Fair Debt Collection Practices Act ("FDCPA"), but nowhere contests that Aurora was not a "debt collector" as that term is defined in Section 15 U.S.C. § 1692(a). As argued by other defendants, The Law Office of David Stern, P.A. and David Stern, in their motion to dismiss, the FDCPA would not govern or restrict any action taken by Aurora in connection with its seeking to foreclose the Mortgage.

However, to the extent Korman's oblique complaint can be construed as alleging communications with the borrower outside the foreclosure context, Aurora still is exempt from the provisions of the FDCPA because at the time Aurora commenced servicing of Korman's debt, the loan was not in default. *See*, 15 U.S.C. § 1692(a)(6)(F). Therefore, Korman's contention in paragraph 32 that Aurora "took on the cloak of a debt collector", does not salvage Korman's claim under the Fair Debt Collection Practices Act, and this count must be dismissed.

### Count 22 – Telephone Consumer Protection Act

In paragraph 34, Korman argues that because he unilaterally terminated the "established business relationship between him and Aurora", the Telephone Consumer Protection Act ("TCPA") governs the actions of Aurora. Korman, however, nowhere disputes that the scope of the TCPA is limited to calls made for the purpose of "encouraging the purchase or rental of or investment in property, goods or services". *See,* § 427, U.S.C. § 227(a)(4). Nowhere in paragraph 34 of his opposition does Korman even suggest that any of Aurora's alleged contacts with Korman were in connection with or for the purpose of encouraging him to purchase or invest in property, goods or services. Therefore, Count 22 must be dismissed.

### Count 23 – Fair Credit Reporting Act

In response to the Defendant's motion to dismiss Korman's Fair Credit Reporting Act claim, Korman simply reiterates that Aurora allegedly reported "unverified information" to an unnamed third party debt collector (See paragraph 36, Korman's response). Korman nowhere disputes that he failed to allege that Aurora received notice of the alleged dispute <u>from a credit reporting agency</u> (not himself), even assuming that his improperly addressed July 22, 2008 letter (Exhibit P to Complaint) somehow reached Aurora. Accordingly, Count 23 must be dismissed.

### Count 26 – RICO Claim

In paragraphs 37 through 41 of his opposition, Korman reiterates that MERS' execution of the June 2009 Assignment when it allegedly had no right to assign the Note constituted an underlying predicate act of fraud.

In order to allege a federal RICO claim, the claimant must allege the existence of two or more acts constituting a pattern of racketeering activity that occurred within ten years of each other and which are related sufficiently to form a pattern of racketeering activity. While 18 U.S.C. § 1961 does not include within its definition of predicate acts the improper assignment of a note, Korman presumably relies on that section of Section 1961 that allows mail fraud and wire fraud to be considered a predicate act. However, where wire fraud and mail fraud constitute the predicate RICO acts, the particularity and specificity pleading requirements of Rule 9(b) apply. Korman does not dispute that his complaint lacks the requisite specificity to allege wire or mail fraud as a predicate act. *See, generally, Portionpac Chemical Corp. v. Sanitec Systems, Inc.*, 210 F. Supp. 2d 1302 (M.D. 2002). Nor does Korman contest that the alleged RICO defendant(s) and the RICO enterprise alleged in his complaint are identical, thereby negating his RICO claim. Accordingly, Count 26 must be dismissed.

### Declaratory Judgment (Paragraphs 563-612 of Complaint)

While paragraphs 52 through 55 of Korman's response ask the Court to view the declaratory judgment claim "in proper context", paragraph 50 articulates the only context underlying the claim, i.e., that the June 2009 Assignment is allegedly fraudulent. However, even if such were the case, Korman would have no standing to assert the improper execution of the assignment as a predicate for affirmative relief in this Court. Only those who were parties to the

4

June 2009 Assignment have standing to assert its improper execution and the consequent invalidity of the assignment. *See, Harvey v. Deutsche Bank National Trust Co.*, 69 So. 3d 300 (Fla. 4th DCA 2011).

Additionally, as evidenced by Aurora's motion for leave to amend its complaint filed in the State Court Foreclosure Action, the State Court Foreclosure Action, in fact, remains pending. A copy of Aurora's motion seeking leave to file an Amended Complaint is attached hereto as **Exhibit 1**. The Defendants request that this Court take judicial notice of the filing and content of the motion to amend filed in the State Court Foreclosure Action pursuant to Federal Rules of Evidence, 201. As the State Court Foreclosure Action remains pending, and as Korman has already interjected the standing issue into the State Court Foreclosure Action, this Court should decline to exercise subject matter jurisdiction over Korman's declaratory judgment action in order to prevent the "piecemeal" litigation of this issue.

## Counts 8 and 9 – Judicial Estoppel[1]

In paragraphs 58 and 59, Korman argues the doctrine of judicial estoppel creates an independent basis for relief, again by arguing that Aurora falsely claimed in the State Court Foreclosure Action that it was the owner and the holder of the Note. While Korman's argument meanders into a discussion of generally accepted accounting principals and disregards the plain terms of the Note which disclosed that the Note could be assigned, Korman nowhere argues that any court order or judgment has determined that Aurora lacks standing, and that Aurora, nevertheless, maintains a conflicting factual assertion to his prejudice in a different legal proceeding. Accordingly, in the absence of allegations that might create a basis for a claim of judicial estoppel, Counts 8 and 9 must be dismissed.

---

[1] Korman did not respond to the Defendant's Motion to Dismiss Counts 2 through 7 (intrinsic fraud claims).

### Counts 10, 11, 15 and 16 – Uniform Fraudulent Transfer Act

Apparently operating under the mistaken belief that Lehman Brothers Bank, FSB filed for bankruptcy, Counts 10, 11, 15 and 16 of the Complaint contend that MERS' assignment of the Note pursuant to the 2008 and 2009 assignments constituted a fraudulent transfer for which Korman is entitled to relief under Fla. Stat. § 626.101, et seq. In response to the Defendant's argument that Korman is not a party entitled to relief under the statute, in paragraph 13, Korman simply states that the assignment of the Note was "illusory" and therefore, it must be fraudulent. Whether the assignment was illusory or valid is inconsequential to Korman's fraudulent transfer cause of action since he was not a creditor of Lehman Brothers Bank, FSB, at the time of the execution of the June 2009 Assignment. Accordingly, Counts 10, 11, 15 and 16 must be dismissed.

### Count 13 – Double-Dipping[2]

In response to the Defendant's motion to dismiss Count 13, Korman, in paragraphs 29, 61 and 62 collectively argues that once a negotiable instrument has been negotiated and transferred, the underlying debt becomes satisfied and therefore, any effort by a subsequent holder to recover that debt constitutes double- dipping or, as Korman describes it in paragraph 29, "Lex Anastasiana". However, negotiation of a note does not equate to satisfaction of a note, and the Uniform Commercial Code nowhere adopts, references or incorporates the concept of "Lex Anastasiana." To the contrary, negotiability is predicated on the right of subsequent holders of an instrument to recover from the debtor <u>all</u> amounts due under the instrument. *See,* Fla. Stat. § 673.6011 and Fla. Stat. § 673.6041 (An obligation of a party to pay an instrument is only

---

[2] Korman did not respond to the Defendant's Motion to Dismiss Count 12 alleging civil conspiracy.

4847-9008-9744.1
27876/0434

discharged by an intentional act of the person entitled to enforce the instrument such as surrendering the instrument to the debtor, destroying the instrument, or cancelling the debtor's signature on the instrument). To accept Korman's claim of double-dipping and "stellionation" would destroy the law of commercial instruments. Accordingly, Count 13 must be dismissed.

### Count 31 – Slander of Title

In response to the Defendant's motion to dismiss Count 31, Korman does not dispute that the recording of the June 2009 Assignment did not slander his title. Instead, in paragraph 66, Korman switches his argument and instead argues that it was not the recordation of the June 2009 Assignment that constituted slander of title, but the recordation of the lis pendens filed in connection with the State Court Foreclosure Action. However, even if the recording of a lis pendens were not protected by the litigation privilege, the State Court Foreclosure Action and the lis pendens were filed on May 13, 2009. Korman did not file this action alleging slander of title until April 4, 2012, almost three years later. Accordingly, regardless of whether the recordation of the June 2009 Assignment or the recordation of the lis pendens allegedly slandered Korman's title, his claim remains time barred by Fla. Stat. § 95.11(4)(g) and must be dismissed.

### Conclusion

Korman neglected to address whether this Court should dismiss all pendent state law claims under 28 U.S.C. § 1367(c)(3). However, as evidenced by Korman's tenuous arguments against dismissal, not only should the federal claims be dismissed, but this Court should not exercise pendent jurisdiction. As the crux of Korman's claims exclusively implicate Aurora's standing in the State Court Foreclosure Action, this Court should either dismiss all of Korman's federal claims and remand the pendent state law claims to the state court or simply decline to

4847-9008-9744.1
27876/0434

exercise supplemental jurisdiction as the state law claims predominate over the federal issues in this case.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on *August 15*, 2012, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served via U.S. mail this day on **John Korman**, 934 SW 21st Way, Boca Raton, FL 33486; **Spencer Tew, Esq.**, Tew Cardenas LLP, Four Seasons Tower, 15th Floor, 1441 Brickell Ave., Miami, FL 33131-3407, Attorney for Law Offices of David J. Stern, P.A., David J. Stern and Cassandra Racine-Rigaud; **Harris Keith Solomon, Esq.**, Brinkley Morgan, 200 E. Las Olas Blvd., Suite 1900, Fort Lauderdale, FL 33301, Attorney for Defendant, Misty Barnes; **Leon R. Margules, Esq.**, 5397 Orange Dr., Suite 202, Davie, FL 33314, Attorney for Karol S. Pierce.

> BROAD AND CASSEL
> Attorneys for Defendants
> One North Clematis Street, Suite 500
> West Palm Beach, FL 33401
> Telephone: (561) 832-3300
> Facsimile: (561) 655-1109
>
> By: /s/ Steven Ellison
> STEVEN ELLISON
> sellison@broadandcassel.com
> Florida Bar No. 510319
> ANDREW D. RAFKIN
> arafkin@broadandcassel.com
> Florida Bar No. 292060

4847-9008-9744.1
27876/0434